ORIGINAL

Erik S. Syverson (SBN 221933)
PICK & BOYDSTON, LLP
617 South Olive Street, Suite 400
Los Angeles, CA 90014
Phone: 213-624-1996
Fax: 213-624-9073

Attorneys for Plaintiff
HOLOMAXX TECHNOLOGIES CORPORATION

FILED

OCT 2 9 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



#3
Pd
SI

E-FILING

ADR

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

CV10- 4924HRL

| | |
|---|---|
| HOLOMAXX TECHNOLOGIES CORPORATION, a Pennsylvania S Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, a Delaware corporation, and RETURN PATH, INC., a Delaware corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**(1) Violation of 18 U.S.C. §§ 2510 *et seq.* (The Wiretap Act)**<br>**(2) Violation of 18 U.S.C. §§ 2701 *et seq.* (The Stored Communications Act)**<br>**(3) Violation of 18 U.S.C. §§ 1030 *et seq.* (Computer Fraud)**<br>**(4) Intentional Interference with Contract**<br>**(5) Intentional Interference with Prospective Business Advantage**<br>**(6) Violation of California Penal Code §§ 630 et seq. (Wiretapping/Eavesdropping)**<br>**(7) Violation of California Civil Code §§ 43 *et seq.* (Defamation)**<br>**(8) False Light**<br>**(9) Violation of California Business & Professions Code §§ 17200 *et seq.***<br><br>**JURY TRIAL DEMANDED** |

Plaintiff HOLOMAXX TECHNOLOGIES CORPORATION ("HOLOMAXX"), a

Pennsylvania S corporation, complains and pleads against Defendants MICROSOFT

CORPORATION, ("MICROSOFT") and RETURN PATH, INC. ("RETURN PATH," and together

with MICROSOFT, "DEFENDANTS") as follows:

## JURISDICTION AND VENUE

1.      This action raises federal questions under, *inter alia*, 18 U.S.C. §§ 2510 *et seq.*

2.      This Court has original jurisdiction over the federal claims herein pursuant to 28 U.S.C. §§

1331 and 1332, and has supplemental jurisdiction over the state claims herein pursuant to 28 U.S.C.

§ 1367.

3.      This Court has authority to award the requested declaratory relief under, *inter alia*, 28 U.S.C.

§ 2201 and 18 U.S.C. § 2520, and the requested injunctive relief and damages (including reasonable

attorneys' fees and costs, and punitive damages) under, *inter alia*, 18 U.S.C. § 2520.

4.      Venue is proper under 28 U.S.C. § 1391 in the Northern District of California because a

substantial part of the actions or omissions giving rise to this case occurred within this District, and

both DEFENDANTS have contacts within this District which would be sufficient to subject them to

personal jurisdiction if this District were a separate state.

5.      Pursuant to Civil L.R. 3-2(c), this case is properly assigned to the San Jose Division, because

a substantial part of the events or omissions which give rise to the claim occurred in Santa Clara

County, California.

## PARTIES

6.      Plaintiff HOLOMAXX is a Pennsylvania S Corporation, with its principal place of business

in Montgomery County, Pennsylvania.

7.      Plaintiff HOLOMAXX is informed and believes, and on that basis alleges, that Defendant

1   MICROSOFT CORPORATION ("MICROSOFT") is a corporation duly organized and existing

2   under the laws of the state of Delaware, with corporate headquarters at One Microsoft Way,

3   Redmond, Washington.

4

5   8.      Plaintiff HOLOMAXX is informed and believes, and on that basis alleges, that Defendant

6   RETURN PATH, INC. ("RETURN PATH") is a corporation duly organized and existing under the

7   laws of the state of Delaware, with corporate headquarters at 304 Park Avenue South, 7th Floor,

8   New York, New York.

9                                      **INTRODUCTION**

10  9.      As detailed below, in this action Plaintiff HOLOMAXX seeks damages and injunctive relief

11  against DEFENDANTS for their intentional interference with HOLOMAXX's ability to lawfully

12  and properly send emails via the internet, to MICROSOFT users who had specifically requested

13  these emails from HOLOMAXX.  By engaging in this conduct, MICROSOFT disrupted

14  HOLOMAXX's contractual and business relationships.  MICROSOFT has intentionally and

15  recklessly disregarded HOLOMAXX's repeated requests to cease their conduct, and both

16  DEFENDANTS have refused to provide any information that would permit HOLOMAXX to

17  remedy the situation.

18

19  10.     MICROSOFT knowingly relies on faulty automated filters, and equally faulty third-party

20  information, to identify purported spam emails.  Even after HOLOMAXX informed MICROSOFT

21  that it was not sending spam - and then took the initiative to review all of MICROSOFT's technical

22  standards and suggested "best practices," and then changed its mailing practices to address the only

23  potential issue that it found there (a volume limit of which HOLOMAXX had not been informed

24  previously, and which did not relate to the legitimacy of its emails) - MICROSOFT has informed

25  HOLOMAXX that, due to its "negative reputation," MICROSOFT is not able to override its own

26  automatic spam filters.  This despite the fact that HOLOMAXX is sending legitimate email, and that

27

28

1  MICROSOFT has explicitly refused to identify any actual problem with any emails sent by

2  HOLOMAXX.

3  11.    In addition, HOLOMAXX is informed and believes that both DEFENDANTS intentionally

4  intercepted and obtained information from HOLOMAXX's private communications with its clients,

5  that both DEFENDANTS published false statements to third parties about HOLOMAXX's

6  purported reputation for sending spam, and that both DEFENDANTS profit from their misconduct,

7  which drives sales of the reputation and whitelisting services offered by RETURN PATH.  By

8  engaging in the foregoing wrongful conduct, DEFENDANTS have exceeded their authorization to

9  access facilities through which electronic communication services are provided, and to access

10  computers used for interstate and foreign communications and commerce, and have obtained

11  information thereby.

12  12.    As a direct result of DEFENDANTS' conduct, HOLOMAXX has suffered, and continues to

13  suffer, direct and consequential damages in an excess of the jurisdictional limit of this court, in an

14  amount to be proven at trial.  In addition, HOLOMAXX has suffered, and continues to suffer,

15  irreparable harm to its reputation and ongoing business relationships.  Because DEFENDANTS'

16  conduct has already damaged HOLOMAXX as described herein, and because their continuing

17  conduct threatens to cause HOLOMAXX irreparable injury, HOLOMAXX has had no choice but to

18  file this action.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

I.    **Parties**

    **A.    HOLOMAXX is a highly-esteemed email service provider, with an excellent**

        **reputation for sending legitimate, non-spam email on behalf of commercial**

        **clients since its founding in 2000.**

**13.**     HOLOMAXX is an ecommerce business development company, providing a full range of services ranging from website development to creative media since its founding in 2000. Among other things, HOLOMAXX contracts with commercial clients to provide a fully-managed email marketing service, including everything from creating advertisements to maintaining data for its clients' customer lists. HOLOMAXX began providing these email marketing services in 2002.

14.     In its role as an email service provider ("ESP"), HOLOMAXX enters into contracts with commercial clients, pursuant to which HOLOMAXX sends marketing emails on its clients' behalf. Because these contracts generally provide that HOLOMAXX will be paid a fixed amount per email sent, HOLOMAXX's profits - as well as its business relationships and future economic viability - depend on HOLOMAXX's proven track record of delivering emails to its clients day in and day out. HOLOMAXX's clients, in turn, rely on HOLOMAXX to ensure that their customers - who, as described below, have specifically *elected* to receive their emails - receive creative and valuable marketing information, direct to their email inbox on a timely basis.

