1   I. NEEL CHATTERJEE (SBN 173985)
    nchatterjee@orrick.com
2   GABRIEL M. RAMSEY (SBN 209218)
    gramsey@orrick.com
3   JULIO C. AVALOS (SBN 255350)
    javalos@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA  94025
    Telephone:    650-614-7400
6   Facsimile:    650-614-7401

7   Attorneys for Defendant
    MICROSOFT CORPORATION

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13   HOLOMAXX TECHNOLOGIES, a            Case No.  C 10-04924-JF
     Pennsylvania Corporation,
14                                       **DEFENDANT MICROSOFT**
                     Plaintiff,          **CORPORATION'S NOTICE OF**
15                                       **MOTION AND MOTION TO**
            v.                           **DISMISS COMPLAINT PURSUANT**
16                                       **TO FED. R. CIV. P. 12(b)(6)**
     MICROSOFT CORPORATION, a Delaware
17   Corporation,                        Date:      February 25, 2011
                                         Time:      9:00 a.m.
18                   Defendant.          Judge:     Honorable Jeremy Fogel
                                         Courtroom:   Courtroom 3, 5th Floor
19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................................... 2

III.  ARGUMENT ................................................................................................................ 4

    A.    Motion to Dismiss Standard .............................................................................. 5

    B.    The Communications Decency Act Bars Holomaxx's Third Through Sixth
          And Ninth Claims ............................................................................................... 6

          1.    Accepting Holomaxx's Allegations As True, Microsoft Satisfies All
                Requirements Necessary For CDA Immunity ........................................... 7

          2.    Because Microsoft Is Entitled To Immunity Under The CDA, The
                Court Must Dismiss Holomaxx's Claims Three Through Six And
                Nine ............................................................................................................ 9

          3.    Holomaxx's Disagreement With Microsoft's Filtering Methodology
                Is Legally Irrelevant And Does Not Save Holomaxx's Claims ................ 9

    C.    Each Of Holomaxx's Claims Is Insufficiently Pled And Should Be
          Dismissed For Failure To State A Claim ........................................................ 11

          1.    Holomaxx Fails To State A Claim For Violation Of The Wiretap
                Act ............................................................................................................ 11

          2.    Independent Of The CDA, Holomaxx Fails To State A Claim For
                 Violation Of California Penal Code §§ 630, et seq.................................. 15

          3.    Holomaxx Fails To State A Claim For Violation Of The Stored
                 Communications Act................................................................................ 15

          4.    Independent Of The CDA, Holomaxx Fails To State A Claim for
                Violation Of The Computer Fraud And Abuse Act ................................ 17

          5.    Independent Of The CDA, Holomaxx Fails To State A Claim For
                 Intentional Interference With Contract And Intentional Interference
                With Prospective Business Advantage..................................................... 18

          6.    Independent Of The CDA, Holomaxx Fails To State A Claim For
                 Unfair Competition ................................................................................ 22

          7.    Holomaxx Fails To State A Claim For Defamation And False Light ...... 23

IV.   CONCLUSION ........................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

**Page(s)**

4

*Accuimage Diagnostics Corp.* v. *Terarecon, Inc.,*
   260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................................ 21

5

*Ashcroft* v. *Iqbal,*
   129 S. Ct. 1937 (2009) ........................................................................................................ 6

6

*Bell Atl. Corp.* v. *Twombly,*
   550 U.S. 544 (2007) ............................................................................................................ 5

7

8

*Black* v. *Google, Inc.,*
   2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13, 2010) .................................................. 5

9

*Bohach* v. *City of Reno,*
   932 F. Supp. 1232 (D. Nev. 1996) ...................................................................................... 16

10

11

*Bradley* v. *Google,*
   No. C06-05289-WHA, 2006 U.S. Dist. LEXIS 94455 (N.D. Cal. Dec. 22, 2006) ............... 13

12

*Branch* v. *Tunnell,*
   14 F.3d 449 (9th Cir. 1994) ................................................................................................. 13

13

14

*Bunnell* v. *Motion Picture Ass'n of Am.,*
   567 F. Supp. 2d 1148 (C.D. Cal. 2007) .............................................................................. 15

15

*Cardinal Health 414, Inc.* v. *Adams,*
   582 F. Supp. 2d 967 (M.D. Tenn. 2008) ............................................................................. 13

16

17

*Cont'l Grp., Inc.* v. *Kw Prop. Mgmt, LLC,*
   622 F. Supp. 2d 1357 (S.D. Fla. 2009) ............................................................................... 17

18

*Crowley* v. *Cybersource Corp.,*
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) .............................................................................. 16

19

20

*Dodds* v. *Am. Broadcasting Co.,*
   145 F.3d 1053 (9th Cir. 1998) ............................................................................................. 24

21

*Dworkin* v. *Hustler Magazine,*
   867 F.2d 1188 (9th Cir. 1989) ............................................................................................. 25

22

23

*Ebay, Inc.* v. *Bidder's Edge,*
   100 F. Supp. 2d 1058 (N.D. Cal. 2002) .............................................................................. 17

24

*e360Insight, LLC v. Comcast Corporation,*
   546 F. Supp. 2d 605 (N.D. Ill. 2008) ........................................................................... *passim*

25

26

*Fraser* v. *Nationwide Mut. Ins. Co.,*
   352 F.3d 107 (3d Cir. 2003) ................................................................................................ 16

27

28

**TABLE OF AUTHORITIES**
(Cont.)

**FEDERAL CASES**

Page(s)

*Galbraith v. County of Santa Clara*,
　307 F.3d 1119 (9th Cir. 2002)..................................................................................... 13

*Goddard* v. *Google, Inc.*,
　640 F. Supp. 2d 1193 (N.D. Cal. 2009) ....................................................................... 59

*Gordon* v. *Virtumundo, Inc.*,
　575 F.3d 1040 (9th Cir. 2009)................................................................................ 3, 24

*Hotmail Corp.* v. *Van$ Money Pie Inc.*,
　47 U.S.P.Q. 2d 1020 (N.D. Cal. 1998) ........................................................................ 18

*Howard* v. *America Online, Inc.*,
　208 F.3d 741 (9th Cir. 2000)........................................................................................ 12

*Ideal Aerosmith, Inc.* v. *Acutronic USA, Inc.*,
　2007 U.S. Dist. LEXIS 91644 (W.D. Pa. Dec. 13, 2007)............................................. 12

*Knievel* v. *ESPN*,
　393 F.3d 1068 (9th Cir. 2005)................................................................................ 23, 24

*Konop* v. *Hawaiian Airlines, Inc.*,
　302 F.3d 868 (9th Cir. 2002) ....................................................................................... 12

*Lewis-Burke Assocs. LLC* v. *Widder*,
　No. 09-302-JMF, 2010 U.S. Dist. LEXIS 76180 (D.D.C. July 28, 2010) ..................... 18

*Maxner Co. Ltd.*, v. *Costco Wholesale Corp.*,
　No. 03-35865, 2004 U.S. App. LEXIS 14298 (9th Cir. July 12, 2004)......................... 20

*Mendiondo* v. *Centinela Hosp. Med. Ctr.*,
　521 F.3d 1097 (9th Cir. 2008)........................................................................................ 5

*Milkovich* v. *Lorain Journal Co.*,
　497 U.S. 1 (1990) ......................................................................................................... 24

*Optinrealbig.com, LLC* v. *Ironport Systems, Inc.*,
　323 F. Supp. 2d 1037 (N.D. Cal. 2004) .................................................................. 3, 7, 8

*Price* v. *Stossel*,
　620 F.3d 992 (9th Cir. 2010)........................................................................................ 23

*Secureinfo Corp.* v. *Telos Corporation*,
　387 F. Supp. 2d 593 (E.D. Va. 2005)........................................................................... 18

*Solano* v. *Playgirl, Inc.*,
　292 F.3d 1078 (9th Cir. 2002)...................................................................................... 23

**TABLE OF AUTHORITIES**
(Cont.)

**FEDERAL CASES**

Page(s)

*Sprewell* v. *Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001).......................................................................................... 6

*Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996).......................................................................................... 14

*State-Wide Photocopy Corp.* v. *Tokai Financial Services, Inc.*,
    909 F. Supp. 137 (S.D.N.Y. 1995).................................................................................. 16

*In re Toys R Us, Inc., Privacy Litig.*,
    No. C00-2746-MMC, 2001 U.S. Dist. LEXIS 16947 (N.D. Cal. Oct. 9, 2001)...................... 17

*Winter* v. *Bassett*,
    2003 U.S. Dist. LEXIS 26904 (M.D.N.C. Aug. 22, 2003)...................................................... 8

*Young* v. *Facebook, Inc.*,
    2010 U.S. Dist. LEXIS 116530 (N.D. Cal. Oct. 25, 2010)...................................................... 5

*Zango, Inc.* v. *Kaspersky*,
    2007 U.S. Dist. LEXIS  97332 (W.D. Wash. Aug. 28, 2007) ........................................... 9, 10

*Zango, Inc.*  v. *Kaspersky*,
    568 F.3d 1169 (9th Cir. 2009).................................................................................. 7, 8, 9, 10

