1  Erik S. Syverson (SBN 221933)
   PICK & BOYDSTON, LLP
2  617 South Olive Street, Suite 400
   Los Angeles, CA 90014
3  Phone: 213-624-1996
   Fax: 213-624-9073
4
5  Attorneys for Plaintiff
   HOLOMAXX TECHNOLOGIES CORPORATION
6
7
8
9              UNITED STATES DISTRICT COURT
10          NORTHERN DISTRICT OF CALIFORNIA
                   SAN JOSE DIVISION
11
12 HOLOMAXX TECHNOLOGIES            )  Case No. C 10-04924-JF
   CORPORATION, a Pennsylvania S    )
13 Corporation,                     )
                                    )
14              Plaintiff,          )  **OPPOSITION TO MICROSOFT**
                                    )  **CORPORATION'S MOTION TO**
15        v.                        )  **DISMISS COMPLAINT PURSUANT TO**
                                    )  **FED. R. CIV. P. 12(b)(6)**
16 MICROSOFT CORPORATION, a Delaware )
   corporation, and RETURN PATH, INC., a )  Date:  February 25, 2011
17 Delaware corporation,            )  Time:  9:00 a.m.
                                    )  Judge:  Hon. Jeremy Fogel
18              Defendants.         )  Court:  Courtroom 3, 5th Floor
                                    )
19                                  )
                                    )
20 ─────────────────────────────────)
21
22
23
24
25
26
27
28

### TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... iiiii

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ....................................................................................................... 2

    A.    Legal Standard ......................................................................................... 2

    B.    Microsoft Is Not Immune Under the Communications Decency Act
        ("CDA") .................................................................................................... 3

        1.    The Communications *Decency* Act provides immunity for
             filtering inappropriate and offensive materials – *NOT* the
             routine business communications at issue here ................................... 4

        2.    The Complaint alleges that Microsoft acted in bad faith –
             and not in good faith. .......................................................................... 7

    C.    Holomaxx States a Claim Under Each Cause of Action ............................ 9

        1.    Intentional Interference with Contract and Intentional
             Interference with Prospective Business Advantage .............................. 9

             a.    Intentional Interference with Contract ("IIC") ...................... 9

             b.    Intentional Interference with Prospective
                 Business Advantage ("IIPBA") .................................................. 11

        2.    18 U.S.C. §§ 2510 *et seq.* (The Federal Wiretap Act) .......................... 13

             a.    Holomaxx has properly alleged interception ........................... 14

             b.    Holomaxx is not required to negative any statutory
                 exceptions – and Section 2511(2)(a)(i) (the "operator
                 exception) does not apply here .................................................. 15

             c.    Holomaxx is not required to negative the consent
                 exception (and has not alleged consent) .................................... 16

        3.    18 U.S.C. §§ 2701 et seq. (The Stored Communications Act) ............. 17

        4.    18 U.S.C. § 1030 (Computer Fraud & Abuse Act) .............................. 18

        5.    California Penal Code §§ 630 *et seq.*
             (Wiretapping/Eavesdropping) .............................................................. 20

        6.    California Civil Code §§ 43 et seq. (Defamation) and False Light ..... 20

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

          **a.**      **The "gist" or "sting" of Microsoft's statement is that Holomaxx is a spammer; it is therefore irrelevant whether Microsoft's other statements are true or false**........... 21

          **b.**      **Microsoft's statement is defamatory *per se*, because it charges Holomaxx with a crime and tends to injure Holomaxx in its business**.............................. 22

          **c.**      **Microsoft's statement is actionable because a reasonable factfinder could conclude it implies a provably false factual assertion: *i.e.*, that Holomaxx sends unsolicited "spam" email in violation of the Can-Spam Act**...................... 23

       **7.**      **California Business & Professions Code §§ 17200 *et seq.***................... 24

**III.**      **CONCLUSION**...................................................................................... 25

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*625 3rd St. Assocs., LP v. Alliant Cred. Union*, 633 F. Supp. 2d 1040 (N.D. Cal. 2009)............. 11

4

*Acculmage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941 (N.D. Cal. 2003) .... 10, 12

5

*Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662 (7th Cir. 2007) ................................. 13

6

*Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041 (N.D. Ill. 1998)................................ 16, 18

7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). ................................................................2-4

8

*Bailey v. Household Finance Corp.*, 2010 U.S. Dist. Lexis 117866 (S.D. Cal. 2010)................ 20

9

*Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902 (9th Cir. 2008)............................................. 10

10

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir.2003)................................................................... 4

11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 2, 3

12

*Black v. Google, Inc.*, 2010 U.S. Dist. Lexis 82905 (N.D. Cal. 2010) ........................................ 5

13

*Boddie v. ABC*, 731 F.2d 333 (6th Cir. 1984)................................................................. 17

14

*Bohach v. City of Reno*, 932 F. Supp. 1232 (D. Nev. 1996) ......................................................... 18

15

*Bradley v. Google, Inc.*, 2006 U.S. Dist. Lexis 94455 (N.D. Cal. 2006)................................ 15, 20

16

*Cardinal Health 414, Inc. v. Adams,* 582 F. Supp. 2d 967 (M.D. Tenn. 2008)..................... 15, 20

17

*Cont'l Grp. v. Kw Prop. Mgmt, LLC,* 622 F. Supp. 2d 1357 (S.D. Fla. 2009) ...................... 19, 20

18

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009)............................................................... 2

19

*Crowley v. Cybersource Corp.,* 166 F. Supp. 2d 1263 (N.D. Cal. 2001) .............................. 15, 18

20

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099 (9th Cir. 2006) ......... 12, 24

21

*Doe v. GTE Corp.,* 347 F.3d 655 (7th Cir. 2003) ............................................................ 3

22

*Dorr v. Yahoo! Inc.,* 2007 U.S. Dist. Lexis 59126 (N.D. Cal. 2007)........................................... 17

23

*e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill. 2008) ......................... *passim*

24

*eBay, Inc. v. Digital Point Solutions, Inc.,* 608 F. Supp. 2d 1156 (N.D. Cal. 2009) .............. 19, 20

25

*Edwards v. Hall,* 234 Cal. App. 3d 886 (1991) ...................................................... 22, 23

26

*Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107 (3d Cir. 2003)................................. 18

27

*Garcia v. Haskett,* 2006 U.S. Dist. Lexis 46303 (N.D. Cal. 2006)........................................ 14, 20

28

*Goddard v. Google, Inc.*, 2008 U.S. Dist. Lexis 101890 (N.D. Cal. Dec. 17, 2008)
("*Google I*").................................................................................................................... 5, 6

*Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) (*"Google II"*)........................... 5

*Gordon v. Virtumundo*, 575 F.3d 1040 (9th Cir. 2009) ................................................................. 23

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542 (9th Cir. 1990) ................ 3

*Hotmail Corp. v. Van$ Money Pie, Inc.*, 47 U.S.P.Q.2d 1020 (N.D. Cal. 1998)........................... 19

*Howard v. AOL*, 208 F.3d 741 (9th Cir. 2000). ............................................................................ 16

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 U.S. Dist. Lexis 91644 (W.D. Pa. 2007)..... 16

*Jones v. AIG Risk Mgmt.*, 2010 U.S. Dist. Lexis 81662 (N.D. Cal. 2010) ...................................... 3

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002)................................................... 15

*Lewis-Burke Assocs. LLC v. Widder*, 2010 U.S. Dist. Lexis 76180 (D.D.C. 2010) ...................... 19

*Lucas v. Dep't of Corr.*, 66 F.3d 245 (9th Cir. 1995)....................................................................... 1

*Maxner Co., Ltd. v. Costco Wholesale Corp.*, 2004 U.S. App. Lexis 14298 (9th Cir. 2004)........ 10

*McKelvey v. United States*, 260 U.S. 353 (1922)............................................................................. 3

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ...................................... 2

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................................................. 21-24

*Molsbergen v. United States*, 757 F.2d 1016 (9th Cir. 1985) .......................................................... 3

*MySpace, Inc. v. Globe.com, Inc.*, 2007 U.S. Dist. Lexis 44143 (C.D. Cal. 2007) ...................... 22

*Nat'l Numismatic Certification, LLC v. eBay, Inc.*, 2008 U.S. Dist. Lexis 109793
(M.D. Fla. 2008) ............................................................................................................. 6

*Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004)........................... 13

*Optinrealbig.com LLC v. Ironport Systems, Inc.*, 323 F. Supp. 2d 1037, 1039
(N.D. Cal. 2004)........................................................................................................ 8, 23

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007)............................................... 3

*Perfect 10, Inc. v. Google, Inc.*, 2008 U.S. Dist. Lexis 79200
(C.D. Cal. Jul. 16,  2008) ................................................................................................ 3

*In re Pharmatrak*, 329 F.3d 9 (1st Cir. 2003)........................................................................ 14, 17

*Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974 (E.D. Cal. 2000)............................................... 17

*In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665 (9th Cir. 2007).......................................... 24

*Potter v. Havlicek*, 2007 U.S. Dist. Lexis 10677 (W.D. Ohio, 2007)........................................... 15

OPPOSITION TO MICROSOFT
                                     CORPORATION'S MOTION TO DISMISS

*Santiago v. Walls*, 599 F.3d 749 (7th Cir. 2010) ............................................................ 3

*Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp. 2d 630 (C.D. Cal. 2000) .............................. 12, 13

*Secureinfo Corp. v. Telos Corp.,* 387 F. Supp. 2d 593 (E.D.Va. 2005)........................................ 20

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 U.S. Dist. Lexis 39599 (N.D. Cal. 2007).................................................................................................................. 10

*Smith v. TRUSTe*, 2010 U.S. Dist. Lexis 43360 (D.N.J. 2010)......................................................... 8

*SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 U.S. Dist. Lexis 133596 (N.D. Cal. 2010)................................................................................................................. 3

*Specht v. Netscape Comms. Corp.,* 306 F.3d 17, 28 (2nd Cir. 2002)............................................ 17

*State-Wide Photocopy Corp. v. Tokai Fin. Servs., Inc.,* 909 F. Supp. 137 (S.D.N.Y. 1995)........ 18

*Theofel v. Farey-Jones*, 359 F.3d 1066, 1070 (9th Cir. 2004)................................................. 15, 19

*In re Toys R Us,* U.S. Dist. Lexis 16947 (N.D. Cal. 2001)............................................................ 18