15.     HOLOMAXX's client companies all have an existing list of customers who have expressly elected to receive correspondence; these clients simply do not want to deal with the technical challenges commonly associated with deploying and managing an email campaign. In order to protect its own reputation, HOLOMAXX requires that its clients acquire their list subscribers in accordance with the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), which provides federal standards for commercial email, in addition to adhering to Holomaxx's own privacy policy, which has been in effect since 2000, with revisions from time to time. ("Privacy Policy," at http://www.holomaxx.com/privacy.html.) Holomaxx also provides services to marketing firms who acquire opt-in leads via co-registration. These clients are accepted on a case-by-case basis, based on evidence that they maintain high standards and use legitimate, straightforward (and Can-Spam compliant) practices to build their subscriber lists. Among other things, HOLOMAXX's clients

must typically require that subscribers provide their name, postal address, email and phone number. In order to prevent false registrations, subscriber registrations are then commonly confirmed via email; the client companies building these subscriber lists may also employ IP filtering, geo-location and "Captcha" technologies: IP filtering prevents multiple registrations from the same IP address; geo-location ensures that the registration is geographically located in the area of the address entered by the user; and Captcha (by requiring users to match characters printed on-screen) prevents automated submissions commonly used by spammers.

16.     In short, HOLOMAXX has been a legitimate email service provider (including email to MICROSOFT users) since 2002. HOLOMAXX takes a straightforward approach to mailing and (as described in detail below), does not use many of the methods commonly employed by other email marketers.

17.     The volume of email that HOLOMAXX sends varies with the needs of the client and the size of the clients' subscriber lists; however, in an average busy month HOLOMAXX may send 10 million emails per day, including an estimated 3 million emails to MICROSOFT users worldwide. Both HOLOMAXX and its clients are rightly wary of being treated as spam, by customers, regulators, or internet service providers ("ISPs"). HOLOMAXX therefore guards its reputation carefully, adhering scrupulously to industry best practices for sending protocols and customer list management, and monitoring its clients to ensure that they do the same.

18.     Among other things, to maintain its high standards and reputation, HOLOMAXX takes the following precautions in accordance with the Can-Spam Act:

        a.      All emails sent by HOLOMAXX contain clear and accurate transmission and header information. All email sent by HOLOMAXX originates from the same set of servers, all ending with ".holomaxx.net." HOLOMAXX does not make any attempt to disguise or hide itself; indeed, all email sent by HOLOMAXX has the same reply-to

address, making it easy to identify HOLOMAXX as the source.  All outgoing email

is validated by multiple domain-identification services:  It is signed with DKIM (*i.e.*,

DomainKeys Identified Mail, a service validating the sender's domain-name

identification), and HOLOMAXX's server supports both SPF (Sender Policy

Framework) and SenderID for verification purposes.  (SPF and SenderID are both

trade names for email authentication technology protocols that - like DKIM - verify

the domain name from which e-mail messages are sent.)

b.  In addition, HOLOMAXX sends all of its email from a relatively small number of IP

addresses (less than 100), whereas it is still commonplace in the industry for emailers

to use multiple entire blocks (256 or more) of IP addresses.  HOLOMAXX does not

"turn and burn" ranges of IP addresses; rather, it sends email from the same

addresses, without ever jumping around to different blocks in an attempt to avoid

blacklists.  In other words, HOLOMAXX does not register hundreds of throwaway

domains and switch them with each email campaign.  To the contrary, HOLOMAXX

has been using the same IP addresses and datacenter since 2004.  (A datacenter is a

facility that houses computer systems, software, and related equipment, generally for

multiple users.  HOLOMAXX's hosting datacenter is owned and operated by Dragon

Networks, Inc. ("Dragon Networks").)

c.  In accord with HOLOMAXX's Privacy Policy (and the Can-Spam Act),

HOLOMAXX's Anti-Spam policy tolerates only permission-based email.  All emails

sent by HOLOMAXX (except for transactional emails: e.g., important account

notifications and billing information) contain a link permitting recipients to "opt out"

of receiving further email messages, as well as a clear and conspicuous explanation

of how the recipient can opt out of getting future email from HOLOMAXX.  (This

option is also made available when a subscriber first signs up for the email list.) In addition, subscribers can unsubscribe by emailing HOLOMAXX directly at support@holomaxx.com; or, if they believe that they have received unsolicited commercial email from HOLOMAXX, they can report it at abuse@holomaxx.net. Furthermore, in every email sent by HOLOMAXX, the links (including the reply-to email address) all use the same domain.

d.  HOLOMAXX has also registered its domains and IP addresses with all available feedback loops (including MICROSOFT's), allowing HOLOMAXX to process email that recipients have marked as "junk" by clicking a button on their email interface (as opposed to clicking the "Unsubscribe" link provided within the email). The email from the feedback loop is processed automatically and is treated the same as an unsubscribe request. All email which is marked as "undeliverable" is also processed automatically and treated as an unsubscribe request.

e.  HOLOMAXX honors all opt-out requests (as described above in subparagraphs (c) and (d), above) within 10 business days. HOLOMAXX does not charge any fee to unsubscribe, does not require recipients to provide any personally identifying information beyond an email address, and does not make the recipient take any steps other than sending a reply email or visiting a single page on an Internet website as a condition for honoring an opt-out request. The reply address or other opt-out mechanism provided is always valid for at least 30 days after the email is sent. HOLOMAXX's "unsubscribe" function operates in real-time and has a "global" effect, meaning that if someone chooses to unsubscribe, that email address will not receive any future email from HOLOMAXX even if their email address appears on another HOLOMAXX client's subscriber list. Once a recipient has opted out,

HOLOMAXX does not sell or transfer their email addresses, even in the form of a mailing list, except that HOLOMAXX may on occasion transfer the addresses to another company hired solely for the purpose of complying with the Can-Spam Act.

f.   All emails sent by HOLOMAXX contain clear and accurate subject headings that accurately reflect the content of the message.  All advertising emails sent by HOLOMAXX are clearly and conspicuously identified as such.

g.   All emails sent by HOLOMAXX include the current physical postal address of either HOLOMAXX or the client for whom HOLOMAXX is sending the email.  (Where an email contains the client's physical address, the client forwards the few unsubscribe requests that it receives by "snail mail" to HOLOMAXX for processing on a monthly basis.)

h.   HOLOMAXX monitors its clients' email lists and practices, requiring that they maintain compliance with HOLOMAXX's privacy policies and the Can-Spam Act.

19.   As a result of the foregoing, since it began keeping track of complaints in 2002, HOLOMAXX has maintained a complaint rate of between 0.1% and 0.3%; i.e., fewer than 3 in every 1,000 emails sent by HOLOMAXX is routed to an invalid address or results in a subscriber opt-out.  MICROSOFT's feedback loop data shows a similarly low aggregate complaint rate, of consistently at or below 0.5%.

**B.   MICROSOFT is an Internet Service Provider, interested in lowering costs at the expense of commercial free speech and internet communications.**

20.   MICROSOFT is one of the world's largest technology companies, and one of the world's largest internet service providers ("ISPs"); among its other services, MICROSOFT provides free email accounts to millions of users and businesses using the "@hotmail.com" "@msn.com," and "@live.com" domains.  Possibly seeking to cut costs in its service to its free email users,

MICROSOFT improperly relies on a faulty automated spam filter ("SmartScreen") to determine whether incoming email is spam.

21.     MICROSOFT also employs a technique that it calls "dynamic spam traps": Specifically, MICROSOFT monitors email addresses which it believes were abandoned by individual users, and then (without any logical basis) decrees that any emails now being received by those accounts must be spam - even if the user requested email from that sender while actively using the account.

22.     Finally, MICROSOFT relies on evaluation and whitelisting services provided by DEFENDANT RETURN PATH.  As set forth below at paragraph 28, RETURN PATH's evaluation service (like SmartScreen) relies on faulty algorithms to detect spam; moreover, RETURN PATH profits by selling its services to ISPs and other third parties, then profits again by selling senders the chance to join a "whitelist" which will enhance their sending reputation.  HOLOMAXX is informed and believes, and based thereon alleges, that MICROSOFT has a contract with RETURN PATH, pursuant to which MICROSOFT also profits from the services provided by RETURN PATH.