**STATE CASES**

*Chavez* v. *Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) ......................................................................................... 22

*Della Penna* v. *Toyota Motor Sales, Co.*,
    11 Cal. 4th 376 (1995) .......................................................................................... 19, 20

*Fellows* v. *Nat'l Enquirer, Inc.*,
    42 Cal. 3d 234 (1986) ........................................................................................... 23

*Gilbert* v. *Sykes*,
    147 Cal. App. 4th 13 3d 752 (2007) ................................................................................ 23

*Korea Supply Co.* v. *Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ........................................................................................... 19

*Lazar* v. *Hertz Corp.*,
    69 Cal. App. 4th 1494 (1999) ...................................................................................... 22

*Pacific Gas & Elec. Co.* v. *Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ........................................................................................... 19

# TABLE OF AUTHORITIES
## (Cont.)

## STATE CASES

**Page(s)**

*Quelimane Co.* v. *Stewart Title Guar. Co.*,
   19 Cal. 4th 26 (1998) .......................................................................................... 19

*Selleck* v. *Globe Int'l*,
   166 Cal. App. 3d 1123 (1985)............................................................................. 25

*Westside Ctr. Assocs.* v. *Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) .............................................................................. 21

## FEDERAL STATUTES

15 U.S.C. § 7701 ............................................................................................... 3, 11

18 U.S.C. § 1030 ......................................................................................... 1, 17, 18

18 U.S.C. § 2510 ......................................................................................... 1, 11, 12

18 U.S.C. § 2511 ....................................................................................... 12, 13, 14

18 U.S.C. § 2518 .................................................................................................. 15

18 U.S.C. § 2701 ............................................................................................... 1, 16

47 U.S.C. § 230................................................................................ 1, 5, 6, 7, 9, 11

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 6

Fed. R. Civ. P. 12(b)(6)........................................................................ 1, 5, 6, 13, 6, 13

## STATE STATUTES

**Page(s)**

California Bus. & Prof. Code § 17200 ............................................................. 1, 22

California Civil Code § 43 ..................................................................................... 1

California Penal Code § 630 ............................................................................. 1, 15

California Penal Code § 631 ................................................................................ 15

**TABLE OF AUTHORITIES**
**(Cont.)**

**MISCELLANEOUS**

**Page(s)**

Restatement (Second) of Torts § 652E [1976]...............................................................................23

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 25, 2011 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jeremy Fogel, United States District Court, 280 S. First Street, San Jose, California 95113, Microsoft Corporation ("Microsoft") will move the Court for an order dismissing the Complaint of Holomaxx Technologies Corporation pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: December 17, 2010            GABRIEL M. RAMSEY
                                    Orrick, Herrington & Sutcliffe LLP

                                    _/s/ Gabriel M. Ramsey_
                                    GABRIEL M. RAMSEY
                                    Attorneys for Defendant
                                    MICROSOFT CORPORATION

1              **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3          This motion presents a straightforward issue.  The efforts taken by an e-mail provider to

4    stop spam, as alleged here, are not actionable as a matter of law.  Plaintiff Holomaxx

5    Technologies Corporation ("Holomaxx") is a self-described "e-mail marketing service."

6    Specifically, every day Holomaxx sends millions of bulk commercial solicitations and

7    advertisements to e-mail recipients.  As a federal judge recently described a similar e-mail

8    marketing service, "[s]ome, perhaps even a majority in this country, would call it a spammer."

9    *e360Insight, LLC v. Comcast Corporation*, 546 F. Supp. 2d 605, 606 (N.D. Ill. 2008).

10         Defendant Microsoft Corporation ("Microsoft") provides e-mail services to Internet users,

11   such as the free Windows Live Hotmail service ("Hotmail").  Like virtually every other e-mail

12   provider (such as Yahoo!, Google, Comcast, Qwest and others), Microsoft filters e-mails that

13   arrive at its servers in order to manage network resources and prevent objectionable e-mails from

14   reaching its subscribers.  According to Holomaxx's Complaint, Microsoft blocked millions of

15   Holomaxx's unwanted e-mails from reaching Microsoft e-mail subscribers and thereafter stated,

16   accurately, that Holomaxx had been blocked "for policy reasons" "or for spamming."

17         Incredibly, Holomaxx argues that by protecting its customers and servers this way,

18   Microsoft has purportedly violated no fewer than nine federal and California laws, and has here

19   brought claims under: (1) 18 U.S.C. §§ 2510, *et seq.* (The Wiretap Act); (2) 18 U.S.C. §§ 2701, *et*

20   *seq.* (The Stored Communications Act); (3) 18 U.S.C. §§ 1030, *et seq.* (Computer Fraud); (4)

21   Intentional Interference with Contract; (5) Intentional Interference with Prospective Business

22   Advantage; (6) California Penal Code §§ 630, *et seq.* (Wiretapping/Eavesdropping); (7) Civil

23   Code §§ 43, *et seq* (Defamation); (8) False Light; and (9) California Business & Professions Code

24   §§ 17200, *et seq* (Unfair Competition).

25         Holomaxx's claims against Microsoft are without merit.  First, Claims 3-6 and 9—based

26   on Microsoft's filtering of Holomaxx's e-mails—are barred by the Communications Decency Act

27   of 1996 ("CDA"), 47 U.S.C. Section 230.  The CDA explicitly exempts service providers such as

28   Microsoft from liability for filtering of objectionable content, including objectionable e-mail.

MICROSOFT'S MOTION TO DISMISS
                                                    CASE NO.: C 10-04924-JF

Through the CDA, Congress immunized Microsoft from precisely the sort of liability that Holomaxx seeks to impose here.  Indeed, one federal court recently held that claims based on e-mail filtering were barred by the CDA.  *See e360Insight, LLC*, 546 F. Supp. 2d at 609-610.  The same analysis should be adopted here.  Further, even accepting Holomaxx's allegations as true, every cause of action based on Microsoft's filtering activities (Claims 1-6 and 9) independently fails to state a claim upon which relief may be granted, as Holomaxx has failed to allege legally sufficient facts and puts forth theories that are unsupported in the law.[1]

Additionally, Claims 7-8 for defamation and "false light"—based on Microsoft's alleged statement that it blocked Holomaxx's e-mail "for policy reasons" "or for spamming"—are deficient as a matter of law.  Holomaxx's Complaint itself establishes that these statements are accurate, reflect Microsoft's opinion and are otherwise non-defamatory.  Holomaxx fails to plead any other legally sufficient facts.  Given that Congress and the courts have recognized that filtering objectionable e-mail is protected and a matter of public significance, to impose liability for speaking about such activities would be flatly inconsistent with the CDA and would severely chill valid speech.  Accordingly, like the rest of the complaint, Claims 7-8 should be dismissed.

## II.    FACTUAL BACKGROUND

Microsoft is one of the world's largest interactive computer service providers.  Compl. ¶ 20.  Among its many services, Microsoft provides e-mail accounts to millions of Internet users and businesses.  *Id.*  For example, Microsoft provides the free Windows Live Hotmail service ("Hotmail"), which was one of the first web-based e-mail services on the Internet, and, since its launch in 1996, one of the most popular.  E-mails sent to Microsoft account holders reside on Microsoft's servers; users can then access Microsoft's servers to view or download their e-mail messages.  The operation of Microsoft's online e-mail servers is similar to those operated by many other major e-mail service providers.

---

[1]  Many of Holomaxx's allegations are false.  For example, contrary to Holomaxx's unsupported assertion, Microsoft does not receive any income from Return Path < inc., former Co-Defendant in this case.  That said, as it must, Microsoft accepts Holomaxx's allegations as true for purposes of this motion.

A significant percentage of e-mails sent to e-mail accountholders, including Microsoft's customers, are objectionable and burdensome commercial solicitations.  Such bulk, commercial electronic mail is generally and commonly referred to as "spam" e-mail.  *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1045 n.1 (9th Cir. 2009) ("While 'spam' in this context does not have a precise definition, it is typically understood to refer broadly to unsolicited e-mail messages (or 'junk' e-mail), typically commercial in nature."; noting that the term "spam" has, since the early days of the Internet, referred to repetitive online activity); e*360Insight*, 546 F. Supp. 2d at 607 (Internet marketing company commonly referred to as "a spammer"); *Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F. Supp. 2d 1037, 1039 (N.D. Cal. 2004) ("Spam is 'unsolicited e-mail, often of a commercial nature, sent indiscriminately to multiple mailing lists, individuals, or newsgroups; junk e-mail.'").

In 2003, Congress found that "[u]nsolicited commercial electronic mail is currently estimated to account for over half of all electronic mail traffic … and the volume continues to rise".  15 U.S.C. § 7701(a)(2).  Congress recognized that "[t]he growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services… that carry and receive such e-mail."  § 7701(a)(6).  In response to these problems, and like all participants in this industry, Microsoft uses proprietary software to identify, filter, and block objectionable e-mail messages.  To maintain the stability and reliability of its network, and to limit the amount of objectionable spam e-mail that reaches its users' mailboxes, Microsoft uses its software, feedback from abandoned user accounts, industry evaluation and reputation scores, marking of e-mail by users as "spam," and other factors to filter out messages having characteristics of inappropriate commercial e-mail.  Compl. ¶¶ 20-22, 34, 41, 51.