*Unelko v. Rooney,* 912 F.2d 1049 (9th Cir. 1990) .......................................................................... 23

*United States v. Councilman,* 418 F.3d 67 (1st Cir. 2005) ............................................................ 14

*United States v. Lowry,* 512 F.3d 1194 (9th Cir. Cal. 2008).............................................................. 3

*United States v. Morris*, 928 F.2d 504 (2d Cir. 1991) .................................................................... 19

*United States v. Szymuszkiewicz*, 2009 U.S. Dist. Lexis 60755, *18 (E.D. Wisc.) (aff'd, Szymuszkiewicz II,* 622 F.3d at 701) ......................................................... 5, 8, 23

*United States v. Szymuszkiewicz*, 2009 U.S. Dist. Lexis 60755 (E.D. Wisc.) ............................. 18

*United States v. Szymuszkiewicz (Szymuszkiewicz II)*, 622 F.3d 701 (7th Cir. 2010).................. 14

*United States v. Warshak,* 2010 U.S. App. Lexis 25415 (6th Cir. 2010) ................................. 16, 19

*Wilshire Westwood Assocs. v. ARCO,* 881 F.2d 801 (9th Cir. 1989). ........................................... 15

*Young v. Facebook, Inc.,* 2010 U.S. Dist. Lexis 116530 (N.D. Cal. 2010) ..................................... 5

*Zango v Kaspersky Lab, Inc.,* 2007 U.S. Dist. Lexis 97332 (W.D. Wash.) ("*Zango I*"), *aff'd* 568 F.3d 1169 (9th Cir. 2009).......................................................................... 5, 6, 8

*Zango v Kaspersky Lab, Inc.,* 568 F.3d 1169 (9th Cir. 2009) ("*Zango II*") ........................... 5, 6, 8

**State Cases**

*Albertini v. Schaefer,* 97 Cal. App. 3d 822 (1979)......................................................................... 22

*Bank Comp. Network Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.,* 110 Ill. App. 3d 492 (1982)............................................................................................................................... 13

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

*Cel-Tech Comm., Inc. v. LA Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)........................................ 24

*Della Penn v. Toyota Motor Sales, USA, Inc*, 11 Cal. 4th 376 (1995). ........................................ 11

*Korea Supply Co. v. Lockheed Martin Corp*, 29 Cal. 4th 1134 (2003) ................................ 9, 10, 13

*Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal. 2d 224 (1961) ................................................ 24

*MacLeod v. Tribune Publ. Co.*, 52 Cal. 2d 536 (1959)............................................................ 21, 22

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118 (1990). ...................................... 9

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26 (1998)............................................ 10, 11

*Slaughter v. Friedman*, 32 Cal. 3d 149 (1982) ............................................................................. 22

*Weller v. ABC*, 232 Cal. App. 3d 991 (1991).................................................................................. 21

*Westside Center Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996) ............... 10, 12

### Federal Statutes

15 U.S.C. §§ 7701 *et seq.* ("Can-Spam Act") ........................................................................ *passim*

15 U.S.C. § 7703 ............................................................................................................................ 22

18 U.S.C. §§ 1030 *et seq.* ("Computer Fraud & Abuse Act") ...................................................... 18

18 U.S.C. § 1030 ............................................................................................................................ 18

18 U.S.C. § 1030(e)(6)..................................................................................................................... 19

18 U.S.C. § 1037 ............................................................................................................................ 22

18 U.S.C. §§ 2510 *et. seq.* & §§ 2701–2710
  ("Electronic Communications Privacy Act") ....................................................... 16-18, 20

18 U.S.C. §§ 2510 *et seq.* ("Federal Wiretap Act").................................................................. *passim*

18 U.S.C. § 2511............................................................................................................................ 13, 14

18 U.S.C. § 2511(2)(a)...................................................................................................................... 15

18 U.S.C. § 2511(2)(a)(i) ............................................................................................................. 15, 16

18 U.S.C. § 2511(2)(d)...................................................................................................................... 17

18 U.S.C. §§ 2701 *et seq.* ("Stored Communications Act") .................................................... *passim*

18 U.S.C. § 2701(a) ........................................................................................................................ 18

18 U.S.C. § 2701(c)(2)...................................................................................................................... 18

18 U.S.C. § 2707(a) ........................................................................................................................ 18

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

47 U.S.C. § 230 ("Communications Decency Act").............................................................. *passim*

47 U.S.C. § 230(b) .......................................................................................................... 4

47 U.S.C. § 230(b)(2)....................................................................................................... 2

47 U.S.C. § 230(c)(1)....................................................................................................... 5

47 U.S.C. § 230(c)(2)....................................................................................................... 6

47 U.S.C. § 230(c)(2)(a) ............................................................................................. *passim*

47 U.S.C. § 230(c)(2)(b) ........................................................................................... 5, 6, 8

**Federal Regulations**

*In re Preserving the Open Internet,* FCC 10-201
        (adopting 47 C.F.R. Part 8, Dec. 21, 2010)........................................................... 2

**Federal Rules**

Fed. R. Civ. Proc. 8(a)(2)................................................................................................. 2

Fed. R. Civ. Proc. 8(e)(2)................................................................................................. 3

Fed. R. Civ. Proc. 12(b)(6).................................................................................... 3, 13, 17

9th Cir. Rule 36-3(c) ....................................................................................................... 10

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("Unfair Competition Law")............................ 12, 24, 25

Cal. Civ. Code § 43 *et seq.* ("Defamation")............................................................. 12, 24

Cal. Civ. Code § 46(1) .................................................................................................. 22

Cal. Civ. Code § 46(3) .................................................................................................. 22

Cal. Civ. Proc. Code § 460............................................................................................. 24

Cal. Civ. Proc. Code § 461............................................................................................. 24

Cal. Penal Code §§ 630 *et seq* ("Wiretapping/Eavesdropping") ............................ 20, 24

Cal. Penal Code § 631................................................................................................... 20

Cal. Penal Code § 632................................................................................................... 20

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1

## I. INTRODUCTION

2    The gravamen of this action is that Microsoft is intentionally killing Holomaxx's business by

3 blocking its legitimate commercial emails – and the heart of the action is whether Microsoft can

4 kill small businesses like Holomaxx with impunity.

5    Microsoft engages in inappropriate name-calling, in order to influence the court and distract

6 from the holes in its legal arguments. As alleged in the Complaint, Holomaxx's emails are all

7 solicited, its protocols exceed the requirements of the Can-Spam Act (15 U.S.C. §§ 7701 *et seq.*),

8 and its email campaigns generate a very low user complaint rate. And as set forth below, "spam"

9 means only *unsolicited* email – yet Microsoft would paint all senders with the same "spammer"

10 brush, because (as alleged by Holomaxx) Microsoft has a bad-faith motive to block legitimate

11 commercial emails.[1]

12    The Complaint validly states business tort claims, as well as wiretap and fraud claims based on

13 Microsoft's interception of its emails; Holomaxx also states valid claims based on Microsoft's

14 defamatory statements to its datacenter.[2] This case will therefore turn on whether Microsoft can (as

15 it believes) act with impunity – whether it is entitled to "blanket immunity," as it proposes (MTD

16 9:6), or whether other businesses can also participate in the competitive marketplace that Congress

17 recognized and intended when it enacted the Communications Decency Act (47 U.S.C. §§ 230).

18    "Spam," and "spammers," are universally reviled – but as any retailer (and many shoppers) will

19 tell you, email is a welcome and necessary tool for marketing a modern business. Defendant relies

20 heavily on just one Illinois district court case for the proposition that it can block *any* content,

21 including legitimate commercial email. However, the case law is not as "well-settled" as

22

---

23 [1] Microsoft also focuses on the millions of emails allegedly sent by Holomaxx, and the thousands of emails "bounced," MTD 3:25-28, to distract from Holomaxx's low *rate* of bounced emails, and

24 its low sending profile among the billions (or trillions) of emails handled daily by Microsoft. Moreover, "bounced" emails may not be unsolicited – and because Microsoft's filters operate as a

25 "black box," we have only Microsoft's word for the true rate. Finally, although not alleged in the Complaint, Holomaxx's email campaigns ordinarily generate a tremendous *positive* response.

26 [2] As set forth herein, Holomaxx has stated a claim for all causes of action. If the Court finds the allegations of the Complaint insufficient in any respect, Holomaxx requests leave to amend.

27 "Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured

28 by amendment." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

---

1                                                OPPOSITION TO MICROSOFT
                                      CORPORATION'S MOTION TO DISMISS

1   Defendant would have this court believe – and in fact, this very court has stated that 47 U.S.C.

2   Section 230 (c)(2) does not provide immunity for business-related content.

3      In enacting Section 230, Congress sought "to preserve the vibrant and competitive free market"

4   (47 U.S.C. § 230(b)(2)) – but the plain fact is that internet service providers like Microsoft now

5   have so much power to control the discourse, that permitting them to block emails at whim would

6   be devastating to both business and private communications – especially to business, where

7   Microsoft can demand extortionate fees and may act from anticompetitive motives.[3]

8      Finally, Microsoft argues that Holomaxx's allegations are merely conclusory, overlooking both

9   explicit pleading rules and the clear allegations of the Complaint. Among other things (and despite

10  *Iqbal* and *Twombly*), plaintiffs are not required to allege facts that are known only by defendants.

11  This rule is especially important here, where Microsoft's filters operate as a "black box," so that

12  only Microsoft knows how and why it blocks commercial emails.

13     It is the rare email marketer who has both the will and the resources to fight off a giant like

14  Microsoft. If Microsoft is permitted to block Holomaxx's emails with impunity, it will continue to

15  bully small businesses, and crush the market, in ways never intended by Congress.

16                   **II.**    **ARGUMENT**

17  **A. Legal Standard**

18     All allegations of material fact in the complaint are taken as true and construed in the light most

19  favorable to the plaintiff, *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); dismissal is

20  appropriate "only where the complaint lacks a cognizable legal theory or sufficient facts to support

21  a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

22  2008). FRCP 8(a)(2) requires only "a short and plain statement of the claim"; a complaint "does

23  not need detailed factual allegations," but "must contain "enough facts to state a claim to relief that

24  is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); "a claim has

25  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26

27  [3] *See In re Preserving the Open Internet,* FCC 10-201 at 37 (adopting 47 C.F.R. Part 8, Dec. 21, 2010) ("The freedom to send and receive lawful content . . . without fear of blocking is essential to

28  the Internet's openness").