23.     Unfortunately, SmartScreen has been programmed to identify spam based on certain mailing characteristics, without reference to whether the email in question actually violates the Can-Spam Act.  Taken together with MICROSOFT's other inappropriate techniques for spam detection, the effect is that MICROSOFT's determinations are often incorrect, leading MICROSOFT - as in this case - to label legitimate email as spam and prevent it from reaching end users.

24.     The arbitrary nature of MICROSOFT's determinations is highlighted by the fact that MICROSOFT's internal feedback loop, its monitoring service, and its customer support department often offer conflicting data to senders.  To make matters worse, once MICROSOFT has wrongly determined that a sender is sending spam, MICROSOFT will not reverse this determination, will not remedy the situation (including permitting the sender to send any other email to its users), and will not provide any information that would permit a user to change its sending practices to fall within its

guidelines.

**C.     DEFENDANT RETURN PATH is a self-described provider of "sender reputation" and "whitelisting" services; it profits from offering senders' purported "Reputation Scores" to ISPs and other third parties, whether those scores are right or wrong.**

**1.     DEFENDANT RETURN PATH first profits by selling its "sender reputation services" services to ISPs and other third parties.**

25.     DEFENDANT RETURN PATH is also among the world's largest technology corporations. RETURN PATH provides "sender reputation" services to ISPs and other third parties, including an email monitoring service known as Sender Score which purports to identify organizations that send spam email.  HOLOMAXX is informed and believes, and based thereon alleges, that RETURN PATH also directly operates the feedback loop for at least one other large internet service and email provider.

26.     In connection with its Sender Score services, RETURN PATH develops a reputation score ("Reputation Score") for Internet IP addresses.  It then publishes this Reputation Score, and related information, to third parties through, *inter alia,* its Sender Score website (at www.senderscore.org), which states:  "Like a credit score, a Sender Score is an indication of the trustworthiness of an email source.  □□ . . . Sender Score Reputation Data will help you to make good decisions to mitigate inbound spam into your network."  In other words, RETURN PATH intends that ISPs and other companies will rely on its Reputation Scores to determine whether email senders are sending spam, or legitimate email.

27.     HOLOMAXX is informed and believes, and based thereon alleges, that RETURN PATH

intercepted emails sent by HOLOMAXX in order to calculate HOLOMAXX's Reputation Score. Among other things, HOLOMAXX is also informed and believes, and based thereon alleges, that RETURN PATH solicits ISPs to intercept emails and provide them to RETURN PATH to include in its Sender Score data, and that MICROSOFT has forwarded emails sent by HOLOMAXX, to RETURN PATH for this purpose.

28.     Like MICROSOFT's automated SmartScreen service, Sender Score's algorithms often result in an incorrect determination.  Also like SmartScreen, Sender Score is a "black-box" service: *i.e.*, once a sender has been identified as a spammer, RETURN PATH refuses to provide any information that would allow the sender to change policies and reverse the determination.

### 2.     RETURN PATH then profits by selling commercial email senders the opportunity to buy their way onto a preferential "whitelist."

29.     RETURN PATH plays both ends against the middle:  After purportedly determining fair, accurate, and objective reputation scores for each email sender, and then selling those scores to ISPs and other third parties, RETURN PATH engages in a serious conflict of interest by selling email senders the opportunity to buy membership in their whitelist.  A "whitelist," as the name implies, is the opposite of a blacklist.  RETURN PATH advertises that members of its Sender Score-certified whitelist will get up to 40% higher delivery rates, and promises that they will "receive preferential treatment" (including, *e.g.*, a release from volume limitations).

30.     The cost to receive preferential treatment through RETURN PATH's whitelisting service is based on the amount of email sent - and the service does not come cheap.  Based on HOLOMAXX's current email volume, and an annual subscription to the whitelist would cost well over $100,000.  Of course, hand-in-hand with the promise of preferred treatment for senders who *do* pay to join RETURN PATH's whitelist, is the threat of "a diminished reputation" and resulting financial losses, for those who do not.  HOLOMAXX is informed and believes, and based thereon alleges, that

RETURN PATH's whitelist is the only one that MICROSOFT uses, and that MICROSOFT and RETURN PATH have entered into a contract whereby MICROSOFT profits from RETURN PATH's whitelist service.

**II.** **DEFENDANTS' Wrongful Conduct Has Caused HOLOMAXX Damages, and Their Continuing Wrongful Conduct Threatens to Cause HOLOMAXX Irreparable Injury.**

    **A.** **MICROSOFT has been arbitrarily intercepting, blocking, and delaying emails sent by HOLOMAXX to its clients' MICROSOFT-based customers since about November 2009, thereby violating federal law and interfering with HOLOMAXX's contractual and business relationships.**

31. Beginning on or before November 20, 2009, MICROSOFT began intermittently blocking, rerouting, and "throttling" (*i.e.*, delaying) emails sent by HOLOMAXX from IP addresses in the range from 209.124.78.41 to 209.124.78.60 (the ".78 Addresses"). MICROSOFT began delivering HOLOMAXX's emails regularly for about a month after HOLOMAXX threatened legal action in April, 2010; however, MICROSOFT began blocking HOLOMAXX's emails again in about June, 2010, including what amounts to a permanent block on the .78 Addresses. MICROSOFT continues to block the .78 Addresses as of the filing of this action.

32. HOLOMAXX rarely changes its IP addresses; however, in order to avoid improperly being associated with other email senders who might maintain lesser standards, and to avoid having its emails rejected by ISPs like MICROSOFT that fail to distinguish between different senders in the same range, in about May, 2010 HOLOMAXX acquired its own dedicated IP block, including addresses in the range from 209.124.88.200 through 209.124.88.219 (the ".88 Addresses," and together with the .78 Addresses, the "IP Addresses.").

33.     HOLOMAXX began to send email to MICROSOFT users from the .88 Addresses in about June, 2010; shortly thereafter (in about July, 2010), MICROSOFT began blocking these emails also. In fact, since about August, 2010, MICROSOFT has intentionally blocked all emails sent by HOLOMAXX to MICROSOFT users worldwide, despite the fact that MICROSOFT users solicited these emails, and HOLOMAXX sent them in accordance with the provisions of the Can-Spam Act. MICROSOFT has failed and refused to deliver email at all from most of HOLOMAXX's IP addresses; the few emails that MICROSOFT does accept are purposely routed to users' spam folders, despite the fact that users have elected to receive these emails, and whether or not the user has marked any other emails from HOLOMAXX as spam.

34.     HOLOMAXX has received error messages stating that the reasons for rejection "may be related to content with spam-like characteristics or IP/domain reputation problems." In emails to HOLOMAXX, MICROSOFT has admitted that it blocked HOLOMAXX's emails "based on the recommendations of our SmartScreen filter." However, despite repeated requests from HOLOMAXX, MICROSOFT has never identified any actual problem with HOLOMAXX's emails, and has explicitly refused to provide any details about the situation "since we are not a [sic] liberty to discuss the nature of the block."

35.     According to data provided by MICROSOFT's own feedback loop, HOLOMAXX's aggregate complaint rate for emails sent to MICROSOFT is consistently at or below 0.5%: *i.e.,* HOLOMAXX receives fewer than five complaint per 1,000 emails; this is generally considered a "clean threshold" (*i.e.*, not a cause for concern).

36.     HOLOMAXX is entitled to send legitimate, permission-based emails to its clients' customers. However, despite HOLOMAXX's repeated requests, MICROSOFT has failed and refused to resolve the issue, causing HOLOMAXX to lose revenues and damaging HOLOMAXX's client relationships.

**B.**    **MICROSOFT knew that HOLOMAXX contracts with clients to send emails on their behalf, and that its conduct interferes with HOLOMAXX's contractual, economic, and business relationships.**

37.    MICROSOFT knows full well that HOLOMAXX sends emails on behalf of commercial clients because, *inter alia*, HOLOMAXX has informed MICROSOFT of this fact in numerous communications with MICROSOFT. MICROSOFT also knows that it is interfering with HOLOMAXX's client relationships; among other things, HOLOMAXX explicitly stated in an email to MICROSOFT on April 30, 2010 that if HOLOMAXX's email to subscribers "does not get through, we lose money because they don't pay us for undelivered mail."