Holomaxx, which describes itself as an "e-mail marketing service," sends bulk commercial e-mails to millions of Internet users, including Microsoft e-mail accountholders.  Compl. ¶¶ 13-17.  Holomaxx acknowledges that, on average, it sends 10 million e-mails *per day*, including an estimated 3 million e-mails to Microsoft users.  *Id.* ¶ 17.  Holomaxx admits that it sends thousands of *unwanted* e-mails everyday: by its own calculations, it sends over *100,000* e-mails to Microsoft alone *every week* which are either returned as invalid or result in a user opting-

out—hallmarks of bulk "spam" e-mail.  *Id.* ¶ 17 (3 million e-mails to Microsoft); ¶ 19 (.5% of e-mails to Microsoft are to an invalid address or result in a user opt-out).  Holomaxx alleges that beginning in about November 2009, Microsoft's filtering software began blocking e-mails directed at Microsoft's e-mail accountholders because the e-mails contained "spam-like characteristics" or had "IP/domain reputation problems."  *Id.* ¶¶ 31-34.  Holomaxx also alleges that Microsoft, as part of its filtering process, accessed information from these e-mails.  *Id.* ¶ 11.

Holomaxx puts forth three sets of purported facts, none of which is sufficient to support its claims:

First, Holomaxx asserts that Microsoft has systems and processes in place to filter spam e-mail (based on, among other things, proprietary software, industry evaluation and reputation scores, marking of e-mail by users as "spam" and other factors), that those systems and processes were applied to Holomaxx's e-mail, but that Holomaxx believes some different criteria should be used because their e-mails purportedly comply with the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the "CAN-SPAM Act"), 15 U.S.C. section 7701, *et seq.* *Id.* ¶¶ 9-10, 18, 20-22, 31-36.

Second, Holomaxx asserts that, as part of this process, Microsoft allegedly accessed Microsoft's *own* e-mail servers and systems, examined the e-mails stored therein that had been aimed by Holomaxx at Microsoft's accountholders and, based on the IP addresses and other criteria, Microsoft filtered and blocked those e-mails.  *Id.* ¶¶ 11, 41.

Third, Holomaxx alleges that Microsoft told Holomaxx's Internet hosting company that Holomaxx IP addresses had been blocked by Microsoft "for policy reasons" "or for spamming." *Id.* ¶¶ 11, 42, 44-47.

### III.   ARGUMENT

Holomaxx's Claims 1-6 and Claim 9 arise from Microsoft's alleged filtering of Holomaxx's e-mails.  On this theory, Holomaxx asserts: The Wiretap Act (Claim 1), The Stored Communications Act (Claim 2), Computer Fraud & Abuse Act ("CFAA") (Claim 3), Intentional Interference with Contract (Claim 4), Intentional Interference with Prospective Business Advantage (Claim 5), Wiretapping/Eavesdropping (Claim 6) and Unfair Competition (Claim 9).

1   *See* Compl. ¶¶ 59, 66, 72, 81, 92, 100, 121.  These claims should be dismissed for two

2   independent reasons.  First, Claims 3-6, as well as Claim 9, are barred by the Communications

3   Decency Act of 1996 ("CDA"), 47 U.S.C. Section 230, which protects providers, such as

4   Microsoft, who take actions to filter objectionable content.  Second, all of Claims 1-6 and Claim 9

5   should be dismissed for failure to state a claim, as Holomaxx fails to plead facts sufficient to

6   support those claims and it sets forth theories that are not recognized in the law.

7           Additionally, Holomaxx has brought two claims—Claims 7 and 8—based on Microsoft's

8   alleged statements about this filtering activity.  On this theory Holomaxx asserts: Defamation

9   (Claim 7) and False Light (Claim 8).  Holomaxx fails to plead legally sufficient facts to support

10  these causes of action.  Accordingly, like the rest of its claims, Holomaxx's defamation and false

11  light allegations must be dismissed for failure to state a claim.

12          On these bases, the entire complaint should be dismissed.

13          **A.      <u>Motion to Dismiss Standard</u>.**

14          A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) if,

15  from the face of the complaint, the plaintiff fails to state a claim upon which relief can be granted.

16  Fed. R. Civ. P. 12(b)(6).  A plaintiff must "provide the grounds of his 'entitle[ment] to relief' …

17  [which] requires more than labels and conclusions, and a formulaic recitation of a cause of action

18  will not do … [f]actual allegations must be enough to raise a right to relief above the speculative

19  level …." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Dismissal

20  for failure to state a claim under Rule 12(b)(6) is appropriate "where the complaint lacks a

21  cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

22  *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For instance, this Court recently

23  granted a motion to dismiss where plaintiff's allegations, taken as true, would give rise to conduct

24  immunized by the CDA.  *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1202 (N.D. Cal.

25  2009) (Fogel, J.); *Black v. Google, Inc.*, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13, 2010)

26  (Wilken, J.); *see also Young v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 116530 (N.D. Cal. Oct.

27  25, 2010) (Fogel, J.) (allegations regarding termination of user account failed to state a claim).

28

1    Further, the Court need not credit conclusory allegations, unwarranted deductions of fact,

2    or unreasonable inferences.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Sprewell v.*

3    *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Rule 12(b)(6) must be read in

4    conjunction with the pleading requirements of Rule 8(a)(2).  *Sprewell*, 266 F.3d at 988.  Rule

5    8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to

6    relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8(a)(2) requires a "'showing,' rather than a blanket

7    assertion, of entitlement to relief … [w]ithout some factual allegation in the complaint, it is hard

8    to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the

9    nature of the claim, but also 'grounds' on which the claim rests."  *Twombly*, 550 U.S. at 556 n.3.

10   Though a pleading must contain "only enough facts to state a claim to relief that is plausible on

11   its face,"  *id*. at 570, if the "plaintiffs … have not nudged their claims across the line from

12   conceivable to plausible, their complaint must be dismissed." *Id.*

13   **B.    The Communications Decency Act Bars Holomaxx's Third Through Sixth**
           **And Ninth Claims.**

14

15       The CDA bars Holomaxx's Third through Sixth and Ninth claims.  These claims are

16   predicated on Microsoft's filtering of e-mail aimed by Holomaxx at Microsoft's customers.  Such

17   filtering cannot be the basis of liability pursuant to the CDA's "Good Samaritan" provision:

18       (c) **Protection for "Good Samaritan" blocking and screening of offensive material**
         ...
19       No <u>provider or user of an interactive computer service</u> shall be held liable on
         account of—
20
21       (A) <u>any action taken voluntarily in good faith to restrict access to or availability</u>
         <u>of material that the provider or user considers to be</u> obscene, lewd, lascivious,
22       filthy, excessively violent, <u>harassing, or otherwise objectionable,</u> whether or not
         such material is constitutionally protected; or
23       (B) any action taken to enable or make available to information content
         providers or others the technical means to restrict access to material described in
24       [subparagraph (A)]

25   47 U.S.C. § 230(c)(2) (emphasis added).  Congress has made clear that these safe harbor

26   provisions were intended to be broad, directing: "[n]o cause of action may be brought and no

27   liability may be imposed under any State or local law that is inconsistent with this Section."

28   *Id*  230(e)(3).

Federal courts have recognized that e-mail filtering, such as Microsoft's activities in this case, fall squarely within the CDA's safe harbor.  The recent case *e360Insight, LLC v. Comcast Corp.* is directly on point.  546 F. Supp. 2d at 609-610.  There, the Northern District of Illinois found that the CDA barred claims against a service provider who filtered objectionable e-mail.  The complaint, identical in all relevant respects to the complaint at issue here, was dismissed.  *e360Insight*, Dismissal is similarly mandated here.  *Id.*

**1.   Accepting Holomaxx's Allegations As True, Microsoft Satisfies All Requirements Necessary For CDA Immunity.**

To qualify for immunity from liability under CDA Section 230, a defendant must (1) be a "provider … of an interactive computer service," (2) take action "to restrict access to or availability of material that the provider … considers to be … harassing, or otherwise objectionable," and (3) take that action "in good faith."  47 U.S.C. § 230(c)(2); *see also Zango v. Kaspersky*, 568 F.3d 1169 (9th Cir. 2009) (setting forth requirements for CDA Section 230 immunity).  Microsoft easily satisfies all of the CDA's requirements.

*First*, it is undisputed and clear from Holomaxx's own allegations that Microsoft is an "interactive computer service" provider.  The CDA defines this term as:

> any information service, system, or access software provider that provides or enables computer access to multiple users to a computer server, including specifically a service or system that provides access to the Internet.