1 | reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129

2 | S. Ct. 1937, 1949 (2009).[4]

3 |     Importantly, "the federal rules allow plaintiffs to plead inconsistent claims and theories".

4 | *SOAProjects, Inc. v. SCM Microsystems, Inc.,* 2010 U.S. Dist. Lexis 133596, *24 (N.D. Cal. 2010)

5 | (*citing Molsbergen v. United States,* 757 F.2d 1016, 1018 n.3 (9th Cir. 1985) (FRCP "explicitly

6 | authorize[s] litigants to present alternative and inconsistent pleadings.")); FRCP Rules 8(e)(2) &

7 | (3); *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) (parties are often

8 | uncertain about the facts and the law when filing complaint; "In recognition of these uncertainties, .

9 | . . we allow pleadings in the alternative – even if the alternatives are mutually exclusive").

10 |     Moreover, even after *Iqbal* and *Twombly*, it is improper to dismiss a complaint where lack of

11 | specificity is due to facts that plaintiff cannot know for certain without discovery. *Santiago v.*

12 | *Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010); *cf. Jones v. AIG Risk Mgmt.*, 2010 U.S. Dist. Lexis

13 | 81662, *13-14 (N.D. Cal. 2010) (where facts known only by defendants, plaintiff should be

14 | afforded discovery and opportunity to amend pleadings) (citations omitted).

15 |     Finally, Holomaxx is not required to negative any exceptions. "It is a 'settled rule' that [a]

16 | pleading . . . need not negative the matter of an exception . . . , and that it is incumbent on one who

17 | relies on such an exception to set it up and establish it.'" *United States v. Lowry,* 512 F.3d 1194,

18 | 1199 (9th Cir. Cal. 2008) (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922).

19 | **B. Microsoft Is Not Immune Under the Communications Decency Act ("CDA")[5]**

20 |     The Communications Decency Act should not even be considered on a rule 12(b)(6) motion.

21 | *Perfect 10, Inc. v. Google, Inc.*, 2008 U.S. Dist. Lexis 79200, *22 (C.D. Cal. Jul. 16, 2008)

22 | ("[P]reemption under the CDA is an affirmative defense that is not proper to raise in a Rule

23 | 12(b)(6) motion.") (*citing Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir. 2003) ([CDA immunity]

24 | [4] In general, a court ruling on a motion to dismiss is limited to the four corners of the complaint.
25 | *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).
Microsoft has requested judicial notice of its purported terms of service; *see* Holomaxx's
26 | Opposition to RJN ("Opp. to RJN"), detailing why such notice is inappropriate.

27 | [5] Microsoft acknowledges, as it must, that the Communications Decency Act does not extend to
Holomaxx's federal claims under the Wiretap Act and the Stored Communications Act, or to its
28 | state law claims for defamation and false light. MTD 1:25-26.

1  is an affirmative defense that plaintiff is not required to plead around)); *compare Twombly,* 550

2  U.S. at 556 (plaintiff must plead agreement in antitrust case); *Iqbal,* 129 S. Ct. at 1948 (plaintiff

3  must plead discriminatory purpose in *Bivens* action).  Even if the issue of CDA protection were

4  properly before the Court, Microsoft's argument fails because it is not entitled to immunity under

5  the CDA (47 U.S.C. § 230), for the following reasons:  (i) the Decency Act permits providers to

6  restrict only truly inappropriate and offensive materials (like pornography, graphic violence, or

7  harassment) – and *not* the routine business communications at issue in this case; and (ii) Section

8  (c)(2)(A) requires that the defendant entered into the blocking in good faith, and the Complaint

9  alleges that Microsoft acted in bad faith.  Compl. ¶¶ 9-11, 20-24, 28, 30-31, 48-51, 117.

10  **1.  The Communications *Decency* Act provides immunity for filtering inappropriate and**

11  **offensive materials – *NOT* the routine business communications at issue here.**

12  As its name suggests, Communications Decency Act was not (as Microsoft would have it)

13  enacted to provide service providers with "blanket immunity" (MTD 9:6), even when such

14  providers abuse their power to protect their share of the market; instead, it "was enacted 'to control

15  the exposure of minors to indecent material' on the Internet." *Batzel v. Smith*, 333 F.3d 1018, 1026

16  (9th Cir.2003). [6]  Section 230 provides:

17

18  [6] A few notable themes underlie the enactment of the Communications Decency Act:  (i) the
preservation of a "vibrant and competitive free market" (§ 230(b)(1)-(2)); (ii) "user control" (§

19  230(b)(3)-(4)); and (iii) the protection of children and others threatened by "inappropriate online
material," including "obscenity, stalking, and harassment" (§ 230(b)(3)-(5)).  Section 230(b) states

20  the policies underlying the Act:

21  (1) to promote the *continued development of the Internet* and other interactive computer
services and other interactive media; ¶

22  (2) to preserve *the vibrant and competitive free market* that presently exists for the Internet
and other interactive computer services, unfettered by Federal or State regulation;

23

24  (3) *to encourage the development of technologies which maximize user control over what
information is received by individuals, families, and schools* who use the Internet and

25  other interactive computer services;

26  (4) to remove disincentives for the development and utilization of blocking and filtering
technologies that *empower parents to restrict their children's access to objectionable or*

27  *inappropriate online material*; and

28  ///

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1      (c) **Protection for 'Good Samaritan' blocking and screening of *offensive* material -**

2        (1) **Treatment of publisher or speaker** – No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information
3        provided by another information content provider.

4        (2) **Civil liability** – No provider or user of an interactive computer service shall be held liable on account of –

5

6           (A) any action voluntarily taken ***in good faith*** to restrict access to or availability of material that the provider or user considers to be ***obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable***, whether or not such
7           material is constitutionally protected; or

8           (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph [(A)].

9   (Emphasis added.) Note the content limitations contained in section (c)(2)(A), identifying

10  "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable"

11  materials. Section 230(c)(1) "contains no such limitations"; however, because it governs only

12  publication, it does not apply here. *Goddard v. Google, Inc.*, 2008 U.S. Dist. Lexis 101890, *1-27

13  (N.D. Cal. Dec. 17, 2008) ("*Goddard I*"). Cases decided under section (c)(1) are therefore

14  irrelevant. Similarly, section (c)(2)(B) governs only the provision of filtering instructions and/or

15  software to third parties, *see Zango v Kaspersky Lab, Inc.,* 2007 U.S. Dist. Lexis 97332 (W.D.

16  Wash.) ("*Zango I*"), *aff'd* 568 F.3d 1169 (9th Cir. 2009) ("*Zango II*"). Section (c)(2)(B) borrows

17  section (c)(2)(A)'s content limitations, but does not contain (or borrow) a good faith requirement.

18  *Id.* Cases decided under section (c)(2)(B) (like *Zango*) are therefore of limited relevance.[7]

19

20       (5) to ensure vigorous enforcement of Federal criminal laws to deter and punish ***trafficking in***
21       ***obscenity, stalking, and harassment*** by means of computer.

22  (Emphasis added.) The Act, which was enacted with the title "Online Family Empowerment," is also titled "Broadcast Obscenity and Violence," and subtitled "Obscene, Harassing, and Wrongful
23  Utilization of Telecommunications Facilities."

24  [7] Microsoft provides several purported examples of dismissals under Section 230; however, most of those cases involved section (c)(1), and are therefore inapposite. *Goddard v. Google, Inc.,* 640 F.
25  Supp. 2d 1193, 1202 (N.D. Cal. 2009) ("*Goddard II*") (fraudulent third-party ads; dismissal under (c)(1)); *Black v. Google, Inc.*, 2010 U.S. Dist. Lexis 82905 (N.D. Cal. 2010) (posting defamatory
26  comments; (c)(1)); *Optinrealbig.com LLC v. Ironport Systems, Inc.,* 323 F. Supp. 2d 1037, 1039 (N.D. Cal. 2004) (defendant published improper reports; (c)(1)); *see also Zango,* 568 F.3d at 1169
27  ((c)(2)(b); defendant provided filtering software to users). *Young v. Facebook, Inc.,* is not a CDA case at all; it concerns the First and Fourth Amendments, does not mention Section 230(c)(2) at all,
28  and notes 230(c)(1) only in passing. 2010 U.S. Dist. Lexis 116530 (N.D. Cal. 2010). Only

     OPPOSITION TO MICROSOFT
     CORPORATION'S MOTION TO DISMISS

1    That leaves only section (c)(2)(A) – and any argument that Microsoft is entitled to immunity

2  under section (c)(2)(A) fails, because that section was *not* intended to immunize the blocking of

3  routine business emails, like those sent by Holomaxx. In *Goddard I*, this Court found, based on the

4  clear intent of the Decency Act, that immunity is unavailable under Section 230(c)(2) for business-

5  related content.[8]  2008 U.S. Dist. Lexis 101890, *21-22 (rejecting defendant's argument that §

6  (c)(2) provided immunity even if § 230(c)(1) did not apply) (citing *Nat'l Numismatic Certification,*

7  *LLC v. eBay, Inc.*, 2008 U.S. Dist. Lexis 109793 (M.D. Fla. 2008) (finding that auctions of

8  counterfeit goods did not qualify as "objectionable" content)). As stated in *Goddard I*:

9      In National Numismatic . . . eBay argued that it was immune from liability based on its
       policy of removing "objectionable" material under § 230(c)(2).  The district court noted the
10     vagueness of the word "objectionable," and observed that "[i]n the context of section 230,
       'objectionable' is preceded by the words 'obscene, lewd, lascivious, filthy, excessively
11     violent, [and] harassing.'"  *Id.*  Applying the canon of ejusdem generis, the court concluded
       that "[i]t is difficult to accept . . . that Congress intended the general term 'objectionable' to
12     encompass an auction of potentially-counterfeit coins when the word is preceded by seven
       other words that describe pornography, graphic violence, obscenity, and harassment." In the
13     instant case, the relevant portions of Google 's Content Policy require that MSSPs provide
       pricing and cancellation information regarding their services. *These requirements relate*
14     *to business norms of fair play and transparency and are beyond the scope of § 230(c)(2).*

15  *Id.* (emphasis added). And as stated in *Nat'l Numismatic*:

16     "One may find an array of items objectionable; for instance, a sports fan may find the
       auction of a rival team's jersey objectionable. However, Congress provided guidance on the
17     term "objectionable" by providing a list of seven examples and a statement of the policy
       behind section 230. Accordingly, the Court concludes that "objectionable" content must, at
18     a minimum, involve or be similar to pornography, graphic violence, obscenity, or
       harassment."