**C.**    **There was actual disruption of HOLOMAXX's contractual, economic, and business relationships with its clients.**

38.    HOLOMAXX entered into contracts to send emails for its clients: These contracts generally provided that HOLOMAXX would be paid a fixed fee for each email that HOLOMAXX sent; a few contracts specified that HOLOMAXX will receive a direct share of the profits generated by the email campaign. As a result of the conduct described herein, HOLOMAXX cannot perform its contracts, and its clients have not paid HOLOMAXX for the blocked emails that HOLOMAXX attempted to send on their behalf. In addition, the resulting damage to HOLOMAXX's reputation - both as a legitimate email sender, and as a business partner that is able to follow through on its contractual commitments - has caused harm to HOLOMAXX's economic and business relationships.

**D.**    **RETURN PATH has intercepted emails sent by HOLOMAXX.**

39.    Like MICROSOFT, RETURN PATH has wrongfully intercepted HOLOMAXX's legitimate

emails. As set forth fully below, RETURN PATH used information collected from those emails to evaluate HOLOMAXX's purported "reputation," and then published those false statements to MICROSOFT and other internet service providers through, *inter alia*, its internet Sender Score service. Like MICROSOFT, RETURN PATH's Sender Score service is a "black box" - *i.e.*, RETURN PATH does not provide any kind of useful feedback about how it determines that a particular sender is sending spam, and senders are not able to challenge its findings.

**E.     RETURN PATH is aware that MICROSOFT has blocked all emails sent by HOLOMAXX, and intended this result.**

40.     HOLOMAXX is informed and believes, and based thereon alleges, that RETURN PATH is aware that MICROSOFT has blocked HOLOMAXX's emails, as described fully above; by offering MICROSOFT a "Reputation Score" and other information that purportedly identified HOLOMAXX as a potential spammer, RETURN PATH intended that MICROSOFT engage in this conduct. Indeed, RETURN PATH has an incentive to encourage ISPs to block emails, because blocked email senders are more likely to join RETURN PATH's profitable whitelist.

**F.     DEFENDANTS both obtained information from HOLOMAXX's confidential email communications (and the computers where they were stored), and then used and disclosed this information.**

41.     HOLOMAXX is informed and believes, and based thereon alleges, that DEFENDANTS both accessed computers on which HOLOMAXX's confidential email communications were stored, and that DEFENDANTS also scanned the contents of those emails and obtained information therefrom, without the consent of either HOLOMAXX or the intended recipients. RETURN PATH

then used, disclosed, and relied on this information, by developing and publishing HOLOMAXX's

purported "Reputation Score." MICROSOFT similarly used, disclosed, and relied on the contents

of HOLOMAXX's emails, as well as information provided by RETURN PATH about

HOLOMAXX's purported "reputation," when it elected to treat HOLOMAXX's emails as spam.

HOLOMAXX is informed and believes, and based thereon alleges, that MICROSOFT also

disclosed the contents of its emails to RETURN PATH, for RETURN PATH's use in connection

with its Sender Score service.

> **G.    DEFENDANTS have published false, purportedly factual statements to third**
>
> **parties about HOLOMAXX, which (i) would tend to injure HOLOMAXX's**
>
> **reputation in the community and lessen its profits, and (ii) place HOLOMAXX**
>
> **in a false light.**

**42.**    As set forth fully below, DEFENDANTS have published false, purportedly factual

statements to third parties about HOLOMAXX, which would tend to injure HOLOMAXX's

reputation in the community and lessen its profits. Because these statements imply that

HOLOMAXX is a spammer, they also place HOLOMAXX in a false light.

> **1.    RETURN PATH has published false statements to ISPs and other third**
>
> **parties.**

**43.**    HOLOMAXX is informed and believes, and based thereon alleges, that RETURN PATH has

intentionally published "Reputation Scores" and other information which falsely indicate to

MICROSOFT and other third parties that HOLOMAXX may be sending spam from the IP

Addresses. By publishing this false information to, *inter alia,* its Sender Score website, RETURN

PATH has injured HOLOMAXX's reputation as a legitimate email service provider, causing

internet service providers to block email sent by HOLOMAXX and thereby lessening HOLOMAXX's profits as described fully below.

**2.      MICROSOFT has published false statements to HOLOMAXX's IP datacenter.**

44.      HOLOMAXX is informed and believes, and based thereon alleges, that MICROSOFT has intentionally provided information to HOLOMAXX's hosting IP datacenter (*i.e.,* Dragon Networks), falsely indicating that HOLOMAXX may be sending spam from the IP Addresses.

45.      Specifically, HOLOMAXX is informed and believes, and based thereon alleges, that MICROSOFT recently blocked all 8,192 IP Addresses originating from HOLOMAXX's hosting datacenter, and informed Dragon Networks in writing that, *inter alia,* they had taken this action because certain of HOLOMAXX's .78 Addresses had been rejected "for policy reasons," and were blocked manually "or for spamming."

46.      Dragon Networks initially responded to this information by, *inter alia,* directing HOLOMAXX to stop sending any email to Hotmail users until it had resolved the issue with MICROSOFT, and telling HOLOMAXX that they "need[ed] this cleaned up and fixed asap." By publishing this false information to Dragon Networks, MICROSOFT has injured HOLOMAXX's reputation as a legitimate email service provider, interfered with its contractual relationship with Dragon Networks, and curtailed its ability to send legitimate email, thereby causing damage to HOLOMAXX and lessening its profits as described fully below. (The datacenter block has since been lifted, except as to HOLOMAXX.)

**3.      DEFENDANTS' statements imply that HOLOMAXX is a spammer, thereby placing HOLOMAXX in an offensive and false light.**

47.     DEFENDANTS' statements, as described above at paragraphs 42 through 46, imply that HOLOMAXX is a spammer.  These statements therefore place HOLOMAXX in a false light.  Moreover, because sending spam is disruptive, annoying, *and criminal*, DEFENDANTS' statements negligently create a false impression about HOLOMAXX that would be highly offensive to any commercial email sender.  The DEFENDANTS knew that publication of these statements would create this false impression about HOLOMAXX, and either acted with disregard for the truth, or were negligent in determining the truth of the information or whether a false impression would be created.

### H.     DEFENDANTS acted with malice, oppression, fraud, and reckless indifference, in engaging in the conduct described above.

48.     DEFENDANTS have chosen to make legitimate email service providers the enemy, instead of working together with ESPs to protect both their clients' right to send legitimate email, and their customers' right to receive it.

### 1.     MICROSOFT's repeated refusal not merely to deliver email sent by HOLOMAXX, but also to provide information or means of redress, reflects a larger pattern of abuse.

49.     MICROSOFT's conduct, as described above, was part of a larger pattern of indiscriminately blocking legitimate emails, using cheap and ineffective technologies to avoid the expense of appropriately tracking and eliminating *only* spam email.  In addition to MICROSOFT's incentive to save costs, HOLOMAXX is informed and believes, and based thereon alleges, that MICROSOFT has an incentive to block emails indiscriminately because it shares in the profits when frustrated

senders join RETURN PATH's whitelist.  On several occasions since it began to block

HOLOMAXX's emails, MICROSOFT has recommended that HOLOMAXX join RETURN

PATH's whitelist to improve its email "deliverability."

50.     Tellingly, even after HOLOMAXX had repeatedly responded to MICROSOFT's requests for

information, described its email practices in detail, affirmed that its email is Can-Spam compliant,

confirmed that all of HOLOMAXX's sending domains are validated with both SPF and DKIM,

noted its low complaint rate based on *MICROSOFT's own data*, provided a link evidencing its good

score from another reputation service, and (finally) reviewed all of MICROSOFT's technical

standards and best practices and changed its mailing practices accordingly, MICROSOFT *still*

responded that it would not remove the block until HOLOMAXX's reputation improved, while *still*

refusing to identify any actual problems with HOLOMAXX's emails, and *still* offering the same

tired links and boilerplate advice.