47 U.S.C. §§ 230 (b)(3), (f)(2); *see also Optinrealbig.com LLC, v. Ironport Systems, Inc.*, 323 F. Supp. 2d 1037, 1044 (N.D. Cal. 2004) (courts "have recognized that the definition includes a wide range of cyberspace services …"); *Black*, 2010 U.S. Dist. LEXIS 82905, at *6 (courts have adopted "a relatively expansive definition of 'interactive computer service'").  Holomaxx alleges that Microsoft is a service provider that enables computer access. Compl. ¶ 20 (asserting that Microsoft is "one of the world's largest internet service providers ('ISPs')" and "provides free email accounts to millions of users and businesses").  Specifically, Microsoft operates computer servers (i.e., its e-mail servers), which users access to view and download their e-mail.  Holomaxx also alleges that Microsoft utilizes its "automated spam filter." *Id.* ¶ 20.  Thus, Microsoft also falls within the above definition as an "access software provider." *See* 47 U.S.C. §

1    230(f)(4)(A) (defined as a provider of software tools that "filter, screen, allow or disallow

2    content…").  Thus, Microsoft qualifies as an "interactive computer service."  This conclusion

3    comports with that of courts holding that e-mail providers that filter objectionable e-mail qualify

4    as "interactive computer service" providers.  *See e360Insight*, 546 F. Supp. 2d at 607; *Winter v.*

5    *Bassett*, 2003 U.S. Dist. LEXIS 26904, *7 n.4 (M.D.N.C. Aug. 22, 2003) (service providers that,

6    among other things, "provide email services," are "interactive computer services under the

7    Communications and Decency Act.").  Microsoft thus meets the first element for CDA immunity.

8            *Second*, it is undisputed that Microsoft has taken action "to restrict access to or availability

9    of material" that it "considers to be … harassing, or otherwise objectionable."  Holomaxx

10   repeatedly alleges that Microsoft is engaged in the filtering or blocking of e-mail that it considers

11   harassing and objectionable.  *See, e.g.,* Compl. ¶¶ 20-24, 31-36, 49-51.  Holomaxx itself alleges

12   that Microsoft made a determination (based on Microsoft's proprietary analysis) that Holomaxx's

13   e-mails constitute objectionable spam.  *Id.* ¶¶ 34, 51(a).  Case law confirms that CDA immunity

14   adheres to the blocking of objectionable, bulk e-mail.  *See, e.g., e360Insight*, 546 F. Supp. 2d at

15   607 (bulk e-mails are the sort of communications a service provider could deem objectionable);

16   *see also Zango*, 568 F.3d at 1175 (Congress intended to "immunize the providers of blocking

17   software"); *Optinrealbig.com*, 323 F. Supp. 2d at 1040 (holding that defendant, which collected

18   and sent user complaints about spam e-mail to ISPs, was protected by Section 230 in an action by

19   bulk e-mail company).  Thus, Microsoft meets this element for CDA immunity as well.

20           *Third*, Holomaxx does not claim that Microsoft carried out its filtering in bad faith.  Nor

21   could it.  Indeed, as alleged, Microsoft's proprietary filtering software is of the same type used by

22   many other companies, including those that federal courts have held immunized by the CDA.

23   *e360Insight*, 546 F. Supp. 2d at 606-610 (plaintiff failed to sufficiently plead bad faith under

24   *Twombly*; finding CDA immunity where defendant, like the federal judiciary and other

25   enterprises, used software filters to control e-mail volume and to block e-mail deemed

26   objectionable); *Optinrealbig.com*, 323 F. Supp. 2d at 1040 (CDA immunity where defendant

27   collected and forwarded spam complaints to ISPs); *Zango, Inc.*, 568 F.3d at 1170-71 (CDA

28

1    immunity where defendant used software to filter and block other software it deemed malicious).

2    Thus, Microsoft meets this element for CDA immunity.

3        Because Microsoft operates an interactive computer service which is engaged in the good

4    faith blocking or filtering of objectionable content, it is entitled to immunity under the CDA as to

5    claims based on this activity under both federal and state law.  *See* 47 U.S.C. §§ 230(c)(2)

6    (blanket immunity); (e)(3) (expressly barring state law claims inconsistent with CDA immunity).

7        **2.    Because Microsoft Is Entitled To Immunity Under The CDA, The
          Court Must Dismiss Holomaxx's Claims Three Through Six And Nine.**

8

9        Courts have repeatedly dismissed claims where a defendant's alleged conduct meets the

10   requirements of a CDA safe harbor.  *See Zango, Inc.*, 568 F.3d at 1177-78; *Goddard*, 640 F.

11   Supp. 2d at 1202; *Black*, 2010 U.S. Dist. LEXIS 82905, at *9-10.  Indeed, based on the CDA, one

12   court dismissed claims of an e-mail marketing company against an e-mail provider who filtered

13   out the marketing company's e-mail.  *See e360Insight*, 546 F. Supp. 2d at 609-10 ("I grant

14   judgment on the pleadings with respect to the complaint as a whole on the grounds that § 230(c)

15   precludes proceeding on any of the claims.").  Likewise, here, Microsoft satisfies all requirements

16   for CDA immunity.  Accordingly, as was true of the ISP in *e360Insight*, Microsoft here

17   performed the exact function contemplated by the CDA: it used filtering technology to restrict

18   access to or availability of material it deemed to be objectionable.  Therefore, Holomaxx's Claims

19   3-6 and 9, based on Microsoft's e-mail filtering activities, must be dismissed.

20       **3.    Holomaxx's Disagreement With Microsoft's Filtering Methodology Is
          Legally Irrelevant And Does Not Save Holomaxx's Claims.**

21

22       Holomaxx seeks to escape the clear applicability of the CDA safe harbor by asserting that

23   it disagrees with Microsoft's determination that Holomaxx's e-mails are objectionable.  Compl.

24   ¶¶ 13-24, 31-41.  This assertion is legally irrelevant and does not save Holomaxx's claims.  In

25   order to qualify for CDA immunity, Section 230 requires only that Microsoft subjectively

26   determine that blocked material is "harassing" or "objectionable." *See e360Insight*, 546 F. Supp.

27   2d at 608 ("section 230 imposes a subjective element into the determination of whether a provider

28   or user is immune from liability"); *see also Zango, Inc. v. Kaspersky*, 2007 U.S. Dist. LEXIS

97332, *6-7 (W.D. Wash. Aug. 28, 2007), *affirmed by* 568 F.3d 1169 (9th Cir. 2009) (Section 230(c)(2) "does not require that the material actually be objectionable; rather it affords protection for blocking material 'that the provider or user considers to be' objectionable").  As discussed above, Holomaxx's allegations themselves demonstrate that Microsoft subjectively determined that the filtered e-mail were objectionable.  Thus, Holomaxx's argument fails.

Along the same lines, Holomaxx argues that its mass e-mail blasts complied with the CAN-SPAM Act.  *See, e.g.*, Compl. ¶ 18.  Again, this is legally irrelevant.  Nothing in the CDA purports to carve back a service provider's immunity merely because the plaintiff complies with the CAN-SPAM Act.  Nor can Holomaxx point to anything in the CAN-SPAM Act which provides it a right to sue Microsoft despite the clear import of the CDA.  Holomaxx's suggestion that CAN-SPAM compliance bears on the CDA ignores two federal statutes.  Not surprisingly, courts have rejected arguments identical to Holomaxx's.  For example, in *e360Insight*, as here, the plaintiff pointed to its alleged CAN-SPAM compliance as evidence that its e-mails were not properly the subject of CDA immunity.  568 F.3d at 608-09.  The court rejected this theory, noting, "compliance with CAN-SPAM, Congress decreed, does not evict the right of the provider to make its own good faith judgment to block mailings."  *Id.* at 608 ("Section 7707 of the [CAN-SPAM] Act says nothing in the Act shall 'have any effect on the lawfulness … under any other provision of law, of the adoption, implementation, or enforcement by a provider of Internet access service of a policy of declining to transmit, route, relay, handle or store certain types of electronic mail messages.'").  The court further observed that "[u]nder the law, a mistaken choice to block, if made in good faith, cannot be the basis for liability under federal or state law.  To force a provider like [defendant e-mail service provider] to litigate the question of whether what it blocked was or was not spam would render § 230(c)(2) nearly meaningless." *Id.*

More generally, Holomaxx asserts that Microsoft's filtering is overly broad.  Compl. ¶¶ 13-24, 31-41.  This assertion too is irrelevant.  When Congress enacted the CDA Good Samaritan provision, it understood that in order for content filtering technologies to function effectively, such technologies might block too much or too little content:

1
2
3
4

> Congress, and, I think, everyone else who studied the issue understood that
> blocking software would probably block too much.  To insure that you or your
> child will not receive unwanted or inappropriate e-mails, your Internet service may
> wind up preventing you from receiving some e-mails that are neither unwanted nor
> inappropriate.  Such Internet service providers feared they might be held liable for
> blocking too much, or even too little, and this was, as Congress recognized, "[a]
> disincentive[] for the … utilization of blocking and filtering technologies."