19  2008 U.S. Dist. Lexis 109793, *82.

20     Section (c)(2) is especially not intended to immunize *providers* (like Microsoft) for filtering

21  routine business content. Thus, in *Zango1*, the plaintiff (which was under a consent decree due to

22  its website's alleged deceptive practices) alleged that defendant had provided filtering software to

23  users that allowed those *users* to block its website, and the Court affirmed summary judgment

24  under section 230(c)(2)(B). 568 F.3d at 1170. Judge Fisher, concurring, noted that plaintiff had

25

26  *E360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill. 2008) concerns subsection
    (c)(2)(A); as set forth in Parts II.B(2) & II.C(1)(b), that case is readily distinguished.

27  [8] Note that Congress provided explicit protection from unsolicited "spam" email in the Can-Spam
28  Act, 15 U.S.C. §§ 7701 *et seq.*; it elected not to provide such protection in Section 230.

OPPOSITION TO MICROSOFT
                                                        CORPORATION'S MOTION TO DISMISS

1    waived any argument about the "otherwise objectionable" language. *Zango II,* 568 F.3d at 1178.

2    He warned against extending the court's finding beyond its facts, precisely because permitting

3    *providers* to deem content "otherwise objectionable" might lead to the kind of blanket immunity

4    that Microsoft seeks here:

5      [E]xtending immunity beyond the facts of this case could pose serious problems if
       providers of blocking software were to be given free license to *unilaterally* block the

6      dissemination of material by content providers under the literal terms of § 230(c)(2)(A).
       The risk inheres in the disjunctive language of the statute – which permits blocking of

7      "material that the *provider* or *user* considers to be obscene, lewd, lascivious, filthy,
       excessively violent, harassing, or otherwise objectionable . . ." – and the unbounded catchall

8      phrase, "otherwise objectionable." (Citation omitted.)

9      . . . . Congress plainly intended to give computer users the tools to filter the Internet's
       deluge of material users would find objectionable, in part by immunizing the providers of

10     blocking software from liability. *See* § 230(b)(3). But under the generous coverage of §
       230(c)(2)(B)'s immunity language, a blocking software provider might abuse that immunity

11     to block content for anticompetitive purposes or merely at its malicious whim, under the
       cover of considering such material "otherwise objectionable."

12    *Id.* (Fisher, J., concurring) (footnote omitted; emphasis in original). In short, section (c)(2)(A) was

13    drafted to allow *users* to screen out truly objectionable material – *i.e.,* material that might be

14    considered obscene, violent, or harassing. It was never intended to provide blanket immunity for

15    providers like Microsoft, which (as alleged here) has blocked Holomaxx's lawful, business-related

16    conduct unilaterally, "at its malicious whim."

17    **2. The Complaint alleges that Microsoft acted in bad faith – and not in good faith.**

18      As set forth above, Holomaxx is not required to plead around the Decency Act, because it is an

19    affirmative defense; however, the Complaint properly alleges that Microsoft acted in bad faith.[9]

20    Specifically, Holomaxx alleged that Microsoft blocked its emails based on cheap and overzealous

21    automated technology, motivated by profit to block the good along with the bad. Compl. ¶¶ 9-11,

22    20-24, 28, 30-31, 48-51, 117. Microsoft underplays these allegations as a mere "disagreement"

23    with its filtering methodology, MTD 9:22-23 (*citing* ¶¶ 13-24, 31-41); worse, Microsoft claims that

24    Holomaxx's allegations about Microsoft's purported reason for the blocking – *and the blocking*

25    *itself* – represent allegations that Microsoft "block[ed] e-mail that it considers harassing and

26    objectionable," and "made a determination . . . that Holomaxx's emails constitute objectionable

27

28    [9] Microsoft does not, and cannot, argue that the Complaint alleges good faith.

       OPPOSITION TO MICROSOFT
                                        CORPORATION'S MOTION TO DISMISS

1   spam." MTD 8:8-13 (*citing* Compl. ¶¶ 20-24, 31-36, 49-51).

2       Even if Microsoft had read the Complaint correctly, its argument proves too much. Taken to its

3   logical conclusion (and confirming Judge Fisher's prescient warning in *Zango II*), Microsoft's

4   argument would override Section 230's good-faith exception: If senders cannot lawfully challenge

5   an ISP's automated, unilateral "determinations" – if an allegation of blocking necessarily implies

6   that the service provider "considers" the blocked content "objectionable" – then no plaintiff can

7   ever succeed against an ISP on a cause of action for blocked content, and Microsoft truly does have

8   blanket immunity to kill small businesses at whim.

9       In *Smith v. TRUSTe,* plaintiff satisfied the bad faith requirement by alleging the defendant told

10  him "that he would not have to worry about . . . email blocking if he subscribed to a higher level of

11  service." *Smith v. TRUSTe*, 2010 U.S. Dist. Lexis 43360, *2 (D.N.J. 2010). Here, as in *Smith,*

12  Holomaxx alleged that Microsoft shares profits from a "whitelist" that it recommends to senders.

13  Compl. ¶ 49.

14      Microsoft's caselaw on the issue is all either distinguishable or inapposite. As noted above,

15  neither *Zango* nor *Optinrealbig* was decided under Section (c)(2)(A) (*see* Part II.B(1), n.7);

16  moreover, the Court in *Zango II* found that (even if section (c)(2)(B) required good faith), the

17  plaintiff had waived any argument on good faith. *Zango II,* 568 F.3d at 1178 & n.1. Defendant

18  relies heavily on *e360Insight* for the troubling conclusion that it has blanket immunity under the

19  Decency Act (*see* MTD 9:6, ii:25 (*citing e360Insight* "*passim*"), but that case is also

20  distinguishable. *E360Insight,* 546 F. Supp. at 609 (judgment on the pleadings; plaintiff's sole

21  allegation of bad faith was that the defendant allowed other companies to send bulk emails, and its

22  affidavit failed to show evidence of the policy). Unlike *e360Insight,* Holomaxx has specifically

23  alleged that Microsoft profited from its refusal to send Holomaxx's legitimate marketing emails –

24  moreover, this case has not proceeded to proof.[10]  Compl. ¶¶ 9-11, 20-24, 28, 30-31, 48-51, 117.

25  Holomaxx has therefore properly alleged bad faith.

26      For all of the reasons above, Microsoft is not entitled to protection under Section 230.

27  _____

28  [10] *E360Insight* is further distinguished at Part II.C(1)(b), as to the state law claims in that action.

1    **C.   Holomaxx States a Claim Under Each Cause of Action**

2        **1.   Intentional Interference with Contract and Intentional Interference with Prospective**

3            **Business Advantage**

4        Microsoft states a lot of rules about intentional interference with contract and intentional

5    interference with prospective business advantage (most of them incorrectly), and little or no legal

6    precedent (all of it either misstated or entirely irrelevant). Microsoft also consistently conflates the

7    two torts, and cites cases without providing any factual background or any indication of which

8    cause of action (or which rule) they might apply to. As set forth below, the Complaint states causes

9    of action for both types of intentional interference.

10           **a.   Intentional Interference with Contract ("IIC")**

11       The elements of a cause of action for intentional interference with contract are as follows: "(1)

12   a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3)

13   defendant's intentional acts designed to induce a breach or disruption of the contractual

14   relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

15   damage." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).

16   "Notwithstanding the presence of the word 'designed,' [the Ninth Circuit has] found that this tort

17   [does] not require a plaintiff to plead that the defendant acted with the specific intent to interfere."

18   *Korea Supply Co. v. Lockheed Martin Corp,* 29 Cal. 4th 1134, 1155 (2003). Holomaxx has pleaded

19   all of the elements of this claim. Compl. ¶¶ 13-14, 18(b), 37-38, 46, 54-57, 91-93, 106-118.[11]

20       Microsoft incorrectly argues that Holomaxx must plead: (i) the names of specific clients; (ii)

21   that Microsoft knew of these specific contractual relationships; and (iii) that Microsoft "engaged in

22   conduct intentionally aimed at disrupting" those specific contracts (*i.e.,* that Microsoft acted with

23   specific intent). MTD 19:19-26. These fallacies are taken in turn below.

24       First, Holomaxx is not required to plead the names of specific clients. *Silicon Image, Inc. v.*

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [11] Again disregarding the clear allegations of the Complaint, Microsoft says Holomaxx did not
26   allege any disruption of its contract with Dragon Networks, MTD 21:24-22:6; however, Holomaxx
     alleged that it contracts to use Dragon Networks' datacenter (*i.e.*, its computer systems, software,
27   and related equipment) to send marketing emails, and that Dragon Networks responded to
     Microsoft's false statements about Holomaxx by, *inter alia*, limiting Holomaxx's use of its servers
28   for exactly that purpose. Compl. ¶¶ 18(b) & 46.

                                            9

1 *Analogix Semiconductor, Inc.*, 2007 U.S. Dist. Lexis 39599, \*11 (N.D. Cal. 2007) (allegation that
2 customers were required to enter into license agreement stating that software could only be used
3 with its chips was sufficient to state a claim for IIC; "While Silicon Image does not identify the
4 customers by name, its allegations are sufficiently specific to place Analogix on notice of the
5 contractual relationship at issue").[12]

6     Of course, because Holomaxx is not required to *allege* a specific contract, it is also not required
7 to allege that Microsoft *knew* of any specific contract; accordingly, Microsoft's sole precedent for
8 this position is inapposite.[13] *Maxner Co., Ltd. v. Costco Wholesale Corp.*, 2004 U.S. App. Lexis
9 14298, \*3 (9th Cir. 2004) (where defendant allegedly rejected products that plaintiff allegedly
10 manufactured for defendant's supplier, case was nonsuited because plaintiff did not prove that
11 defendant had ever heard *of plaintiff*) (unpublished; *see* 9th Cir. Rule 36-3(c) (prohibiting citation of
12 unpublished orders before January 1, 2007). Unlike *Maxner*, the instant case involves California
13 law, and is still at the pleading stage – and, of course, the Complaint alleges that Microsoft knew
14 Holomaxx. *E.g.,* Compl. ¶ 37.