51.     In other words, MICROSOFT refused to provide any information as to how it made its

determination, or how HOLOMAXX could revise its practices to get back into MICROSOFT's

good graces.  Clearly, despite being informed that its conduct was causing damage to

HOLOMAXX, MICROSOFT never intended to remedy this situation.  In the course of an electronic

exchange between HOLOMAXX and MICROSOFT, beginning in about November, 2009, and

continuing through about September 3, 2010:

      a.     MICROSOFT admitted that it blocked HOLOMAXX's emails "based on the

              recommendations of our [automatic] SmartScreen filter," and that it filters emails

              "based upon a combination of IP reputation and the *content* of individual emails"

              (emphasis added);

      b.     In email after email, MICROSOFT repeated the same generic, boilerplate advice,

              even after HOLOMAXX stated that it was following that advice;

c.   Among other things, MICROSOFT recommended that HOLOMAXX "[e]nroll in the Sender Score program. . . . [t]he only white List that Hotmail uses."

d.   MICROSOFT hedged its bets, "mak[ing] no guarantees that following these steps will guarantee deliverability . . . ."

e.   MICROSOFT informed HOLOMAXX several times that it had taken steps to allow emails from a few IP Addresses to reach their intended recipients, but these steps had no effect, and MICROSOFT then refused to make any changes that would be effective;

f.   Similarly, on July 14, 2010, MICROSOFT wrongly assured HOLOMAXX that it had "found no filters or blocks" applied to the .88 Addresses.  Even after HOLOMAXX responded that it was unable to send emails, and provided supporting evidence from MICROSOFT's *own monitoring service* ("SNDS"), MICROSOFT wrongly "confirmed" its initial conclusion, then recommended in boilerplate that HOLOMAXX try using its SNDS monitoring service;

g.   MICROSOFT repeatedly refused to provide details about "the nature of the block," or any real information about what HOLOMAXX could do to correct the situation.

h.   Finally, MICROSOFT stated explicitly that it would not remedy the situation until HOLOMAXX's reputation improved, despite the fact that (a) MICROSOFT has not identified any actual problem with HOLOMAXX's email practices, and (b) HOLOMAXX's practices are already Can-Spam compliant.

2.   **RETURN PATH acted with malice, oppression, fraud, and malicious indifference because it profits from providing inaccurate and negative assessments of legitimate email providers.**

52.     RETURN PATH has built its Sender Score business on the backs of legitimate email senders like HOLOMAXX.  Like MICROSOFT's SmartScreen, Sender Score relies on faulty indicators of spam to falsely identify legitimate ESPs like HOLOMAXX as spammers; it then denies such legitimate senders any recourse or information that would allow them to challenge RETURN PATH's determination.  RETURN PATH profits from this malicious and egregious conduct in several ways.  Among other things:

   a.     This conduct decreases the costs that RETURN PATH would incur by accurately assessing email senders and responding appropriately to their valid challenges;

   b.     This conduct inflates the perceived threat of spam, the demand for solutions, and RETURN PATH's own (unchallenged) accuracy rate, thereby enhancing sales to ISPs and other third parties; and

   c.     This conduct threatens the reputation and profits of commercial senders, strongly motivating them to join RETURN PATH's whitelist as the only way to maintain their business and business relationships.

53.     HOLOMAXX is informed and believes, and based thereon alleges, that RETURN PATH has intentionally, maliciously, and wrongfully published Reputation Scores and other information that would falsely indicate to third parties that HOLOMAXX may be sending spam.  Among other things, HOLOMAXX is informed and believes, and based thereon alleges, that RETURN PATH wrongfully published, and provided to MICROSOFT and other third parties, Reputation Scores and other information falsely indicating that HOLOMAXX may be sending spam from the IP Addresses.

## III.    Damages

54.     As a result of the foregoing conduct by DEFENDANTS, HOLOMAXX has suffered, and continues to suffer, direct and consequential damages in an excess of the jurisdictional limit of this

court (including at least $5,000 in damages since about January, 2010), in an amount to be proven at trial. In addition, HOLOMAXX has suffered, and continues to suffer, irreparable harm to its reputation and ongoing business relationships.

55.     Among other things, HOLOMAXX's contracts generally specify that HOLOMAXX will be paid a fixed fee for each email sent; a few contracts specify that HOLOMAXX will receive a direct share of the profits generated by the email campaign. In addition to the loss of profits that would have accrued from sending each email, HOLOMAXX has also lost business from existing and prospective clients, based on the injury to its reputation and its inability to send email reliably on behalf of its clients.

56.     Furthermore, 18 U.S.C. §§ 2510 *et seq.* and 18 U.S.C. §§ 2701 *et seq.* each provide a statutory minimum for civil damages caused by violations thereof.

57.     Because MICROSOFT continues to refuse to deliver emails sent by HOLOMAXX, HOLOMAXX's damages are likely limited not only to lost profits and lost clients; in addition, HOLOMAXX risks the threat of business disruptions including employee layoffs, unpaid bills, poor credit reports, damaged vendor relationships, and (potentially) bankruptcy.

## FIRST CAUSE OF ACTION

### (Violation of 18 U.S.C. §§ 2510 *et seq.* - The Wiretap Act)

### (Against All Defendants)

58.     Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 57 as if set forth herein.

59.     DEFENDANTS have intentionally intercepted electronic communications sent by HOLOMAXX, in violation of 18 U.S.C. §§ 2510 *et seq.* As described fully above, MICROSOFT has blocked all emails sent by HOLOMAXX to MICROSOFT users, and both DEFENDANTS have intercepted emails to evaluate their "spam-like characteristics."

60.     DEFENDANTS intentionally used and disclosed the contents of such electronic communications sent by HOLOMAXX, while knowing or having reason to know that the information was obtained through the interception of those communications in violation of 18 U.S.C. § 2511.  As described fully above, both DEFENDANTS have intercepted emails sent by HOLOMAXX in order to evaluate their "spam-like characteristics"; and furthermore, HOLOMAXX is informed and believes, and based thereon alleges, that both DEFENDANTS disclosed the contents of such emails to each other and to third parties for a similar purpose.

61.     DEFENDANTS' conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

62.     As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

63.     DEFENDANTS are continuing to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to HOLOMAXX.  It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for DEFENDANTS' continuing unlawful acts.  HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

64.     HOLOMAXX is therefore entitled to:

   a.     A declaration that:

          i.     HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

    ii.    Emails sent by HOLOMAXX in accord with such practices are not spam;

    iii.    HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference; and

    iv.    DEFENDANTS are prohibited from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

b.    A preliminary and permanent injunction:

    i.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient;

    ii.    requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

    iii.    requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

    iv.    requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

    v.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

c.     Compensatory damages, in an amount to be proven at trial, but in no event less than

        the statutory minimum provided for damages at 18 U.S.C. §§ 2510 *et seq.*

d.     Reasonable attorneys' fees and costs of litigation.

e.     Punitive damages.

## SECOND CAUSE OF ACTION

**(Violation of 18 U.S.C. §§ 2701 *et seq.* - The Stored Communications Act)**

**(Against All Defendants)**

65.     Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 57 as if set forth herein.