5  *e360Insight,* 546 F. Supp. 2d at 607.  This observation is unsurprising, as it goes to the CDA's

6  core legal and policy justifications: to protect businesses and individuals from unwanted content

7  by encouraging service providers such as Microsoft to develop and use filtering technologies

8  without fear of legal retribution by e-mail marketers or other content providers.[2]  47 U.S.C. §

9  230(c).  In other words, even if Holomaxx could show that each of its millions of e-mails were

10  the paragons of legitimate electronic communications, it would be totally irrelevant.  When it

11  enacted the CDA Congress anticipated that filtering technology would, at times, be overly broad

12  and immunized service providers in order to encourage the development of filtering technologies.

13  The CDA's Good Samaritan provision was enacted precisely to bar the type of claim that

14  Holomaxx brings against Microsoft in this case.

15     Accordingly, because Microsoft is immune from liability under the Good Samaritan

16  provision of the CDA, the Third through Sixth and the Ninth Claims for Relief, arising out of

17  Microsoft's actions to block Holomaxx's e-mails, should be dismissed.

18     **C.    Each Of Holomaxx's Claims Is Insufficiently Pled And Should Be Dismissed
           For Failure To State A Claim.**
19

20        **1.    Holomaxx Fails To State A Claim For Violation Of The Wiretap Act.**

21     In its First Claim for Relief, Holomaxx alleges that Microsoft violated the Federal Wiretap

22  Act.  Compl. ¶ 59.  The Wiretap Act prohibits the interception of electronic communications.  18

23  U.S.C. §§ 2510 *et seq.*  According to Holomaxx, Microsoft violated the statute by "intentionally

24

25
_____

26  [2] Congress enacted the CDA "to encourage the development of technologies which maximize
    user control over what information is received by individuals, families, and schools who use the
27  Internet and other interactive computer services."  47 U.S.C. § 230(b)(3).  Congress
    acknowledged that "[t]he problems associated with the rapid growth and abuse of unsolicited
28  commercial electronic mail cannot be solved by Federal legislation alone.  The development and
    adoption of technological approaches … will be necessary as well."  15 U.S.C. § 7701(a)(12).

- 11 -

1    intercept[ing] electronic communications sent by HOLOMAXX." *Id*.  This claim fails for four

2    independent reasons.

3           First, the Wiretap Act provides that the operator of an electronic communication service

4    cannot be liable for interceptions carried out to protect the operator's rights or property:

5           It shall not be unlawful under this chapter for … an officer, employee, or agent of
       a provider of [an] … electronic communication service, whose facilities are used
6       in the transmission of [an] … electronic communication, to intercept, disclose, or
       use that communication in the normal course of his employment while engaged in
7       any activity which is a necessary incident to the rendition of his service or to the
       protection of the rights or property of the provider of that service…
8

9    18 U.S.C. § 2511(2)(a)(i); *see Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 U.S. Dist.

10   LEXIS 91644, *14-16 (W.D. Pa. Dec. 13, 2007) (dismissing Wiretap Act claims; defendant e-

11   mail provider had right to monitor e-mails sent to one of its e-mail addresses in order to protect its

12   rights and interests); *cf. Howard v. America Online, Inc.*, 208 F.3d 741, 751-53 (9th Cir. 2000)

13   (holding that AOL could properly exert control over the traffic it would accept).  Here, Holomaxx

14   alleges that Microsoft accessed and filtered e-mails as part of an effort to protect itself and its

15   customers from spam.  Clearly the alleged acts are a necessary incident to Microsoft's protection

16   of its rights and property.  Thus, Holomaxx fails to state a claim for violation of the Wiretap Act.

17          Second, Holomaxx has failed to adequately plead that Microsoft intercepted any

18   electronic communications.  Holomaxx alleges, without any factual support, that Microsoft

19   "intercepted" electronic communications to Microsoft e-mail accountholders.  Compl. ¶¶ 11, 59.

20   Such conclusory statements are not entitled to the assumption of truth.  *Iqbal*, 129 S. Ct. at 1949

21   (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must

22   take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a

23   legal conclusion couched as a factual allegation'").  Holomaxx's *own complaint* contradicts these

24   conclusory statements.  Specifically, Paragraph 41 makes clear that Holomaxx alleges that

25   Microsoft "accessed computers on which HOLOMAXX's confidential e-mail communications

26   were **stored**."  Compl. ¶ 41 (emphasis added).  It is well-established that accessing e-mails while

27   they are in storage does not constitute an "interception" under the statute.  *See Konop v. Hawaiian

28   Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (for an electronic communication to be

1   "'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while

2   it is in electronic storage"); *see also Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967,

3   979 (M.D. Tenn. 2008) ("unless an e-mail is actually acquired in its split second transmission

4   over a computer network, it cannot be 'intercepted' as that term is reasonably understood.").

5         In *Bradley v. Google*, No. C06-05289-WHA, 2006 U.S. Dist. LEXIS 94455, *14 (N.D.

6   Cal. Dec. 22, 2006), the plaintiff alleged that defendant, an e-mail service provider, violated the

7   Wiretap Act by removing or deleting messages stored on its servers.  The court held that the

8   plaintiff failed to state a claim because the Wiretap Act only applies to communications that are

9   intercepted, or acquired during transition.  *Id*. at *13-14.  The Wiretap Act, Judge Alsup

10   recognized, simply does not apply to situations where the electronic communications are in

11   storage.  *Id.*  Here, just as in *Bradley*, Holomaxx itself has alleged that Microsoft accessed its e-

12   mail communications on computers where they were stored, not while they were in transmission.

13   Compl. ¶ 41.  Therefore, Holomaxx fails to state a claim under the Wiretap Act.

14         Third, the statute is clear that no Wiretap Act violation can occur where, as here, one party

15   to the communication has given prior consent.  *See* 18 U.S.C. § 2511(2)(d) (no Wiretap Act

16   violation "where one of the parties to the communication has given prior consent" to

17   interception).  Here, the recipients of Holomaxx's e-mails are users of Microsoft's e-mail

18   services, such as Hotmail.  Compl. ¶ 20.  As such, they provide broad consent for Microsoft to

19   access or disclose e-mails sent to their accounts, so that Microsoft can effectively protect itself

20   and its customers.  Specifically, through Paragraph 6 of the Hotmail Terms of Service,

21   accountholders agree that:

22           In particular, we [Microsoft] may access or disclose information about you,
     including the content of your communications, in order to: (a) comply with the law
23           or respond to lawful requests or legal process; (b) protect the rights or property of
     Microsoft or our customers, including the enforcement of our agreements or
24           policies governing your use of the service; or (c) act on a good faith belief that
     such access or disclosure is necessary to protect the personal safety of Microsoft
25           employees, customers, or the public.[3]

26   _____

27   [3] It is well-established that the Court may consider documents not attached or included in a
     complaint when the pleading references or refers to them.  *See Branch v. Tunnell*, 14 F.3d 449,
     454 (9th Cir. 1994), *overruled by other grounds by Galbraith v. County of Santa Clara*, 307 F.3d

28   1119, 1127 (9th Cir. 2002) ("documents whose contents are alleged in a complaint and whose
     authenticity no party questions, but which are not physically attached to the pleading, may be

1    *See* Declaration of Brooke Roundy in Support of Microsoft's Motion to Dismiss, Ex. A

2    (submitted herewith).  Because Microsoft's alleged actions fall within its accountholders' broad

3    consent, Holomaxx cannot state a claim for "interception" under the Wiretap Act.  18 U.S.C. §§

4    2511(1), (2)(d).  Further, Holomaxx cannot state a claim for alleged "use" or "disclosure" of

5    electronic communications under the Wiretap Act (Compl. ¶ 60), because—as discussed—the

6    information was not obtained in violation of the Act.  18 U.S.C. §§ 2511(1)(c)-(d) (disclosure or

7    use prohibited where information was "obtained … in violation of this subsection").

8         Finally, Holomaxx's Wiretap Act claim should also be dismissed as insufficiently pled.

9    Holomaxx does not even identify the Wiretap Act provisions that Microsoft allegedly violated,

10   nor does it plead sufficient facts.  Instead, Holomaxx merely recites the language of the statute,

11   conclusorily claiming that Microsoft "intentionally intercepted" communications (Compl. ¶ 59),

12   and "intentionally used and disclosed the contents of such electronic communications" (*id.* ¶ 60).

13   Such bare legal conclusions are legally insufficient.  *Iqbal*, 129 S. Ct. at 1949-50 (citing

14   *Twombly*, 550 U.S. at 555, 557) ("A pleading that offers 'labels and conclusions' or 'a formulaic

15   recitation of the elements of a cause of action will not do.'").