15     Finally, as noted above, even Microsoft's own caselaw does not support the position that
16 Holomaxx must allege specific intent; instead, Holomaxx need only allege that Microsoft knew the
17 interference was certain or substantially certain to occur as a result of its conduct. *Quelimane Co.*
18 *v. Stewart Title Guar Co.,* 19 Cal. 4th 26, 56 (1998) (intentional interference with contract); *Korea*
19 *Supply,* 29 Cal. 4th at 1156-57, 1162 (rejecting specific intent requirement; intentional interference
20 with prospective business advantage). That knowledge may be inferred from an allegation that
21 Microsoft's *conduct* was substantially certain to lead to interference. *See Bank of N.Y. v. Fremont*
22 *Gen. Corp.*, 523 F.3d 902, 911 (9th Cir. 2008) ("the jury may 'infer culpable intent from *conduct*
23 "substantially certain" to interfere with the contract.'") (citation omitted). Holomaxx has so

24

25 [12] *e360Insight, Acculmage* and *Westside Center* all involved causes of action for intentional
interference with prospective business advantage (and not IIC). MTD 19:3-22, 21:7-23. These
26 cases are therefore discussed in Part II.C(1)(b), below.

27 [13] Holomaxx alleged that Microsoft generally knew of its contracts, Compl. ¶¶ 37, 79-80; *see* ¶ 92.
Holomaxx notes that it would be unreasonable to require full disclosure of its contracts and clients,
28 in view of its implicit allegations that Microsoft has engaged in anticompetitive behavior.

     OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1   alleged. Compl. ¶¶ 31-33, 37.

2            **b. Intentional Interference with Prospective Business Advantage ("IIPBA")**

3       The Complaint also states a cause of action for intentional interference with prospective

4   business advantage. *Della Penna* states the elements as follows: "(1) an economic relationship

5   between the plaintiff and another, 'containing a probable future economic benefit or advantage to

6   plaintiff,' (2) defendant's knowledge of the existence of the relationship, (3) that defendant

7   'intentionally engaged in [wrongful] acts or conduct designed to interfere with or disrupt' the

8   relationship, (4) actual disruption, and (5) damage to the plaintiff as a result of defendant's acts."

9   *Della Penna v. Toyota Motor Sales, USA, Inc.,* 11 Cal. 4th 376, 380 n.1 (1995). In addition to the

10   elements for IIC (which Holomaxx has properly alleged, *see* Part II.C(1)(a)), Microsoft therefore

11   argues that Holomaxx must plead some wrongful conduct by the defendant.[14] As set forth below,

12   Holomaxx has done so.

13       Wrongfulness does not mean that defendant's conduct must be unlawful; it is sufficient that the

14   conduct alleged be "outside the realm of legitimate business transactions," and "[w]rongfulness

15   may lie in the method used or by virtue of an improper motive." *625 3rd St. Assocs., LP v. Alliant*

16   *Cred. Union,* 633 F. Supp. 2d 1040, 1044-45, 1049 (N.D. Cal. 2009) (plaintiff lessor stated a claim

17   where it alleged only that the defendant had malicious intent to weaken plaintiff's lessee to the

18   point of forcing it into liquidation) (quoting *Della Penna,* 11 Cal. 4th at 380 n.1).

19       Relying on the incorrect notion that Holomaxx must allege some unlawful conduct, Microsoft

20   falls back on its purported CDA protection to establish that its conduct was not wrongful. MTD

21   20:20-24 (stating boldly that "Microsoft's actions were expressly authorized and encouraged by

22   Congress"). Even if Microsoft were applying the correct legal standard, its argument fails because

23   Microsoft's conduct is not immune under the CDA. *See* Part II.B. Holomaxx has alleged that

24   Microsoft's conduct violated state and federal communications statutes, as well as Civil Code

25

26   [14] A claim for IIPBA also substitutes "economic relationship containing a probable future
economic benefit," for "existing contract." As set forth in Part II.C(1)(a), Holomaxx has pleaded

27   this element. *See also* Compl. ¶¶ 13-14). Duty is not an element of an intentional interference
action. *See Quelimane,* 19 Cal. 4th at 56-58 (plaintiff who failed to allege duty stated a claim for

28   intentional interference).

1  Section 43 (re defamation), *see* Part II.C; furthermore, where (as here) the plaintiff has alleged both

2  unfair competition law ("UCL") violations and an IIPBA claim, the UCL violations will serve as

3  the independently wrongful act for the IIPBA claim. *CRST Van Expedited, Inc. v. Werner*

4  *Enterprises, Inc.*, 479 F.3d 1099, 1110 (9th Cir. 2006) (also ruling that alleged IIC violation served

5  as UCL violation). Thus, Holomaxx has properly pleaded wrongful conduct. Compl. ¶¶ 120-123.

6      Microsoft cites *AccuImage Diagnostics Corp. v. Terarecon, Inc.* and *Westside Center*

7  *Associates v. Safeway Stores 23, Inc.* without explanation, possibly for the mistaken notion that

8  Holomaxx must name the parties to its contracts. However, just as a plaintiff need not allege

9  specific parties in an IIC claim (*see* Part II.C(1)(a)), it need not name them in an IIPBA claim; both

10 *AccuImage* and *Westside* are inapposite. *Westside Center Assocs. v. Safeway Stores 23, Inc.*, 42

11 Cal. App. 4th 507, 510 (1996) (parties presented evidence pretrial, in IIPBA case; where shopping

12 center owner alleged that defendant's abandonment had forced it to sell at a loss, court rejected

13 approach to damages approach based on class of all possible buyers, because "it allows recovery no

14 matter how speculative the plaintiff's expectancy"); *see Sebastian Int'l, Inc. v. Russolillo*, 128 F.

15 Supp. 2d 630, 637 (C.D. Cal. 2000) (rejecting *Westside*'s reasoning on motion to dismiss, because

16 "*Westside* had proceeded past the pleading stage, and therefore its reasoning is inapposite");

17 *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 946, 956 (N.D. Cal. 2003)

18 (where only alleged "business relationships" were customers for plaintiff's software product, court

19 dismissed IIPBA claim because the allegations were so vague that they failed to indicate even the

20 *nature* of the contract at issue). Here, unlike *AccuImage,* Holomaxx has alleged the nature of its

21 business relationships: *i.e.,* contracts with commercial clients who pay it to send emails on their

22 behalf, Compl. ¶¶13-14. It follows that, unlike *Westside,* Holomaxx's prospective business

23 advantage was not merely speculative.

24     Perhaps recognizing that Holomaxx has, indeed, stated a claim for both IIC and IIBPA,

25 Microsoft relies heavily on *e360Insight* for the proposition that such torts are barred wholesale by

26 the CDA; however, CDA does not provide blanket immunity for business torts. *See* Part II.B.

27 Furthermore, this lone Illinois District Court case is distinguishable on its facts, its law, and its

28 procedural posture. *See e360Insight,* 546 F. Supp. at 607 (Illinois law requires *plaintiff* to plead

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1  intentional *and unjustified* interference in action for tortious interference with prospective business

2  advantage; judgment on the pleadings, with court reviewing evidence); *see also Adelman-Reyes v.*

3  *St. Xavier Univ.*, 500 F.3d 662, 667 (7th Cir. 2007) (Illinois requires plaintiff to plead lack of

4  justification); *Bank Comp. Network Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 110 Ill. App. 3d

5  492 (1982) (Illinois requires plaintiff to plead "purpose or motive to interfere); *Sebastian Int'l*, 128

6  F. Supp. 2d at 630 (re reasoning appropriate to 12(b)(6)); and *Online Policy Group v. Diebold, Inc.*,

7  337 F. Supp. 2d 1195, 1205 (N.D. Cal. 2004) (under California law, justification is affirmative

8  defense to IIC claim); *Korea Supply*, 29 Cal. 4th at 1134 (California does not require specific intent;

9  distinguishing *Bank Comp. Network*).

10  *E360Insight* is further distinguishable because the plaintiff in that case based its damages not on

11  client relationships (as Holomaxx has done), but instead on potential sales to users who had not

12  received its emails. *e360Insight*, 546 F. Supp. at 609 n.3. The Court therefore found that

13  *e360Insight* had failed to allege damages, stating:

14  Usually the prospective economic advantage is far more concrete than selling to [the] public
which consists of people on a very, very long opt-in list. It is illegal to interfere with a fair
15  number of prospects, but usually they are a class of easily identified individuals and usually
the interference is that of the defendant interacting directly with the prospective buyers.

16  *Id.* Here, unlike *e360Insight*, Holomaxx alleged disruption of contracts with easily identified

17  clients, who pay it a per-email fee. Compl. ¶ 13-14; *see also* Part II.B(2), distinguishing

18  *e360Insight* with respect to bad faith.

19  As set forth above, Holomaxx has properly alleged claims for both IIC and IIBPA.

20  **2.  18 U.S.C. §§ 2510 *et seq.* (The Federal Wiretap Act)**

21  Holomaxx has properly pleaded the elements of a *prima facie* civil case under the federal

22  Wiretap Act ("FWA"), *i.e.*: (i) the intentional interception of a wire, oral, or electronic

23  communication (through the use of a device), or (ii) the intentional use or disclosure (or attempted

24  use or disclosure) of the contents of such communication, knowing that it was obtained in violation

25  of the FWA. 18 U.S.C. § 2511; *see* Compl. ¶¶ 31, 33, 39, 41, 59-60. Microsoft wrongly argues

26  that: (i) Holomaxx must allege that the emails were intercepted contemporaneously, *i.e.*, "in

27  transit", (ii) Microsoft falls within both the "operator exception" and the "consent exception"; and

28  (iii) Holomaxx's claims are conclusory. These arguments all fail, as set forth below.

1                 **a. Holomaxx has properly alleged interception.**[15]

2      Holomaxx has properly alleged interception. Microsoft mistakenly argues that the Complaint

3 fails to state a claim under the FWA because Holomaxx has not alleged that its emails were

4 blocked "in transit." First, the FWA does not contain any "in transit" requirement, and "judges

5 ought not add to statutory definitions." *United States v. Szymuszkiewicz (Szymuszkiewicz II)*, 622

6 F.3d 701, 706 (7th Cir. 2010) (rejecting contemporaneity requirement because "there is no timing

7 requirement in the Wiretap Act"). Furthermore, Microsoft's "understanding of 'interception' as

8 'catching a thing in flight' is sensible enough for football, but for email there is no single 'thing'

9 that flies straight from sender to recipient." *Szymuszkiewicz II*, 622 F.3d at 705 (creation of rule

10 forwarding emails from server to defendant's inbox was interception for purposes of FWA).