66.     By engaging in the wrongful conduct described herein, DEFENDANTS have intentionally exceeded their authorization to access facilities through which electronic communication services are provided, and have thereby obtained and prevented authorized access to wire or electronic communications sent by HOLOMAXX while they are in electronic storage in such system, in violation of 18 U.S.C. §§ 2701 *et seq.*

67.     DEFENDANTS' conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

68.     As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

69.     DEFENDANTS are continuing to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to HOLOMAXX.  It is

difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for DEFENDANTS' continuing unlawful acts.  HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

70.      HOLOMAXX is therefore entitled to:

    a.    A declaration that:

        i.    HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

        ii.    Emails sent by HOLOMAXX in accord with such practices are not spam;

        iii.    HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference; and

        iv.    DEFENDANTS are prohibited from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

    b.    A preliminary and permanent injunction:

        i.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient;

        ii.    requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

iii.    requiring MICROSOFT to provide information to HOLOMAXX about the

grounds for blocking HOLOMAXX's emails;

iv.    requiring RETURN PATH to provide information to HOLOMAXX about the

grounds for any information provided to MICROSOFT and other third parties

about HOLOMAXX; and

v.    requiring DEFENDANTS to reconfigure any automated technology to

comply with the terms of the Court's order.

c.    Compensatory damages, in an amount to be proven at trial, but in no event less than

the statutory minimum provided for damages at 18 U.S.C. §§ 2701 *et seq.*

d.    Reasonable attorneys' fees and costs of litigation.

e.    Punitive damages.

### THIRD CAUSE OF ACTION

**(Violation of 18 U.S.C. §§ 1030 *et seq.* - Computer Fraud)**

**(Against All Defendants)**

71.    Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1

through 57 as if set forth herein.

72.    DEFENDANTS have interfered with emails sent by HOLOMAXX, including emails sent to

interstate and foreign recipients. As described fully above, MICROSOFT has blocked all emails

sent by HOLOMAXX to MICROSOFT users, and both DEFENDANTS have intercepted emails,

and scanned their contents, to evaluate their "spam-like characteristics."

73.    By engaging in the wrongful conduct described herein, DEFENDANTS intentionally

exceeded their authorization to access computers used for interstate and foreign communications and

commerce, and obtained information from such computers, in violation of 18 U.S.C. §§ 1030 *et seq.*

74.    DEFENDANTS' conduct, as described herein, was performed with malice, oppression,

fraud, and reckless indifference. As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

75.     As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages.

76.     DEFENDANTS are continuing to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to HOLOMAXX. It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for DEFENDANTS' continuing unlawful acts. HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

77.     HOLOMAXX is therefore entitled to:

    a.     A preliminary and permanent injunction:

        i.     prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient;

        ii.     requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

        iii.     requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

        iv.     requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties

about HOLOMAXX; and

    v.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

    b.    Compensatory damages, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Intentional Interference with Contract)

### (Against All Defendants)

78.    Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 57 as if set forth herein.

79.    As described fully above, HOLOMAXX has entered into contracts with commercial clients, pursuant to which (among other things) HOLOMAXX sends marketing emails on its clients' behalf; HOLOMAXX also entered into a contract with its datacenter, Dragon Networks.

80.    As described fully above, MICROSOFT knew of such contractual relationships.

81.    As described fully above, MICROSOFT engaged in intentional acts to disrupt HOLOMAXX's contracts with its clients by, *inter alia*, intercepting and blocking all of HOLOMAXX's legitimate emails to its clients' customers; MICROSOFT also engaged in intentional acts to disrupt HOLOMAXX's contracts with Dragon Networks by, *inter alia*, blocking all emails sent from Dragon Networks' datacenter, and providing false and misleading information to Dragon Networks about HOLOMAXX..

82.    As described fully above, there was actual disruption of the contracts between HOLOMAXX, on one hand, and its clients and Dragon Networks, on the other hand.  Among other things, HOLOMAXX was unable to perform its contracts (or receive the benefits of its contract with Dragon Center), and HOLOMAXX's clients did not pay HOLOMAXX for the blocked emails that it attempted to send on their behalf.  In addition, the resulting damage to HOLOMAXX's reputation

- both as a legitimate email sender, and as a business partner that is able to follow through on its contractual commitments - has caused harm to HOLOMAXX's economic and business relationships.

83.     MICROSOFT's conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference. As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

84.     As described fully above, HOLOMAXX is informed and believes, and based thereon alleges, that RETURN PATH was aware that MICROSOFT planned to engage in the conduct described herein, and intended that MICROSOFT engage in such conduct.

85.     As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

86.     MICROSOFT is continuing to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to HOLOMAXX. It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for MICROSOFT's continuing unlawful acts. HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

87.     HOLOMAXX is therefore entitled to:

    a.     A preliminary and permanent injunction:

        i.     prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient.

ii.   requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

iii.   requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

iv.   requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

v.   requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

b.   Compensatory damages, in an amount to be proven at trial.

c.   Punitive damages.

## FIFTH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Advantage)

### (Against All Defendants)

88.   Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 57 as if set forth herein.

89.   As described fully above, HOLOMAXX maintains economic and business relationships with third parties, pursuant to which (among other things) HOLOMAXX sends marketing emails on their behalf, or (in the case of Dragon Networks) from its datacenter.

90.   As described fully above, such economic and business relationships contain a probable future economic benefit or advantage to HOLOMAXX.

91.   As described fully above, MICROSOFT knew of the existence of such economic and business relationships.

92.   As described fully above, MICROSOFT engaged in intentional, wrongful acts to disrupt

such economic and business relationships, by, *inter alia*, blocking emails sent by HOLOMAXX to

MICROSOFT users on behalf of HOLOMAXX's commercial clients, blocking all emails sent from

Dragon Networks' datacenter, and providing false and misleading information to Dragon Networks

about HOLOMAXX.

93.     As described fully above, there was actual disruption of such economic and business

relationships, in that HOLOMAXX was unable to perform its contracts (or receive the benefits of its

contract with Dragon Center), and HOLOMAXX's clients did not pay HOLOMAXX for the

blocked emails that it attempted to send on their behalf.  In addition, the resulting damage to

HOLOMAXX's reputation - both as a legitimate email sender, and as a business partner that is able

to follow through on its contractual commitments - has caused harm to HOLOMAXX's economic

and business relationships.

94.     MICROSOFT's conduct, as described herein, was performed with malice, oppression, fraud,

and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger

pattern or practice, tending to increase their own profits without regard for legitimate email senders.

95.     As described fully above, HOLOMAXX is informed and believes, and based thereon alleges,

that RETURN PATH was aware that MICROSOFT planned to engage in the conduct described

herein, and intended that MICROSOFT engage in such conduct.

96.     As a result of MICROSOFT's conduct, as described herein, HOLOMAXX has suffered, and

continues to suffer, damages in an amount to be proven at trial, including without limitation past and

future lost profits, injury to reputation, and injury to reputation, as, as well as other consequential

damages.

97.     MICROSOFT is continuing to engage in the unlawful actions alleged herein, and unless

restrained and enjoined will continue to do so, causing irreparable harm to HOLOMAXX.  It is

difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for

MICROSOFT's continuing unlawful acts. HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

98.     HOLOMAXX is therefore entitled to:

    a.     A preliminary and permanent injunction:

        i.     prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient.;

        ii.     requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

        iii.     requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

        iv.     requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

        v.     requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

    b.     Compensatory damages, in an amount to be proven at trial.

    c.     Punitive damages.

### SIXTH CAUSE OF ACTION

**(Violation of California Penal Code §§ 630 *et seq.* - Wiretapping/Eavesdropping)**

**(Against All Defendants)**

99.     Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 57 as if set forth herein.

100. As described fully above, HOLOMAXX is informed and believes, and based thereon alleges, that DEFENDANTS intentionally scanned and recorded the contents of confidential emails sent by HOLOMAXX, and attempted to learn the contents of such emails while they were in transit, without the consent of HOLOMAXX or the intended recipients.

101. DEFENDANTS' conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference. As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

102. As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

103. DEFENDANTS are continuing to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to HOLOMAXX. It is difficult to ascertain the amount of compensation that could afford HOLOMAXX adequate relief for DEFENDANTS' continuing unlawful acts. HOLOMAXX's remedy at law is, therefore, inadequate to compensate for the injuries threatened.