16        While Holomaxx cursorily asserts that Microsoft accessed computers on which

17   Holomaxx's e-mail communications were stored and intercepted such e-mails, it fails entirely to

18   identify the computers or to allege any facts regarding how Microsoft accessed these computers,

19   to whom the computers belong, or how Microsoft obtained information in these e-mails. Compl. ¶

20   41.  This is precisely the kind of "naked assertion" devoid of "further factual enhancement" that

21   the Supreme Court has found unacceptable.  *See Twombly*, 550 U.S. at 557.  Accordingly, the

22   Court should dismiss the First Claim for Relief.

23   / / /

24

25   considered in a ruling on a Rule 12(b)(6) motion to dismiss"); *In re Stac Elecs. Sec. Litig.*, 89
     F.3d 1399, 1405 n.4 (9th Cir. 1996) (documents whose contents are alleged in the complaint may
26   be considered in connection with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).  The
     Court may thus properly consider the Hotmail terms of service, as Holomaxx's Complaint
27   repeatedly references those terms and puts them at issue. *See, e.g.*, Compl. ¶ 41 (Microsoft
     accessed electronic communications "without the consent of either HOLOMAXX or the intended
28   recipients").  A true and correct copy of the terms of service are attached hereto as Exhibit A to
     the Declaration of Brooke Roundy.

MICROSOFT'S MOTION TO DISMISS
CASE NO.: C 10-04924-JF

**2.      Independent Of The CDA, Holomaxx Fails To State A Claim For Violation Of California Penal Code §§ 630 *et seq*.**

In its Sixth Cause of Action, Holomaxx brings a claim under California Penal Code Section 631, analogous to the Federal Wiretap Act.  This claim also fails.  First, because Holomaxx asserts precisely the same facts and legal theory under Section 631 and the Wiretap Act, the state claim is preempted as a matter of law.  The Federal Wiretap Act contains an express preemption: "The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications."  18 U.S.C. § 2518(10)(c).  Recently, where plaintiff asserted Section 631 and the Wiretap Act under the same theory, the state law claim was dismissed as preempted.  *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148 (C.D. Cal. 2007).  Holomaxx's Section 631 claim must be dismissed on this basis.

Moreover, like the Wiretap Act, Section 631 applies only to communications improperly obtained while they are "in transit."  Cal. Penal Code § 631.  Here, Holomaxx states, without any factual support, that Microsoft accessed e-mails while they were in transit.  As with the Wiretap Act allegations, Holomaxx's bare allegation is expressly contradicted by facts asserted elsewhere in the Complaint that Holomaxx's theories are based on alleged access to "**stored**" communications.  Compl. ¶¶ 41, 101.  As discussed, accessing e-mails in storage cannot constitute "interception" because such communications are not in transit.  *See Bradley*, 2006 U.S. Dist. LEXIS 94455, at *14-15 (granting defendant's motion to dismiss: "Like its federal counterpart, [Section 630 *et seq.*] … requires the *interception* of an electronic communication").

**3.      Holomaxx Fails To State A Claim For Violation Of The Stored Communications Act.**

In its Second Claim for Relief, Holomaxx alleges that Microsoft violated the Stored Communications Act ("SCA"), which prohibits a party from "intentionally access[ing] without authorization a facility through which an electronic communication service is provided; … or intentionally exceed[ing] an authorization to access that facility; … thereby obtain[ing] … or

1    prevent[ing] authorized access to … a wire or electronic communication while it is in electronic

2    storage…"  18 U.S.C. § 2701(a).

3        This claim fails for several reasons.  In particular, the SCA does not apply to conduct

4    authorized by "entit[ies] providing a wire or electronic communications service" and conduct

5    authorized "by a user of that service with respect to a communication of or intended for that

6    user." § 2701(c)(1)-(2).  Microsoft's alleged conduct is exempt under both subsections.  First, the

7    SCA exempts searches of stored electronic communications by the party providing the

8    communications service.  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 115 (3d Cir. 2003)

9    ("[W]e hold that, because [plaintiff's] e-mail was stored on [defendant's] system (which

10   [defendant] administered), its search of that e-mail falls within §2701(c)'s exception to [the

11   SCA]"); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) (defendant could not

12   violate SCA when it retrieved pager text messages stored on its computer system because

13   defendant "is the provider of the 'service'" and "service providers [may] do as they wish when it

14   comes to accessing communications in electronic storage.").  As another Northern District of

15   California judge summarized in dismissing a virtually identical ECPA/SCA claim:

16           Crowley's second argument in support of his unauthorized access claim, which is
             that Amazon had limited access to its own systems, strains credulity. First,
17           Crowley cites no authority in support of this argument. Second, a very similar
             argument was rejected by the court in *State-Wide Photocopy Corp. v. Tokai*
18           *Financial Services, Inc., 909 F. Supp. 137 (S.D.N.Y. 1995)*. In that case, the court
             said that, even assuming that a company's computers, through which it sent and
19           received electronic communications, were "facilities through which an electronic
             communication service is provided," the computer could not have limited access to
20           its own facilities." *See id. at 145*. Amazon's access to its own systems is not
             limited under the ECPA.
21

22   *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1272 (N.D. Cal. 2001) (citations omitted).

23   As the provider of the alleged recipients' e-mail accounts, the SCA does not apply to Microsoft's

24   alleged access of e-mails.

25       Second, as detailed above, Holomaxx's SCA claim should be dismissed because the

26   alleged e-mail recipients, as Microsoft accountholders, authorized Microsoft to access e-mails

27   sent by Holomaxx, pursuant to the broad consent agreed to in Microsoft's terms of use.  "[T]he

28   statutory exemption set forth in § 2701(c)(2) is applicable as long as one party to a

1   communication provides consent." *In re Toys R Us, Inc., Privacy Litig.*, No. C00-2746-MMC,

2   2001 U.S. Dist. LEXIS 16947, at *18 (N.D. Cal. Oct. 9, 2001) (dismissing SCA claim without

3   leave to amend where one party to the communication provided consent).

4        Third, Holomaxx's SCA claim again merely recites the statutory language and is devoid

5   of facts required to establish a plausible cause of action. Compl. ¶ 66 (restating bare language of

6   the statute). As discussed, Holomaxx alleges that Microsoft accessed computers on which e-mail

7   communications were stored (*see id* ¶ 41), but fails entirely to allege any plausible facts regarding

8   how this occurred in violation of the SCA. Accordingly, the Court should dismiss Holomaxx's

9   Second Claim. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 557.

10        **4.**     **Independent Of The CDA, Holomaxx Fails To State A Claim for**

11             **Violation Of The Computer Fraud And Abuse Act.**

12        Holomaxx's Third Claim for Relief for violation of the Computer Fraud and Abuse Act

13   ("CFAA"), 18 U.S.C. Section 1030, *et seq.*, is deficient for a variety of reasons. First and

14   foremost, Holomaxx's assertions are predicated on facially impossible theory that Microsoft is

15   liable for accessing without authorization *its own servers* in the process of filtering objectionable

16   e-mail. Compl. ¶ 41 (Holomaxx alleges that Microsoft improperly "accessed computers on which

17   HOLOMAXX's confidential email communications were stored"). Nowhere in the Complaint

18   does Holomaxx allege that Microsoft accessed any computer or system belonging to Holomaxx or

19   any other party. Accessing a company's own computers is not an unauthorized access to a

20   "protected computer" in violation of the CFAA. *Cont'l Grp., Inc. v. Kw Prop. Mgmt, LLC*, 622

21   F. Supp. 2d 1357, 1372 (S.D. Fla. 2009) (an entity "clearly has a right to control and define

22   authorization to access its own computer systems"); *Ebay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d

23   1058, 1070 (N.D. Cal. 2002) (holding that an internet company's servers are its own "private

24   property, conditional access to which [the company] grants the public.").

25        The touchstone of CFAA—a statute directed at hackers or similar intruders into the

26   computer systems of others—is that the proscribed access is without authorization or exceeds

27   authorization.[4] Plainly Microsoft's access to its *own* servers is fully authorized and thus the

28

---

[4] In fact, in this case, the CFAA is much more appropriately applied to the emailing activities of

1    CFAA claim fails.  *Lewis-Burke Assocs. LLC v. Widder*, No. 09-302-JMF, 2010 U.S. Dist.

2    LEXIS 76180 (D.D.C. July 28, 2010) (granting motion to dismiss CFAA claim where defendant

3    was authorized to access the computer); *Secureinfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593

4    (E.D. Va. 2005) (dismissing CFAA claim where plaintiff did not properly allege that defendants

5    had "unauthorized access" to the server or accessed the server in "excess of authority").

6         More generally, to the extent that Holomaxx is attempting to allege that some other

7    "protected computer" has allegedly been accessed in violation of the CFAA, it has failed to plead

8    this theory at all, let alone with sufficient particularity.  Holomaxx states no facts identifying such

9    computer or how alleged access was without or in excess of authorization, all of which is

10   necessary to state a claim under the CFAA.  Again, Holomaxx merely recites partial statutory

11   language of the CFAA, without even specifying which CFAA section was allegedly violated and

12   without any further factual enhancement.  *See* Compl. ¶ 73 (alleging that Microsoft "intentionally

13   exceeded [its] authorization to access computers used for interstate and foreign communications

14   and commerce, and obtained information from such computers, in violation of 18 U.S.C. §§ 1030

15   *et seq.*").  Such cursory legal conclusions and bare assertions devoid of requisite facts fail to state

16   a claim.  *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 557.  For these reasons, Holomaxx's

17   Third Claim for Relief should be dismissed.

18              **5.      Independent Of The CDA, Holomaxx Fails To State A Claim For
                          Intentional Interference With Contract And Intentional Interference
19                        With Prospective Business Advantage.**

20        In its Fourth and Fifth Claims for Relief, Holomaxx alleges that Microsoft interfered with

21   Holomaxx's contractual and prospective business relationships by intercepting and blocking

22   Holomaxx's e-mail communications and providing purportedly false and misleading information

23   about Holomaxx to Dragon Networks.  Compl. ¶ 81.  These claims are meritless.