11      This is because "'[t]echnology has, to some extent, overtaken language. Traveling the internet,

12 electronic communications are often – perhaps constantly – both "in transit" and "in storage"

13 simultaneously, a linguistic but not a technological paradox.'" *In re Pharmatrak*, 329 F.3d 9, 21-

14 22 (1st Cir. 2003) (interception would be justified even under "contemporaneous" standard, where

15 program "automatically duplicated part of the communication between a user and a pharmaceutical

16 client and sent this information to a third party) (citation omitted); *see United States v. Councilman*,

17 418 F.3d 67, 79 (1st Cir. 2005) (en banc) (upholding FWA indictment where defendant email

18 provider copied incoming emails from server for his own use, because "the term 'electronic

19 communication' includes transient electronic storage that is intrinsic to the communication

20 process"); *see also Garcia v. Haskett,* 2006 U.S. Dist. Lexis 46303, *9-10 (N.D. Cal. 2006)

21 (distinguishing between permanent and temporary storage for purposes of FWA; citing

22 *Councilman* with approval) *and Potter v. Havlicek,* 2007 U.S. Dist. Lexis 10677, *7 (W.D. Ohio,

23 2007) (rejecting the distinction between "in transit" and "in storage").

24      Again, Microsoft's cases are not on point. The emails in *Cardinal* and *Bradley* were not

---

25 [15] Microsoft complains that the word "intercept" is conclusory, although the word validly describes

26 Microsoft's conduct; moreover, Holomaxx alleges *passim* that Microsoft "blocked" its emails, and
provides dates, descriptions, and IP addresses, *e.g.,* Compl. ¶¶ 31-33, 50-51. Because Holomaxx

27 cannot know *how* Microsoft intercepted its emails, Holomaxx is not required to allege those facts.
*See* Part II.A. Microsoft also wrongly argues that Holomaxx does not allege which FWA

28 provisions were violated, *but see* Compl. ¶ 60 (alleging violation of Section 2511).

1  "intercepted"; instead, they were already in the recipient's inbox. *Cardinal Health 414, Inc. v.*

2  *Adams,* 582 F. Supp. 2d 967, 970-71 (M.D. Tenn. 2008); *Bradley v. Google, Inc.*, 2006 U.S. Dist.

3  Lexis 94455, *3-4 (N.D. Cal. 2006). Microsoft relies heavily on the broad language of *Konop v.*

4  *Hawaiian Airlines, Inc.*; however, *Konop* does not concern email blocking at all (or even *email*),

5  and is therefore inapposite. *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 874 (9th Cir. 2002)

6  (defendant allegedly used someone else's login information to access plaintiff's secure website;

7  "the intersection of these two statutes 'is a complex, often convoluted, area of the law," "ill-suited

8  to address modern forms of communication like [a] secure website").[16]

9  The complaint is properly pleaded in any event, because Holomaxx alleges that its emails were

10  intercepted in storage and/or in transit, *e.g.,* Compl. ¶¶ 31, 33, 39, 41, 59-60; as set forth in Part

11  II.A, this is proper because: (i) Holomaxx is not in a position to know the facts; and (ii) alternate

12  pleading is permitted. Holomaxx has properly alleged that Microsoft intercepted, used and

13  disclosed its emails, and has therefore stated a claim under the FWA.

14  **b. Holomaxx is not required to negative any statutory exceptions – and Section**

15  **2511(2)(a)(i) (the "operator exception) does not apply here.**

16  As set forth in Part II.A, Holomaxx is not required to negative any exceptions to the statute.[17]

17  Even if Holomaxx were required to negative such exceptions, Microsoft's argument that Section

18

19  [16] *Konop* offers scant review of modern communications technology; more importantly, *Konop* relies on an incorrect definition of "intercept." Specifically, the Court states that its "conclusion is

20  consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival,'" 302 F.3d at 878 (quoting *Webster's Ninth New Collegiate Dictionary*

21  ("*Webster's*"), *see* Syverson Declaration, Exh. 1); however, *Webster's* actually defines "intercept" as "to stop, seize, or interrupt in progress or course *or* before arrival." Microsoft did allegedly

22  "stop" Holomaxx's emails "before arrival" in users' inboxes; a conclusion that Microsoft "intercepted" those emails is therefore consistent with *Webster's,* as intended by *Konop.* Because

23  the misquoted version may suggest a different result, cases relying on *Konop*'s reasoning must also fail. *E.g., Theofel v. Farey-Jones,* 359 F.3d 1066, 1070 (9th Cir. 2004); *Crowley v. Cybersource*

24  *Corp.,* 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001); *Bradley,* 2006 U.S. Dist. Lexis 94455, *14-15. The Court may take notice of dictionary definitions. FRE Rule 201; *Wilshire Westwood*

25  *Assocs. v. ARCO,* 881 F.2d 801 (9th Cir. 1989).

26  [17] Holomaxx also has not pleaded any facts that would entitle Microsoft to Section 2511(2)(a) immunity; among other things, Holomaxx never alleged that Microsoft was protect[ing] itself and

27  its customers from spam." MTD 12:13-15 (no citation). Holomaxx alleged only Microsoft's purported motivation for blocking its emails, *e.g.,* Compl. ¶ 34, and its lawful emails posed no

28  danger to Microsoft.

OPPOSITION TO MICROSOFT
                                          CORPORATION'S MOTION TO DISMISS

1    2511(2)(a)(i) provides immunity to service providers still fails.  (MTD 12:3-9.)

2        First, by its own terms, Section 2511(2)(a)(i) applies only to "an operator of a switchboard, an

3    officer, employee, or agent" of a provider); the only reference to providers in this section is an

4    explicit exception to the exception, which does not apply here:  *i.e.,* "a provider of wire

5    communication service to the public shall not utilize service observing or random monitoring

6    except for mechanical or service quality control checks."

7        Microsoft's authority is not on point.  *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.,* 2007 U.S.

8    Dist. Lexis 91644, *4-6 (W.D. Pa. 2007) (defendant purchaser of assets in bankruptcy, including

9    employee email addresses, was entitled as successor-in-interest to read emails because it stood in

10   shoes of employer, and monitoring was necessary to ensure email messages were answered

11   promptly); *see Andersen Consulting LLP v. UOP,* 991 F. Supp. 1041 (N.D. Ill. 1998) (employers

12   are not generally liable under the ECPA, because they do not provide services to the public).[18]

13       Unlike employers, ISP's like Microsoft can be liable under the ECPA[19] – and unlike

14   employees, subscribers enjoy "a reasonable expectation of privacy in the contents of emails 'that

15   are stored with, or sent or received through, a commercial ISP'".  *United States v. Warshak,* 2010

16   U.S. App. Lexis 25415, *43 (6th Cir. 2010) (citation omitted).  *Howard v. AOL* is not a wiretap case

17   at all (it involves pricing and privacy issues), and as usual Microsoft misstates the court's finding;

18   the court did not state that AOL is entitled to control the traffic it would accept, but only that AOL

19   was able to reformat and edit user emails.  *Howard v. AOL,* 208 F.3d 741, 753 (9th Cir. 2000).

20       The operator exception does not apply here; Holomaxx is not required to plead the exception,

21   and also has not alleged (and cannot allege) any facts to the contrary.

22           **c.  Holomaxx is not required to negative the consent exception (and has not alleged**

23              **consent).**

24       Microsoft next argues, based solely on an exhibit not referenced in the Complaint, that users

25   consented to its interception of Holomaxx's emails.  Microsoft's argument fails, for all of the

26   _____

[18] *Ideal* is further inapposite in that Microsoft does not merely monitor, but allegedly *blocks*
27   Holomaxx's emails – *i.e.,* it keeps Holomaxx's emails from ever reaching their intended recipients.

28   [19] The ECPA includes both the Federal Wiretap Act and the Stored Communications Act.

1  following reasons: (i) consent is an exception to the FWA, and Holomaxx is therefore not required
2  to negative it in the Complaint, *Pharmatrak,* 329 F.3d at 19 ("for the consent exception under the
3  ECPA in civil cases, [] it makes more sense to place the burden of showing consent on the party
4  seeking the benefit of the exception, and so hold"); *see* Part II.A; (ii) the Exhibit is inadmissible
5  (*see* Holomaxx's Opposition to Request for Judicial Notice ("Opp. To RJN"); (iii) the Exhibit does
6  not "prove" consent, *id.*; *e.g., Specht v. Netscape Comms. Corp.,* 306 F.3d 17, 28 (2nd Cir. 2002) (re
7  formation defects in online "clickwrap" agreements); and (iv) introduction of the Exhibit would
8  raise factual issues (including issues of contract formation and interpretation) that are inappropriate
9  on a Rule 12(b)(6) motion, Opp. to RJN; *Dorr v. Yahoo! Inc.,* 2007 U.S. Dist. Lexis 59126, *5
10  (N.D. Cal. 2007); *Pollstar v. Gigmania, Ltd.,* 170 F. Supp. 2d 974, 981-82 (E.D. Cal. 2000). The
11  Exhibit is also defective in that: (i) Microsoft does not allege that it was effective on or before date
12  of the conduct alleged in the Complaint; and (ii) the Roundy Declaration alleges only that the
13  Exhibit is "for the use of Hotmail.com services," Roundy Decl. ¶ 2, although the Complaint alleges
14  that Microsoft has also blocked Holomaxx's email to users at msn.com and live.com. *See*
15  Complaint ¶ 20.