104. HOLOMAXX is therefore entitled to:

   a. A preliminary and permanent injunction prohibiting DEFENDANTS from intercepting any emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), and/or scanning or recording the contents of such emails.

   b. Compensatory damages, in an amount to be proven at trial, and in no event less than the greater of the following: (i) Five thousand dollars; or (ii) Three times the amount

1    of actual damages sustained by HOLOMAXX.

2                        **SEVENTH CAUSE OF ACTION**

3    **(Violation of California Civil Code §§ 43 *et seq.* - Defamation/Libel)**

4                           **(Against All Defendants)**

5

6    105.   Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1

7    through 57 as if set forth herein.

8    106.   As set forth fully above, DEFENDANTS have published statements to third parties about

9    HOLOMAXX that would tend to injure HOLOMAXX's reputation in the community, and lessen its

10   profits. Specifically, HOLOMAXX is informed and believes, and based thereon alleges, that: (a)

11   RETURN PATH has intentionally published "Reputation Scores" and other information which

12   falsely indicates to MICROSOFT and other third parties that HOLOMAXX may be sending spam

13   from the IP Addresses; and (b) MICROSOFT has intentionally published information which falsely

14   indicates that HOLOMAXX may be sending spam from the IP Addresses.

15

16   107.   As set forth fully above, RETURN PATH published these statements on the internet;

17   MICROSOFT published these statements in electronic communications with Dragon Networks.

18   108.   The statements made by both DEFENDANTS purported to provide factual data about

19   HOLOMAXX.

20

21   109.   The statements made by both DEFENDANTS were false.

22   110.   RETURN PATH's conduct, as described herein, was performed with malice, oppression,

23   fraud, and reckless indifference. As described fully above, DEFENDANTS' conduct was part of a

24   larger pattern or practice, tending to increase their own profits without regard for legitimate email

25   senders.

26   111.   As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered,

27   and continues to suffer, damages in an amount to be proven at trial, including without limitation past

28

1  and future lost profits, and injury to reputation, as well as other consequential damages, in excess of

2  the jurisdictional limit of this court.

3  112.   Defendants are continuing to engage in the unlawful actions alleged herein, and unless

4  restrained and enjoined will continue to do so, causing irreparable harm to Plaintiff.  It is difficult to

5

6  ascertain the amount of compensation that could afford Plaintiff adequate relief for Defendants'

7  continuing unlawful acts.  Plaintiff's remedy at law is, therefore, inadequate to compensate for the

8  injuries threatened.  HOLOMAXX is therefore entitled to:

9       a.      A preliminary and permanent injunction:

10              requiring RETURN PATH to correct HOLOMAXX's Reputation Score immediately

11                      to reflect that HOLOMAXX sends only legitimate email;

12

13      ii.     requiring RETURN PATH to publish the corrected score in substantially as

14                      conspicuous a manner as the previous false statement;

15      iii.    prohibiting RETURN PATH from publishing false reports about

16                      HOLOMAXX, or providing such false reports to third parties;

17      iv.     requiring RETURN PATH to provide information to HOLOMAXX about the

18                      grounds for any information provided to MICROSOFT and other third parties

19

20                      about HOLOMAXX; and

21      v.      requiring RETURN PATH to reconfigure any automated technology to

22                      comply with the terms of the Court's order.

23      vi.     requiring MICROSOFT to send a statement to Dragon Networks stating that

24                      HOLOMAXX sends only legitimate email;

25      vii.    prohibiting MICROSOFT from providing false statements to third parties

26                      about HOLOMAXX;

27

28      viii.   requiring MICROSOFT to provide information to HOLOMAXX about the

grounds for any information provided to third parties about HOLOMAXX; and

ix.   requiring MICROSOFT to reconfigure any automated technology to comply with the terms of the Court's order.

b.   Compensatory damages, in an amount to be proven at trial.

c.   Punitive damages.

## EIGHTH CAUSE OF ACTION

### (False Light)

### (Against All Defendants)

113.   Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 57 as if set forth herein.

114.   As set forth fully above, DEFENDANTS have publicly disclosed information and materials that showed HOLOMAXX in a false light.  Specifically, HOLOMAXX is informed and believes, and based thereon alleges, that both DEFENDANTS have intentionally disclosed information which gives the false impression that HOLOMAXX is a spammer.

115.   As set forth fully above, RETURN PATH published these statements on the internet; MICROSOFT published these statements in electronic communications with Dragon Networks.

116.   The false light created by the publication would be highly offensive to a reasonable person in HOLOMAXX's position, because sending spam is disruptive, annoying, *and criminal*, and spammers are universally reviled.

117.   RETURN PATH's conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

118.    As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

119.    Defendants are continuing to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to Plaintiff. It is difficult to ascertain the amount of compensation that could afford Plaintiff adequate relief for Defendants' continuing unlawful acts. Plaintiff's remedy at law is, therefore, inadequate to compensate for the injuries threatened. HOLOMAXX is therefore entitled to:

 a. A preliminary and permanent injunction:

  i. requiring RETURN PATH to correct HOLOMAXX's Reputation Score immediately to reflect that HOLOMAXX sends only legitimate email;

  ii. requiring RETURN PATH to publish the corrected score in substantially as conspicuous a manner as the previous false statement;

  iii. prohibiting RETURN PATH from publishing reports about HOLOMAXX that would tend to create the false impression that HOLOMAXX is a spammer, or providing such reports to third parties;

  iv. requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

  v. requiring RETURN PATH to reconfigure any automated technology to comply with the terms of the Court's order.

  vi. requiring MICROSOFT to send a statement to Dragon Networks stating that HOLOMAXX sends only legitimate email;

      vii.    prohibiting MICROSOFT from providing information to third parties about HOLOMAXX that would tend to create the false impression that HOLOMAXX is a spammer;

      viii.   requiring MICROSOFT to provide information to HOLOMAXX about the grounds for any information provided to third parties about HOLOMAXX; and

      ix.    requiring MICROSOFT to reconfigure any automated technology to comply with the terms of the Court's order.

    b.    Compensatory damages, in an amount to be proven at trial.

    c.    Punitive damages.

## NINTH CAUSE OF ACTION

**(Violation of California Business & Professions Code §§ 17200 *et seq.*)**

**(Against All Defendants)**

120.    Plaintiff incorporates by reference and re-alleges each and every allegation of paragraphs 1 through 57 as if set forth herein.

121.    By engaging in the conduct described herein, DEFENDANTS have engaged in unlawful, unfair, or fraudulent business acts or practices in violation of California Business & Professions Code §§ 17200 *et seq.*

122.    DEFENDANTS' conduct, as described herein, was performed with malice, oppression, fraud, and reckless indifference.  As described fully above, DEFENDANTS' conduct was part of a larger pattern or practice, tending to increase their own profits without regard for legitimate email senders.

123.    As a result of DEFENDANTS' conduct, as described herein, HOLOMAXX has suffered, and continues to suffer, damages in an amount to be proven at trial, including without limitation past

and future lost profits, and injury to reputation, as well as other consequential damages, in excess of the jurisdictional limit of this court.

124. HOLOMAXX is therefore entitled to:

    a. A declaration that:

        i. HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

        ii. Emails sent by HOLOMAXX in accord with such practices are not spam; and

        iii. HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference.

    b. A preliminary and permanent injunction:

        i. prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient;

        ii. requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

        iii. prohibiting DEFENDANTS from scanning or recording the contents of such emails;

        iv. prohibiting DEFENDANTS from publishing false reports about HOLOMAXX, or about emails sent by HOLOMAXX; and

        v. requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

    c. Restitution of any profits resulting to DEFENDANTS from the conduct alleged

herein, in an amount to be proven at trial.

    d.    Reasonable attorneys' fees and costs of litigation.