24        To state a claim for Intentional Interference with Contract, Holomaxx must allege: (1) a

25   valid contract between Holomaxx and a third party; (2) Microsoft's knowledge of this specific

26   contract; (3) that Microsoft's intentional acts were designed to induce a breach or disruption of

27   ――――――――――――――――――――――――――――――――――――――――――――――――――
     Holomaxx, which intrudes upon Microsoft's servers.  *See Hotmail Corp. v. Van$ Money Pie Inc.*,
28   47 U.S.P.Q.2d 1020, 1025-26 (N.D. Cal. 1998) (granting preliminary injunction under CFAA
     where defendant sent spam email to Hotmail subscribers without their authorization).

MICROSOFT'S MOTION TO DISMISS
                                        CASE NO.: C 10-04924-JF

1   the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5)

2   resulting damage.  *See Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990).

3   Although related to this first claim, the California Supreme Court has cautioned that intentional

4   interference with prospective business advantage is distinct and carries a "more rigorous pleading

5   burden since it must show that the defendant's conduct was independently wrongful."  *Korea*

6   *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003).  Accordingly, to state a

7   claim for interference with business advantage, Holomaxx must allege: (1) an existing economic

8   relationship between Holomaxx and a third party, containing a profitable future economic benefit

9   or advantage to plaintiff; (2) that Microsoft knew of the existence of this specific relationship; (3)

10  that Microsoft intentionally engaged in wrongful conduct designed to interfere with or disrupt this

11  relationship; (4) that the economic relationship was actually interfered with or disrupted; and (5)

12  resulting damage.  *See Della Penna v. Toyota Motor Sales, Co*., 11 Cal. 4th 376 (1995).

13  Holomaxx fails to meet its burden for either claim.

14      Here, Holomaxx first alleges that Microsoft interfered with its relationships and contracts

15  with unidentified clients, who allegedly contracted with Holomaxx to send bulk commercial e-

16  mails on their behalf.  Compl. ¶ 81.  Holomaxx next alleges that Microsoft interfered with its

17  relationship and contract with Dragon Networks, the company that allegedly hosted Holomaxx's

18  IP datacenter.  *Id.* ¶ 93.

19      First, to state a claim, Holomaxx would need to plead, at a minimum, that Microsoft had

20  knowledge of these specific contracts or relationships and that it engaged in conduct intentionally

21  aimed at disrupting them.  *Korea Supply Co.*, 29 Cal. 4th at 1156-57 (to establish intentional

22  interference with business advantage, plaintiff must plead that defendant "kn[ew] that the

23  interference was certain or substantially certain to occur as a result of his action"); *Quelimane Co.*

24  *v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998) (to establish intentional interference with

25  contract, plaintiff must plead that defendant knew that interference was a necessary consequence

26  of its actions).  As to the alleged disruption, Holomaxx would need to additionally plead that

27  Microsoft's actions were "wrongful."  Holomaxx does not do so.  There is nothing in Holomaxx's

28  Complaint alleging that Microsoft knew of these specific contracts or relationships when it

1   allegedly blocked Holomaxx's IP Addresses.  *See Maxner Co. Ltd, v. Costco Wholesale Corp.*,

2   No. 03-35865, 2004 U.S. App. LEXIS 14298, at *18 (9th Cir. July 12, 2004) (finding that

3   plaintiff failed to establish intentional interference where, "[a]s to the knowledge element,

4   Maxner did not present sufficient evidence of Costco's awareness of Maxner *at the time of its*

5   *decision* to reject the bunnies") (emphasis added).

6        Holomaxx alleges that "Microsoft knows full well that Holomaxx sends emails on behalf

7   of commercial clients because, *inter alia*, Holomaxx has informed Microsoft of this fact in

8   numerous communications with Microsoft."  Compl. ¶ 37.  But Holomaxx fails to allege that

9   Microsoft knew of the alleged relationships or contracts at the time that it blocked Holomaxx's IP

10  addresses.  To the contrary, Holomaxx only refers to an April 30, 2010 e-mail to Microsoft in

11  which Holomaxx wrote a vague assertion that if its e-mail "does not get through, we lose money

12  because they don't pay us for undelivered mail."  *Id*.  According to the Complaint, this alleged e-

13  mail communication came well after the November 20, 2009 date on which Holomaxx alleges

14  that "Microsoft began intermittently" blocking Holomaxx's objectionable e-mails.  *Id*. ¶ 31.

15  Thus, the Complaint itself negates any possibility that Microsoft blocked Holomaxx's IP

16  addresses with knowledge of Holomaxx's specific contracts or relationships.  Indeed, the

17  Complaint makes clear that Microsoft allegedly blocked the IP addresses because Microsoft had

18  determined that Holomaxx was sending spam; Holomaxx's prospective business relationships and

19  contracts never entered into the equation and Holomaxx alleges nothing to the contrary.

20       Nor was Microsoft's alleged blocking of the IP addresses wrongful.  As discussed above,

21  Microsoft's e-mail filtering is fully protected by the CDA's Good Samaritan provision.  *See*

22  Section III.B., *supra*.  Therefore, since Microsoft's actions were expressly authorized and

23  encouraged by Congress, Holomaxx cannot establish that Microsoft's actions were independently

24  wrongful.  The allegations thus necessarily also fail to meet the more rigorous pleading standard

25  required for Plaintiff's Intentional Interference with Prospective Business Advantage claim.

26  *Della Penna*, 11 Cal. 4th at 393 ("…a plaintiff seeking to recover for an alleged interference with

27  prospective contractual or economic relations must plead and prove as part of its case-in-chief

28  that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in

1   conduct that was wrongful by some legal measure other than the fact of interference itself.").

2   Plaintiff's theory would render the CDA's Good Samaritan provision meaningless.  In effect,

3   Holomaxx argues that after the onset of CDA-compliant blocking, a complaint by the blocked

4   party is sufficient to retroactively impute wrongful knowledge for that blocking.  This theory is

5   clearly wrong, would expose ISPs to unreasonable amounts of unknown risk and would

6   contravene Congressional intent in passing the CDA.

7        Once again, the recent *e360Insight* opinion is instructive.  The plaintiff there also tried to

8   argue that by blocking its e-mail messages, defendant was intentionally interfering with plaintiff's

9   contracts and relationships.  *e360Insight,* 546 F. Supp. 2d at 609. The court rejected these

10  arguments, holding that such theories were barred by the Good Samaritan provision of the CDA.

11  *Id*   The court further noted that while it may be illegal to interfere with business prospects,

12  "usually they are a class of easily identified individuals and usually the interference is that of the

13  defendant interacting directly with the prospective buyers."  *Id*. at 609 n.3 (finding no cases in

14  which a "refusal to allow a plaintiff to run an advertisement in a medium with wide circulation …

15  constitutes such tortious interference.").  This uncontroversial holding comports with long-

16  standing California law, which similarly requires an intentional interference claim specifically

17  identify contracts or relationships at issue, establish defendant's knowledge of that specific

18  contract or relationship, and allege that defendant then interfered.  *Accuimage Diagnostics Corp.*

19  *v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956-57 (N.D. Cal. 2003) (generic allegations that there

20  was an interference with unspecified third parties are insufficient as a matter of law); *Westside*

21  *Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 523 (1996) (plaintiff's claim for

22  interference as to unidentified prospective buyers was insufficient as a matter of law).  Holomaxx

23  has alleged none of that here.

24        Holomaxx's claims arising from its alleged relationship or contract with Dragon Networks

25  fare no better.  For instance, Holomaxx has not pled facts sufficient to establish that its

26  relationship with Dragon Networks was actually disrupted.  While Holomaxx claims that it did

27  not receive the benefits of its contract with Dragon Networks (Compl. ¶¶ 46, 82, 93), it does not

28  convert these allegations into "plausible" facts that show Holomaxx is entitled to relief.

1    *Twombly*, 550 U.S. at 555 (the Complaint must contain factual allegations sufficient to "raise a

2    right to relief above the speculative level.").  Holomaxx has not pled any facts to establish that

3    Holomaxx or Dragon Networks breached an existing contract or that Dragon Networks is no

4    longer serving as Holomaxx's datacenter.  Indeed, Holomaxx fails to allege *any* facts to show

5    how its relationship with Dragon Networks was disrupted.  Therefore, Holomaxx cannot establish

6    intentional interference in its relationship with Dragon Networks.