16  In addition, the "consent exception" does not apply where such communication is intercepted
17  for the purpose of committing any criminal or tortious act . . . or *for the purpose of committing any*
18  *other injurious act.* 18 U.S.C. § 2511(2)(d) (emphasis added); *see Boddie v. ABC*, 731 F.2d 333,
19  337-38 (6th Cir. 1984) (where defendants broadcast secret recordings as part of an investigative
20  report, allegedly in order to cause plaintiff "insult and injury," and defendants contended they had
21  acted in good faith to preserve evidence of plaintiff's alleged illegal activities, the dispute raised
22  questions of fact for the jury). Here, as in *Boddie*, Holomaxx has alleged that Microsoft intended to
23  injure its business, Compl. ¶¶ 80-81, 91-92; to the extent that Microsoft disputes the allegation, the
24  dispute raises questions of fact which cannot be decided on a motion to dismiss. *Id.*

25  **3. 18 U.S.C. §§ 2701 et seq. (The Stored Communications Act)**

26  The SCA provides a civil remedy for anyone "who intentionally accesses without authorization
27  a facility through which an electronic communication service is provided; or (2) intentionally
28  exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized

OPPOSITION TO MICROSOFT
                                        CORPORATION'S MOTION TO DISMISS

1  access to a wire or electronic communication while it is in electronic storage in such system . . ." 18

2  U.S.C. Sections 2701(a) & 2707(a). Holomaxx has properly alleged a claim under the SCA.

3  Compl. ¶¶ 11, 41, 66.

4  Microsoft argues only that Holomaxx failed to negative its provider authorization and consent

5  exceptions; these arguments fail here, just as they failed with respect to the FWA. As set forth

6  above, Holomaxx is not required to negative an exception – and again, Defendant's cases are not

7  on point. *Fraser* and *Bohach* both involved employers, who are not generally liable under the

8  ECPA. *Andersen,* 991 F. Supp. at 1041; *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 111 (3d

9  Cir. 2003); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1233 (D. Nev. 1996). In *Crowley,* unlike

10  this case, the plaintiff alleged that he sent his information directly to the defendant. *Crowley,* 166 F.

11  Supp. 2d at 1263 (N.D. Cal. 2001) (MTD 16:16-22) (*citing State-Wide Photocopy Corp. v. Tokai*

12  *Fin. Servs., Inc.,* 909 F. Supp. 137, 139 (S.D.N.Y. 1995) (same)); *see United States v.*

13  *Szymuszkiewicz*, 2009 U.S. Dist. Lexis 60755, *18 (E.D. Wisc.) (*aff'd, Szymuszkiewicz II,* 622 F.3d

14  at 701) (distinguishing *Crowley* because it "concerned [a] defendant who received information

15  directed by the sender *to [it];* the defendants [did not] take any action to re-direct to themselves a

16  communication addressed *to another*") (footnote omitted; emphasis in original). And in *Toys R Us,*

17  unlike this action, the plaintiffs actually alleged consent in the complaint.[20] *In re Toys R Us,* U.S.

18  Dist. Lexis 16947 (N.D. Cal. 2001) (plaintiffs alleged websites had consented to allow defendant

19  data collector to collect information from visitors).

20  Microsoft's arguments fail, and Holomaxx has properly alleged a claim under the SCA.

21  **4. 18 U.S.C. § 1030 (Computer Fraud & Abuse Act)**

22  18 U.S.C. Section 1030 (the "CFAA") provides a civil remedy where, *inter alia,* defendant

23  intentionally accesses a computer without authorization or exceeds authorized access, and thereby

24  obtains information from a computer used in interstate communication. § 1030(a)(2). Holomaxx

25

26  [20] Microsoft misquotes *Toys R Us,* which properly identifies Section 2701(c)(2) as an "exception,"

27  not an "exemption." MTD 16:27-17:2.

28  ///

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1   has properly stated a claim under the CFAA.[21]  Compl. ¶¶ 11, 41, 72-73.

2       Microsoft apparently believes that an ISP can do whatever it likes with the confidential

3   information stored on its servers – no matter how unlawful or egregious – yet its conduct can never

4   constitute unauthorized access under the CFAA.[22]  MTD 17:13-16.  Microsoft's position is

5   shamefully incorrect.  Congress defined "exceeds authorized access" as accessing "a computer *with*

6   authorization and [using] such access to obtain . . . information in the computer that the accesser is

7   not entitled so to obtain . . . ." 18 U.S.C. § 1030(e)(6) (emphasis added); *cf. United States v. Morris*,

8   928 F.2d 504, 510 (2d Cir. 1991) (holding access unauthorized where it was not "in any way

9   related to [the system's] intended function").  And as stated by this Court: "The . . . CFAA . . . is

10  applied broadly to 'punish those who illegally use computers for commercial advantage.'" *eBay,*

11  *Inc. v. Digital Point Solutions, Inc.,* 608 F. Supp. 2d 1156 (N.D. Cal. 2009.  The CFAA therefore

12  offers a remedy to "any person" who suffers loss due to violations of the statute, not just the owner

13  of the computer on which the emails were stored. *Theofel,* 359 F.3d at 1066 (defendants liable

14  where ISP's provided emails in response to their fraudulent subpoena).

15      Users have a "reasonable expectation of privacy" in information held on an ISP's servers,

16  (*Warshak,* 2010 U.S. App. Lexis at 25415); ISP's therefore are not entitled to obtain such

17  information. *See Theofel,* 359 F.3d at 1071 (finding subpoena not limited to litigation invalid).

18  However, much of Microsoft's authority concerns employers, not ISP's – and is therefore

19  irrelevant. *Cont'l Grp. v. Kw Prop. Mgmt, LLC,* 622 F. Supp. 2d 1357, 1372 (S.D. Fla. 2009)

20  (employee stole trade secrets for her new employer; court stated that "an *employer* . . . clearly has a

21  right to control and define authorization to access its own computer systems") (emphasis added)

22  (mis-cited by Microsoft as "an *entity* 'clearly has a right . . .'", MTD 17:20-22); *Lewis-Burke*

23

---

24  [21] Microsoft argues that the CFAA was intended to prosecute hackers, and that it is therefore "more appropriately applied to the emailing activities of Holomaxx." MTD 17:n.4. Tellingly, Microsoft

25  analogizes to *Hotmail Corp. v. Van$ Money Pie, Inc.,* 47 U.S.P.Q.2d 1020 (N.D. Cal. 1998). Microsoft is being willfully obtuse:  Holomaxx is a legitimate business, providing a valuable

26  commercial service; and *Hotmail* (where the defendant not only sent spam, but went so far as to falsely use Hotmail's domain name and logo on pornography ads) isn't at all analogous.

27  [22] Microsoft alleges that Holomaxx's allegations are conclusory; however, as set forth in Part II.A,

28  Holomaxx is not required to allege facts known only by Microsoft.

OPPOSITION TO MICROSOFT
                                CORPORATION'S MOTION TO DISMISS

1 *Assocs. LLC v. Widder,* 2010 U.S. Dist. Lexis 76180 (D.D.C. 2010) (employee defendant);

2 *Secureinfo Corp. v. Telos Corp.,* 387 F. Supp. 2d 593 (E.D.Va. 2005) (employee granted access to

3 defendant). Moreover, the court in *Cont'l* was speaking about the rights of the *plaintiff* in a CFAA

4 action, and not the defendant. *Id.; see eBay, Inc.,* 100 F. Supp. 1058 at 1070.

5     As set forth above, Holomaxx has properly alleged a claim under the CFAA.

6 **5. California Penal Code §§ 630 *et seq.* (Wiretapping/Eavesdropping)**

7     Holomaxx has properly stated causes of action under both Penal Codes Section 631 and 632.

8 Microsoft wrongly argues that: (i) like the FWA, the communication must be intercepted in transit;

9 and (ii) Section 630 *et seq.* is preempted by the ECPA. As set forth in Part II.C(2)(a), Holomaxx

10 has properly alleged interception. And as set forth below, Section 630 *et seq.* is not preempted.

11     California Penal Code Section 630 *et seq.* is clearly not preempted by federal law. This Court

12 has considered civil claims under Section 630 *et seq.* in several cases, including at least one case

13 cited *by Microsoft. Bradley,* 2006 U.S. Dist. Lexis 94455, *14-15 (N.D. Cal. 2006) (MTD 13:5)

14 (reviewing § 630 claim); *Garcia v. Haskett,* 2006 U.S. Dist. Lexis 46303 (N.D. Cal. 2006) (same);

15 *see also Bailey v. Household Finance Corp.*, 2010 U.S. Dist. Lexis 117866, *9 (S.D. Cal. 2010)

16 (same); *cf. Cardinal,* 582 F. Supp. 2d at 967 (state wiretap act not preempted).

17 **6. California Civil Code §§ 43 et seq. (Defamation) and False Light**

18     Microsoft's legal arguments on these claims are so weak that it is forced to rewrite the

19 Complaint, and then refute its own fictive allegations. Microsoft's arguments all concern the

20 nature of its statement to Dragon Networks.[23] As set forth below, these arguments all fail for legal

21 reasons; they also fail because *they aren't based on the statement actually alleged in the*

22 *Complaint.* The "gist," or "sting," of Microsoft's statement is that Holomaxx is a spammer; this

23 statement is actionable because: (i) it is defamatory *per se*; and (ii) it implies a factual assertion that

24 is provably false.

25 ///

26 ///

---

27 [23] Microsoft appears to conflate a statement's defamatory nature, with its falsity. As set forth
28 above, Holomaxx has alleged that the statement is both libelous and (though not required) false.

**a.  The "gist" or "sting" of Microsoft's statement is that Holomaxx is a spammer; it is therefore irrelevant whether Microsoft's other statements are true or false.**

The gist of Microsoft's statement is that Holomaxx is a "spammer."  Microsoft argues (without any legal support) that if some other part of its alleged statement is true, then it cannot be liable.  In support of this "argument," Microsoft repeatedly cites the "disjunctive 'or'" in Holomaxx's purported allegation "that its IP addresses were filtered 'for policy reasons' *or for spamming.*"  MTD 25:6-7 (emphasis in original); 1:16; 23:7-8; 24:1-2; 24:26-27 (n.5); *see* 25:9.  However, Microsoft omits several key words from the Complaint; Holomaxx *actually* alleged that Microsoft "informed Dragon Networks [that it had blocked all of Dragon Networks' IP addresses] because certain of HOLOMAXX's [IP] Addresses had been rejected "for policy reasons," ***and* were blocked *manually* "or for spamming."  Compl. ¶ 45 (emphasis added).[24]

Even if Microsoft had correctly quoted the alleged statement, its argument fails because only "the gist or sting of the alleged defamatory statements [] must be false."  *Weller v. ABC,* 232 Cal. App. 3d 991, 1009 n.17 (1991).  As noted by the Court in *Milkovich v. Lorain Journal Co.:*

> [T]he issue of falsity relates to the *defamatory* facts implied by a statement.  For instance, the statement, "I think Jones lied," may be provable as false on two levels.  First, that the speaker really did not think Jones had lied but said it anyway, and second that Jones really had not lied. . . . [T]he second level of falsity [] would ordinarily serve as the basis for a defamation action . . . .