## PRAYER

**WHEREFORE,** Plaintiff HOLOMAXX respectfully requests that the Court enter judgment against DEFENDANTS, and provide Plaintiff HOLOMAXX the following relief:

## ON THE FIRST CAUSE OF ACTION

### (Violation of 18 U.S.C. §§ 2510 *et seq.* - The Wiretap Act)

### (Against All Defendants)

1.    A declaration that:

    a.    HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

    b.    Emails sent by HOLOMAXX in accord with such practices are not spam;

    c.    HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference; and

    d.    DEFENDANTS are prohibited from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

2.    A preliminary and permanent injunction:

    a.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

b.    requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

c.    requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

d.    requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

e.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

3.    Compensatory damages, in an amount to be proven at trial, but in no event less than the statutory minimum provided for damages at 18 U.S.C. §§ 2510 *et seq.*

4.    Reasonable attorneys' fees and costs of litigation.

5.    Punitive damages.

## ON THE SECOND CAUSE OF ACTION

### (Violation of 18 U.S.C. §§ 2701 *et seq.* - The Stored Communications Act)

### (Against All Defendants)

1.    A declaration that:

a.    HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

b.    Emails sent by HOLOMAXX in accord with such practices are not spam;

c.    HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference; and

d.    DEFENDANTS are prohibited from intercepting, deprioritizing, blocking, delaying,

or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient.

2.   A preliminary and permanent injunction:

    a.   prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.), including rerouting such emails away from the primary inbox of the intended recipient;

    b.   requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

    c.   requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

    d.   requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

    e.   requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

3.   Compensatory damages, in an amount to be proven at trial, but in no event less than the statutory minimum provided for damages at 18 U.S.C. §§ 2510 et seq.

4.   Reasonable attorneys' fees and costs of litigation.

5.   Punitive damages.

## ON THE THIRD CAUSE OF ACTION

### (Violation of 18 U.S.C. §§ 1030 et seq. - Computer Fraud)

### (Against All Defendants)

1.    A preliminary and permanent injunction:

    a.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient;

    b.    requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

    c.    requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

    d.    requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

    e.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

2.    Compensatory damages, in an amount to be proven at trial.

### ON THE FOURTH CAUSE OF ACTION

**(Intentional Interference with Contract)**

**(Against All Defendants)**

1.    A preliminary and permanent injunction:

    a.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient;

    b.    requiring MICROSOFT to forward such emails directly and immediately to the

primary inbox of the intended recipient;

    c.    requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

    d.    requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

    e.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

2.    Compensatory damages, in an amount to be proven at trial.

3.    Punitive damages.

## ON THE FIFTH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Advantage)

### (Against All Defendants)

1.    A preliminary and permanent injunction:

    a.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient;

    b.    requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

    c.    requiring MICROSOFT to provide information to HOLOMAXX about the grounds for blocking HOLOMAXX's emails;

    d.    requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about

HOLOMAXX; and

e.      requiring DEFENDANTS to reconfigure any automated technology to comply with

the terms of the Court's order.

2.     Compensatory damages, in an amount to be proven at trial.

3.     Punitive damages.

## ON THE SIXTH CAUSE OF ACTION

**(Violation of California Penal Code §§ 630 *et seq.* - Wiretapping/Eavesdropping)**

**(Against All Defendants)**

1.     A preliminary and permanent injunction prohibiting DEFENDANTS from intercepting any

emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103

U.S.C. §§ 7701 et seq.), and/or scanning or recording the contents of such emails.

2.     Compensatory damages, in an amount to be proven at trial, and in no event less than the

greater of the following:  (i) Five thousand dollars; or (ii) Three times the amount of actual

damages sustained by HOLOMAXX.

## ON THE SEVENTH CAUSE OF ACTION

**(Violation of California Civil Code §§ 43 *et seq.* - Defamation/Libel)**

**(Against All Defendants)**

1.     A preliminary and permanent injunction:

a.      requiring RETURN PATH to correct HOLOMAXX's Reputation Score immediately

to reflect that HOLOMAXX sends only legitimate email;

b.      requiring RETURN PATH to publish the corrected score in substantially as

conspicuous a manner as the previous false statement;

c.      prohibiting RETURN PATH from publishing false reports about HOLOMAXX, or

providing such false reports to third parties;

d.    requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

e.    requiring RETURN PATH to reconfigure any automated technology to comply with the terms of the Court's order.

f.    requiring MICROSOFT to send a statement to Dragon Networks stating that HOLOMAXX sends only legitimate email;

g.    prohibiting MICROSOFT from providing false information to third parties about HOLOMAXX;

h.    requiring MICROSOFT to provide information to HOLOMAXX about the grounds for any information provided to third parties about HOLOMAXX; and

i.    requiring MICROSOFT to reconfigure any automated technology to comply with the terms of the Court's order.

2.    Compensatory damages, in an amount to be proven at trial.

3.    Punitive damages.

## ON THE EIGHTH CAUSE OF ACTION

### (False Light)

### (Against All Defendants)

1.    A preliminary and permanent injunction:

a.    requiring RETURN PATH to correct HOLOMAXX's Reputation Score immediately to reflect that HOLOMAXX sends only legitimate email;

b.    requiring RETURN PATH to publish the corrected score in substantially as conspicuous a manner as the previous false statement;

c.    prohibiting RETURN PATH from publishing reports about HOLOMAXX that would

tend to create the false impression that HOLOMAXX is a spammer, or providing such reports to third parties;

d.    requiring RETURN PATH to provide information to HOLOMAXX about the grounds for any information provided to MICROSOFT and other third parties about HOLOMAXX; and

e.    requiring RETURN PATH to reconfigure any automated technology to comply with the terms of the Court's order.

f.    requiring MICROSOFT to send a statement to Dragon Networks stating that HOLOMAXX sends only legitimate email;

g.    prohibiting MICROSOFT from providing information to third parties about HOLOMAXX that would tend to create the false impression that HOLOMAXX is a spammer;

h.    requiring MICROSOFT to provide information to HOLOMAXX about the grounds for any information provided to third parties about HOLOMAXX; and

i.    requiring MICROSOFT to reconfigure any automated technology to comply with the terms of the Court's order.

2.    Compensatory damages, in an amount to be proven at trial.

3.    Punitive damages.

## ON THE NINTH CAUSE OF ACTION

### (Violation of California Business & Professions Code §§ 17200 *et seq.*)

### (Against All Defendants)

1.    A declaration that:

a.    HOLOMAXX's current email practices, as set forth herein, are in accord with the Can-Spam Act;

b.    Emails sent by HOLOMAXX in accord with such practices are not spam; and

c.    HOLOMAXX has the right to send such legitimate, non-spam emails directly to the intended recipient's primary inbox, without interception, deprioritization, blocking, delay, or other interference.

2.   A preliminary and permanent injunction:

a.    prohibiting DEFENDANTS from intercepting, deprioritizing, blocking, delaying, or interfering with emails sent by HOLOMAXX in accordance with the provisions of the Can-Spam Act (103 U.S.C. §§ 7701 et seq.),  including rerouting such emails away from the primary inbox of the intended recipient;

b.    requiring MICROSOFT to forward such emails directly and immediately to the primary inbox of the intended recipient;

c.    prohibiting DEFENDANTS from scanning or recording the contents of such emails;

d.    prohibiting DEFENDANTS from publishing false reports about HOLOMAXX, or about emails sent by HOLOMAXX; and

e.    requiring DEFENDANTS to reconfigure any automated technology to comply with the terms of the Court's order.

3.   Restitution of any profits resulting to DEFENDANTS from the conduct alleged herein, in an amount to be proven at trial.

4.   Reasonable attorneys' fees and costs of litigation

///

## ON ALL CAUSES OF ACTION

1.    Such other relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff HOLOMAXX

demands trial by jury in this action of all issues so triable.

DATED: 10-27, 2010

ERIK S. SYVERSON, ATTORNEY AT LAW

By: _____
Erik S. Syverson
Attorneys for Plaintiff Holomaxx Technologies
Corporation, a Pennsylvania S Corporation