7            For these reasons, and because Holomaxx's claims are barred by the CDA, Holomaxx's

8    Fourth and Fifth Claims for intentional interference should be dismissed.

9                **6.        Independent Of The CDA, Holomaxx Fails To State A Claim For
                            Unfair Competition.**
10

11           Holomaxx's Ninth Claim asserts Unfair Competition under California Business and

12   Professions Code Section 17200, *et seq.* ("UCL").  The claim is meritless and should be

13   dismissed.  Holomaxx predicates this theory on the same factual allegations discussed above

14   regarding Microsoft's e-mail filtering.  Compl. ¶¶ 120-121 ("By engaging in the conduct

15   described herein, Defendants have engaged in unlawful, unfair, or fraudulent business acts or

16   practices in violation of [the UCL]").  Holomaxx asserts no independent acts to support this

17   claim; it merely references its other allegations concerning e-mail filtering and concludes that

18   "Defendants' conduct, as described herein, was performed with malice and oppression, fraud, and

19   reckless indifference."  *Id.* ¶ 122.  Under well-established California law, "[i]f the same conduct

20   is alleged to be both [a violation of one law] and an 'unfair' business act or practice for the same

21   reason … the determination that the conduct is not [otherwise unlawful] necessarily implies that

22   the conduct is not 'unfair' toward consumers." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363,

23   375 (2001).  As another court succinctly summarized it: "[t]he UCL does not apply if the

24   Legislature has expressly declared the challenged business practice to be lawful in other statutes."

25   *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505-06 (1999).  Here the CDA expressly declares

26   the challenged practice to be lawful.  Accordingly, the UCL does not apply, Holomaxx's claim

27   fails and it should be dismissed.

28

1        **7.        Holomaxx Fails To State A Claim For Defamation And False Light.**

2              In addition to claims arising from Microsoft's alleged blocking of Holomaxx's e-mails to

3    Microsoft e-mail users, in its Seventh and Eighth Claims Holomaxx asserts claims for defamation

4    and false light.  Holomaxx seeks to ground these claims entirely on a single statement that

5    Microsoft allegedly made to Dragon Networks, the company operating the datacenter hosting

6    Holomaxx's services.  According to Holomaxx, after blocking Holomaxx's IP addresses,

7    Microsoft allegedly informed Dragon Networks that the IP addresses had been rejected "for

8    policy reasons" "or for spamming."  Compl. ¶ 45.  These allegations are insufficient to support

9    claims for defamation or false light and must be dismissed.  *See Knievel v. ESPN*, 393 F.3d 1068,

10   1073-74 (9th Cir. 2005) (granting motion to dismiss; "It is for the court to decide [whether a

11   statement is actionable defamation] in the first instance as a matter of law.") (citation omitted).

12             "[D]efamation 'involves the intentional publication of a statement of fact which is false,

13   unprivileged, and has a natural tendency to injure or which causes special damage.'"  *Price v.*

14   *Stossel*, 620 F.3d 992, 998-99 (9th Cir. 2010) (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13

15   (2007)).  Relatedly, to establish a claim for false light, Holomaxx must show that (i) Microsoft

16   disclosed to one or more persons information about or concerning Holomaxx that was presented

17   as factual but that was actually false or created a false impression about Holomaxx; (ii) the

18   information was understood by one or more persons to whom it was disclosed as stating or

19   implying something highly offensive that would have a tendency to injure Holomaxx's

20   reputation; (iii) establish that Microsoft acted with constitutional malice; and that (iv) Holomaxx

21   was injured by the disclosure.  *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1082 (9th Cir. 2002)

22   (citing *Fellows v. Nat'l Enquirer, Inc.*, 42 Cal. 3d 234 (1986); Restatement (Second) of Torts §

23   652E [1976])).

24             Plaintiff falls far short of establishing these necessary elements.  Holomaxx claims that

25   after allegedly blocking IP addresses hosted at Dragon Networks, Microsoft allegedly informed it

26   that it had done so because the IP addresses "had been rejected 'for policy reasons,' and were

27   blocked manually 'or for spamming.'"  Compl. ¶ 45.  In order to be defamatory, Holomaxx, at a

28

1 minimum, would have to provide factual allegations that the statement that its IP addresses had

2 been rejected for "policy reasons" "or for spamming" was false. Holomaxx does not do so.

3   To the contrary, the Complaint establishes that the allegedly defamatory statements were

4 not false. In Paragraph 34, for instance, Holomaxx alleges that Microsoft blocked e-mails "based

5 on the recommendations of [its] SmartScreen filter." *Id.* ¶ 34. Thus, Holomaxx itself recognizes

6 that the e-mails were blocked for "policy reasons" implemented through the SmartScreen filter.

7 Similarly, Holomaxx admits that Microsoft blocked e-mails on the basis that Microsoft believed

8 the e-mails contained "spam-like characteristics." *Id.* ¶¶ 31, 33-34. Again, Holomaxx alleges

9 that the reason for Microsoft's blocking was for spamming.

10   Holomaxx goes to great lengths to say that it is not a spammer. As the *e360Insight* court

11 noted, "[s]ome, perhaps even a majority in this country" would disagree, as that term refers

12 generally to the business in which Holomaxx engages. 546 F. Supp. 2d at 605, 607 (discussing

13 bulk e-mails "whether you call them spam or mass marketing mailings"); *see also Gordon v.*

14 *Virtumundo, Inc.*, 575 F.3d 1040, 1045 n.1 (9th Cir. 2009) (the term "spam … does not have a

15 precise definition" and may "refer broadly" to forms of "junk e-mail"). Thus, at best, the alleged

16 statement that e-mail was filtered "for spamming" reflects a subjective opinion about the

17 objectionable nature of the e-mail, not statements of fact that are provably false. Indeed, given

18 that the alleged statement describes CDA-protected e-mail filtering, the conclusion that it reflects

19 a subjective opinion is inescapable. *See Knievel*, 393 F.3d at 1075 ("The context in which the

20 statement appears is paramount in our analysis, and in some cases it can be dispositive."). Thus,

21 dismissal is warranted.[5] *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (no

22 defamation where a statement "cannot reasonably be interpreted as stating actual facts" that are

23 provably false); *Dodds v. Am. Broadcasting Co.*, 145 F.3d 1053, 1065 (9th Cir. 1998) (dismissing

24 defamation claim; statement that plaintiff engaged in "wrongful" conduct and implication that he

25 _____

26 [5]  Holomaxx vaguely attempts to suggests that Microsoft accused it of a crime, yet fails completely to allege any criminal accusation much less any statement that Holomaxx violated any

27 law. Compl. ¶ 47. The statement that emails were filtered for "policy reasons" "or for spamming" could not be reasonably interpreted as a criminal accusation. *Knievel*, 393 F.3d at 1074 (claim dismissed where, in context, a term was not "reasonably susceptible" to interpretation as a

28 criminal accusation).

1   was unfit for his job "are not assertions of fact and thus cannot be proved to be false"; defendant

2   "was expressing an opinion" protected by the First Amendment)

3       But the Court need not reach that determination in order to dismiss Plaintiff's defamation

4   claim.  The Complaint alleges that Microsoft *did* allegedly block Holomaxx's IP Addresses "for

5   spamming."  Holomaxx says nothing to the contrary.  The statement complained of is true, based

6   on Holomaxx's own allegations.  And in any event, Holomaxx alleges that its IP addresses were

7   filtered "for policy reasons" "*or* for spamming."  Compl. ¶ 45 (emphasis added).  The disjunctive

8   "or" plainly means that the allegedly defamatory statement was not false if Microsoft *either*

9   blocked Holomaxx's IP addresses for policy reasons *or* blocked them for spamming.  Holomaxx

10  repeatedly alleges that Microsoft blocked Holomaxx's IP addresses as sending e-mail that was

11  inconsistent with the SmartScreen filter and the policies it implements.  Compl. ¶¶ 31, 33, 34, 72,

12  81, and 92.  Thus, on the face of the Complaint, the statement at issue is true.  Plaintiff's

13  defamation and false light claims fall accordingly.[6]

14  ## IV.   **CONCLUSION**

15      For the foregoing reasons, Microsoft respectfully requests that Plaintiff Holomaxx's

16  Complaint be dismissed in its entirety.  Microsoft further requests that the Complaint be

17  dismissed with prejudice due to the futility of Holomaxx's claims.

18  Dated: December 17, 2010                    GABRIEL M. RAMSEY
                                                Orrick, Herrington & Sutcliffe LLP
19

20                                              /s/ Gabriel M. Ramsey
                                    _____
21                                              GABRIEL M. RAMSEY
                                                Attorneys for Defendant
22                                              MICROSOFT CORPORATION

23

24

25  _____

[6]  Further, because Holomaxx's false light claim is premised on allegedly defamatory statements,
26  it is subsumed within the defamation claim and dismissed as a separate claim.  *Selleck v. Globe
Int'l*, 166 Cal. App. 3d 1123, 1136 (1985) ("plaintiff's libel claim provides him with a complete
27  remedy for any damages he has suffered…the second cause of action is, in effect, a duplication of
the first and hence must be dismissed as surplusage"); *Dworkin v. Hustler Magazine*, 867 F.2d
28  1188, 1193 n.3 (9th Cir. 1989) ("to survive as a separate cause of action, a false light claim must
allege a nondefamatory statement").