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 n.7 (1990) (defendant could be liable where alleged statement "impl[ied] an assertion that [plaintiff] perjured himself") (emphasis in original); *see also MacLeod v. Tribune Publ. Co.,* 52 Cal. 2d 536, 544-45 (1959) (where defendant allegedly stated that People's World, a "'Communist-line paper,' had printed a list of recommended candidates which included [plaintiff's] name," thereby "imputing that [he] was a 'communist sympathizer,'" statement was defamatory whether or not People's World was a communist paper, and even if People's World had, in fact, printed the list, because "[t]he sting of the alleged libel is

---

[24] Holomaxx did *not* allege that any part of Microsoft's statement is true, *see* MTD 24:3-8, 25:6-11 (*citing* Compl. ¶¶ 31, 33-34, 45, 72, 81 & 92).  The cited paragraphs generally allege Microsoft's conduct, as well as its (complete) statement and its *stated* reasons for the block.  Of course Microsoft's alleged admission that its filters are *automatic* (*e.g.,* Compl. ¶ 10) is fatal to its argument – and likely why Microsoft repeatedly omits "and blocked manually" when quoting the defamatory statement.  As set forth above, Microsoft's argument fails on its merits.

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1 that the People's World, a communist-line paper, endorsed and recommended plaintiff for election
2 and that therefore he was a communist sympathizer or fellow traveler). This case parallels
3 *Milkovich* and *MacLeod*: The "sting" of Microsoft's defamatory statement is that Holomaxx sends
4 spam, and it is irrelevant whether any other parts of the statement are true or false.

5        **b. Microsoft's statement is defamatory *per se*, because it charges Holomaxx with a**
6        **crime and tends to injure Holomaxx in its business.[25]**

7        Microsoft's statements are libelous *per se*. The test for libel *per se* is whether a defamatory
8 meaning appears from the language itself without the necessity of explanatory matter. *MacLeod,*
9 52 Cal. 2d at 551. Thus, statements like Microsoft's that charge plaintiff with a crime are
10 defamatory *per se. Id.* at 549; Cal. Civ. Code § 46(1); *see Albertini v. Schaefer,* 97 Cal. App. 3d
11 822, 829 (1979) (statements that plaintiff was a "crook" and a "thief," and that he ran a "scam
12 corporation," were all defamatory *per se*); *Edwards v. Hall,* 234 Cal. App. 3d 886, 903 (1991)
13 (statement that plaintiff was an "extortionist" was actionable where surrounding statements
14 reinforced the impression that defendant's charge was serious). Statements that tend directly to
15 injure a party in its business are also libelous *per se.* Cal. Civ. Code § 46(3); *see Slaughter v.*
16 *Friedman,* 32 Cal. 3d 149, 153-154 (1982) (statement imputing that dentist charged excessive fees
17 or performed excessive work was libel *per se*).

18        Microsoft disingenuously argues that Holomaxx has not alleged any criminal accusation,
19 ignoring both (i) the Can-Spam Act (15 U.S.C. § 7703 & 18 U.S.C. § 1037; *see MySpace, Inc. v.*
20 *Globe.com, Inc.*, 2007 U.S. Dist. Lexis 44143 (C.D. Cal. 2007) ("CAN-SPAM . . . is primarily a
21 criminal statute")); and (ii) Holomaxx's allegation that Microsoft's statements are offensive
22 because "sending spam is disruptive, annoying, *and criminal*," Compl. ¶ 47 (emphasis in original).
23 As in *Milkovich, MacLeod, Edwards* and *Albertini*, Microsoft's statement charged Holomaxx with
24 criminal conduct; as in *Slaughter,* the statement tends directly to injure Holomaxx in its business.

25

26 [25] Microsoft's only separate argument with respect to false light is that where such claims are
premised on allegedly defamatory statements, they are subsumed in an action for defamation.
27 MTD 25:25-28 n.6. Microsoft therefore apparently concedes that Holomaxx has properly alleged
that its statements to Dragon Networks were defamatory. To the extent that false light requires an
28 allegation of non-defamatory information, Holomaxx requests leave to amend.

       OPPOSITION TO MICROSOFT
       CORPORATION'S MOTION TO DISMISS

1   *E.g.,* Compl. ¶ 93. Microsoft's statement is therefore libelous *per se*.

2           **c.  Microsoft's statement is actionable because a reasonable factfinder could conclude**

3               **it implies a provably false factual assertion: *i.e.,* that Holomaxx sends unsolicited**

4               **"spam" email in violation of the Can-Spam Act.**

5       Microsoft's statement is actionable because a reasonable factfinder could conclude it implies a

6   provably false factual assertion: *i.e.,* that Holomaxx sends unsolicited "spam" email in violation of

7   the Can-Spam Act. Microsoft argues that it cannot be liable because it was merely expressing an

8   opinion when it accused Holomaxx of "spamming"; it is not clear what authority Microsoft claims

9   for this position[26] – and, in fact, opinions are *not* granted any special protection. *Milkovich,* 497

10  U.S. at 20 (finding potential liability where statement was "sufficiently factual to be susceptible of

11  being proved true or false"). Instead, the dispositive question is: "Could a reasonable trier of fact

12  conclude the published statements imply a provably false factual assertion?" *Edwards v. Hall,* 234

13  Cal. App. 3d 886, 903 (1991) (calling plaintiff "extortionist"); *accord Unelko v. Rooney,* 912 F.2d

14  1049, 1053 (9th Cir. 1990) and *Milkovich,* 497 U.S. at 20-21 (finding that defendant had implied

15  crime of perjury, where he did not use any "loose, figurative, or hyperbolic language" that would

16  negate the impression).

17      Microsoft cherry-picks some language from two cases involving bulk emailers, intentionally

18  omitting key words (purportedly to prove that "spam" is an opinion), just as it did when quoting the

19  statement alleged in the Complaint. In fact, Microsoft's cases (and its excerpted quotations) both

20  concerned *unsolicited* emails, only reinforcing Holomaxx's point that "spam" means email that

21  criminally violates the Can-Spam Act. *Gordon v. Virtumundo,* 575 F.3d 1040, 1044 n.1 (9th Cir.

22  2009) ("'spam' . . . is typically understood to refer broadly to unsolicited e-mail messages . . .

23  typically commercial in nature"); *e360Insight,* 546 F. Supp. 2d at 607 (calling *unsolicited and bulk*

24  emails "spam or mass marketing mailings"); *see Optinrealbig.com,* 323 F. Supp. 2d at 1039

25  ("Spam is 'unsolicited e-mail, often of a commercial nature'") (citation omitted).

26      Here, as in *Milkovich* and *Edwards,* a reasonable factfinder could conclude that Microsoft's

27  ─────────────────

28  [26] Microsoft apparently relies in part on its magical CDA protection, MTD 24:17-19, despite acknowledging that the CDA does not extend to claims for defamation, MTD 1:25-26.

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1  statement implies a provably false factual assertion: *i.e.,* that Holomaxx sends unsolicited "spam"

2  email in violation of the Can-Spam Act. Furthermore, here, as in *Milkovich,* Microsoft did not use

3  any "loose, figurative, or hyperbolic language"; as in both cases, the context indicates that

4  Microsoft was serious in making the charge. Microsoft's statement is therefore actionable.

5  Microsoft mistakenly argues that Holomaxx must "provide factual allegations that the

6  statement [as misleadingly excerpted by Microsoft] was false." MTD 23:27-24:2. However, truth

7  is an affirmative defense to a libel action, Cal. Civ. Proc. Code §§ 460 & 461; *see Lipman v.*

8  *Brisbane Elementary Sch. Dist.,* 55 Cal. 2d 224, 233 (1961) (*superseded on other grounds*).

9  Moreover, even if the burden were on Holomaxx to plead falsity, it has done so by alleging that it

10  sends only solicited email, in compliance with the Can-Spam Act. Compl. ¶¶ 15-18.

11  Microsoft's statement is both false and defamatory, as alleged in the Complaint.

12  **7. California Business & Professions Code §§ 17200 *et seq.***

13  To state a civil cause of action under Section 17200 *et seq.*, Holomaxx must plead that

14  Microsoft engaged in unlawful, unfair, or fraudulent business acts or practices. Cal. Bus. & Prof.

15  Code § 17200. Microsoft's entire argument is based on the tautological premise that the CDA

16  "expressly declares" its conduct lawful. As set forth in Part II.B, Microsoft is not immune under

17  the CDA – and as set forth in Sections II.C(1)-(6), Microsoft's conduct was unlawful.

18  "An unlawful act is one 'forbidden by law, be it civil or criminal, federal, state, or municipal,

19  statutory, regulatory, or court-made.'" *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 674

20  (9th Cir. 2007) (citation omitted). Microsoft's conduct is unlawful because (as alleged) it violates

21  the FWA, SCA, CFAA, California Civil Code Section 43, and California Penal Code Sections 630

22  *et seq.*, and also because it constitutes intentional interference with Holomaxx's contracts and

23  prospective business advantage, *CRST Van Expedited, Inc.*, 479 F.3d at 1110 ("[plaintiff]

24  adequately alleged that [defendant] violated the UCL because [it] adequately alleged that

25  [defendant] engaged in an 'unlawful' business act or practice that allegedly harmed [plaintiff],

26  namely, intentional interference with [plaintiff's] employment contracts.").

27  Microsoft's conduct was also unfair, because it constituted anticompetitive behavior. *E.g.,*

28  Compl. ¶¶ 37, 48-51; *see Cel-Tech Comm., Inc. v. LA Cellular Tel. Co.,* 20 Cal. 4th 163, 184

24

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS

1 | (1999) (section 17200 defendant could be liable for anticompetitive behavior, though not illegal).

2 | ### III.  CONCLUSION

3 | As set forth above, the Court should deny the Motion.  If the Court grants the Motion, it should

4 | grant leave to amend.

5 |

6 | DATE: _____*1-28*_____, 2011          PICK & BOYDSTON, LLP

7 |

8 |                                      By: _____
                                          Erik S. Syverson
9 |                                          Attorneys for Plaintiff Holomaxx Technologies
                                          Corporation, a Pennsylvania S Corporation
10 |

OPPOSITION TO MICROSOFT
CORPORATION'S MOTION TO DISMISS