I. NEEL CHATTERJEE (SBN 173985)
nchatterjee@orrick.com
GABRIEL M. RAMSEY (SBN 209218)
gramsey@orrick.com
JULIO C. AVALOS (SBN 255350)
javalos@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     650-614-7400
Facsimile:     650-614-7401

Attorneys for Defendant
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLOMAXX TECHNOLOGIES, a Pennsylvania Corporation, <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, a Delaware Corporation, and RETURN PATH, INC., a Delaware Corporation, <br><br> Defendant. | Case No.  C 10-04924-JF <br><br> **DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> Date:      February 25, 2011 <br> Time:      9:00 a.m. <br> Judge:     Honorable Jeremy Fogel <br> Courtroom:  Courtroom 3, 5th Floor |

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ........................................................................................... 1

     II.   ARGUMENT ................................................................................................. 1
4
           A.    The Facts Alleged In Holomaxx's Complaint Establish That Section 230
5                Of The CDA Protects Microsoft's Email Filtering Activities ............................... 1

6                1.    Holomaxx's Objectionable, Harassing Emails Are Precisely The
                       Type Of Content That Is Subject To CDA Immunity Under CDA
7                      Sections (c)(2)(A) And (c)(2)(B) .................................................. 2

8                2.    Microsoft's Provision Of Filtering Technology Is Precisely The
                       Type Of Activity Protected Under CDA Section (c)(2)(B) ...................... 5

9                3.    Microsoft's Good Faith Is Established By Holomaxx's Complaint
                       And Microsoft's Determination That Holomaxx's Email Is
10                     Objectionable Is Legally Insufficient To Establish Anything But
                       Good Faith Filtering .................................................................... 5

11         B.    Holomaxx Fails To Sufficiently Allege The Wiretap Act ..................................... 6

12         C.    Holomaxx Fails To Sufficiently Allege The Stored Communications Act ............ 9

           D.    Holomaxx Fails To Sufficiently Allege The Computer Fraud & Abuse Act ....... 10
13
           E.    Holomaxx Fails To Sufficiently Allege Cal Penal Code 630 ............................. 11
14
           F.    Holomaxx Fails To Sufficiently Allege Intentional Interference ....................... 11
15
           G.    Holomaxx Fails To Sufficiently Allege Defamation Or False Light .................. 13
16
           H.    Holomaxx Fails To Sufficiently Allege Cal Bus Code 17200 ............................ 15

     III.  CONCLUSION ............................................................................................. 15

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**FEDERAL CASES**

4

5      *625 3rd St. Assocs., LP v. Alliant Cred. Union*,
        633 F. Supp. 2d 1040 (2009)................................................................. 13

6      *Andersen Consulting v. UOP*,
        991 F. Supp. 1041 (N.D. Ill. 1998) ....................................................... 7

7

8      *Astroworks, Inc. v. Astroexhibit, Inc.*,
        257 F. Supp. 2d 609 (S.D.N.Y. 2003).................................................... 8

9      *Barnes v. Yahoo*,
        570 F.3d 1096 (9th Cir. 2009)............................................................... 2

10

        *Bell Atl. v. Twombly*,
11      550 U.S. 544 (2006) .................................................................... 6, 13

12     *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
        757 F.2d 523 (2d Cir. 1985)................................................................. 8

13
        *Beverly v. Network Solutions, Inc.*,
14      1998 U.S. Dist. LEXIS 20453 (N.D. Cal. 1998)................................... 12

15     *Black v. Google*,
        2010 U.S. Dist. LEXIS 82905 (N.D. Cal. 2010)................................... 2

16
        *Bohach v. City of Reno*,
17      932 F. Supp. 1232 (D. Nev. 1996) ...................................................... 10

18     *Bradley v. Google*,
        2006 U.S. Dist. LEXIS 94455 (N.D. Cal. 2006)................................... 8

19
        *Bunnell v. Motion Picture Ass'n of Am.*,
20      567 F. Supp. 2d 1148 (C.D. Cal. 2007)................................................ 11

21     *Cabanas v. Gloodt Assocs.*,
        942 F. Supp. 1295 (E.D. Cal. 1996)..................................................... 12

22
        *Cedars-Sinai Med. Ctr. v.  Shalala*,
23      177 F.3d 1126 (9th Cir. 1999).............................................................. 1

24     *Crowley v. Cybersource*,
        166 F. Supp. 2d 1263 (N.D. Cal. 2001) ......................................... 8, 10

25
        *Cvent, Inc. v. Eventbrite, Inc.*,
26      2010 U.S. Dist. LEXIS 96354 (E.D. Va. 2010) ................................... 11

27     *Doe v. GTE Corp.*,
        347 F.3d 655 (7th Cir. 2003)................................................................ 2

28

# TABLE OF AUTHORITIES
(continued)

Page

*e360Insight LLC v. Comcast Corp.*,
546 F. Supp. 2d 605 (N.D. Ill. 2008) .......................................................................... 2, 3, 4, 6

*eBay, Inc. v. Bidder's Edge*,
100 F. Supp. 2d 1058 (N.D. Cal 2000) .................................................................................. 11

*In re Facebook PPC Adver. Litig.*,
2010 U.S. Dist. LEXIS 39776 (N.D. Cal. 2010)...................................................................... 9

*Fraser v. Nationwide Mut. Ins.*,
352 F.3d 107 (3rd Cir. 2003) ................................................................................................. 10

*Garcia v. Haskett*,
2006 U.S. Dist. LEXIS 46303 (N.D. Cal. 2006)...................................................................... 8

*Giordano v. Wachovia Mortg., FSB*,
2010 U.S. Dist. LEXIS 136284 (N.D. Cal. 2010).................................................................... 9

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................................................... 2

*Goddard v. Google, Inc.*,
2008 U.S. Dist. LEXIS 101890 (N.D. Cal. 2008)................................................................. 3, 4

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009)............................................................................................... 14

*Green v. America Online*,
318 F.3d 465 (3rd Cir. 2003) ................................................................................................... 4

*Greenbelt Cooperative Publishing Assn. v. Bresler*,
398 U.S. 6 (1970)................................................................................................................... 15

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
2007 U.S. Dist. LEXIS 91644 (W.D. Pa. 2007) .................................................................. 2, 8

*Jewel Cos., Inc. v. Pay Less Drug Stores Nw, Inc.*,
510 F. Supp. 1006 (N.D. Cal. 1981) ..................................................................................... 12

*Jones v. Bock*,
549 U.S. 199 (2007).................................................................................................................. 1

*Jones v. Thyssenkrupp Elevator Corp.*,
2006 U.S. Dist. LEXIS 13978 (N.D. Cal. 2006).................................................................... 13

*Kennedy Funding, Inc. v. Chapman*,
2010 U.S. Dist. LEXIS 116038 (N.D. Cal. 2010).................................................................. 15

*Kilopass Tech, Inc. v. Sidense Corp.*,
2010 U.S. Dist. LEXIS 136345 (N.D. Cal. 2010).................................................................. 13

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ................................................................................. 7

*LVRC Holdings, LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ............................................................................ 11

*Langdon v. Google, Inc. et al.*,
474 F. Supp. 2d 622 (D. Del. 2007) ................................................................ 2, 4

*Leveto v. Lapina*,
258 F.3d 156 (3rd Cir. 2001) ................................................................................ 1

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) ................................................................................................ 14

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .............................................................................................. 1

*Nat'l Numismatic Certification LLC v. eBay, Inc.*,
2008 U.S. Dist. LEXIS 109793 (M.D. Fla. 2008) ................................................ 3

*Perfect 10, Inc. v. Google, Inc.*,
2008 U.S. Dist. LEXIS 79200 (C.D. Cal. 2008) ................................................... 2

*In re Pharmatrak*,
329 F.3d 9 (1st Cir. 2003) .................................................................................... 8

*Rondberg v. McCoy*,
2009 U.S. Dist. LEXIS 86157 (S.D. Cal. 2009) ................................................. 13

*Silicon Image, Inc. v. Analogix*,
2007 U.S. Dist. LEXIS 39599 (N.D. Cal 2007) .................................................. 12

*Silicon Knights v. Crystal Dynamics, Inc.*,
983 F. Supp. 1303 (N.D. Cal. 1997) .................................................................. 13

*Smith v. TRUSTe*,
2010 U.S. Dist. LEXIS 43360 (D.N.J. 2010) ....................................................... 6

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*,
7 F.3d 1434 (9th Cir. 1993) ............................................................................... 12

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004) ........................................................................... 10

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................... 9

*Towantic Energy, L.L.C. v. General Elec. Co.*,
2004 U.S. Dist. LEXIS 15385 (N.D. Cal. 2004) .................................................. 9

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Toys R Us Priv. Litig.*,
 2001 U.S. Dist. LEXIS 16947 (N.D. Cal 2001)......................................................... 10

*In re Turnstone Sys. Sec. Litig.*,
 2003 U.S. Dist. LEXIS 26709 (N.D. Cal. 2003)......................................................... 8

*Unelko v. Rooney*,
 912 F.2d 1049 (9th Cir. 1990)......................................................... 14

*United States v. Clegg*,
 509 F.2d 605 (5th Cir. 1975)…………………………………………………………..7

*United States v. Councilman*,
 418 F.3d 67 (1st Cir. 2005 ) ......................................................... 8

*United States v. Goldstein*,
 532 F.2d 1305 (9th Cir. 1976)......................................................... 7

*United States v. Reynard*,
 473 F.3d 1008 (9th Cir. 2007)......................................................... 4

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003)......................................................... 9

*United States v. Suibin Zhang*,
 2010 U.S. Dist. LEXIS 123003 (N.D. Cal. 2010)......................................................... 11

*United States v. Szymuszkiewicz*,
 622 F.3d 701 (7th Cir. 2010)......................................................... 8

*United States v. Warshak*,
 2010 U.S. App. LEXIS 25415 (6th Cir. 2010)......................................................... 7

*ZL Techs., Inc. v. Gartner, Inc.*,
 709 F. Supp. 2d 789 (N.D. Cal. 2010) ......................................................... 15

*Zango v. Kaspersky Lab, Inc.*,
 568 F.3d 1169 (9th Cir. 2009)......................................................... 4,5

**STATE CASES**

*Albertini v. Schaefer*,
 97 Cal. App. 3d 822 (1979)......................................................... 14

*Edwards v. Hall*,
 234 Cal. App. 3d 886 (1991)......................................................... 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 (2003) ......................................................... 12

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

**TABLE OF AUTHORITIES**
(continued)

Page

*Macleod* v. *Tribune Publishing Co., Inc.*,
  52 Cal. 2d 536 (1959) .......................................................................................... 14

*Weller* v. *American Broadcasting Co.*,
  232 Cal. App. 3d 991 (1991).............................................................................. 14

**FEDERAL STATUTES**

47 U.S.C. § 230 ......................................................................................................... 4

47 U.S.C. § 230(c)(1) ................................................................................................ 2

47 U.S.C. § 230(c)(2) ....................................................................................... 2, 3, 4

47 U.S.C. § 230(c)(2)(A) .......................................................................................... 4

47 U.S.C. § 230(c)(2)(B) ........................................................................................... 4

18 U.S.C. § 1030 *et seq.* .......................................................................................... 10

18 U.S.C. § 1030(a)(1)-(4) ...................................................................................... 10

18 U.S.C. § 1030(e)(6) ............................................................................................ 11

18 U.S.C. § 2510(15) ................................................................................................ 7

18 U.S.C. § 2511(2) .............................................................................................. 7, 8

18 U.S.C. § 2511(2)(a) .............................................................................................. 7

18 U.S.C. § 2511(2)(a)(1) ..................................................................................... 6, 7

18 U.S.C. § 2511(2)(d) .............................................................................................. 8

18 U.S.C. § 2518(10) .............................................................................................. 11

18 U.S.C. § 2701(c)(1) ............................................................................................ 10

18 U.S.C. § 2701(c)(2) ............................................................................................ 10

18 U.S.C. § 2702 ....................................................................................................... 7

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................................ 1, 2

**STATE STATUTES**

Cal. Bus. & Prof. Code 17200 *et seq.* ................................................................... 15

Cal. Penal Code 630 ................................................................................................ 11

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

Cal. Penal Code 631 ................................................................................................................... 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Congress has repeatedly made clear—through the safe harbors of the Communications Decency Act, the Wiretap Act and the Stored Communications Act—that providers of internet services have the right to protect their borders.  Holomaxx's complaint establishes that Microsoft made a subjective, good faith determination that Holomaxx's email is undesirable and should be filtered, to protect Microsoft's users and servers.  Microsoft's filtering and its alleged access to its *own* email systems constitute protected activity as a matter of law.  Nothing in Holomaxx's opposition changes this.  Holomaxx makes the unprecedented claim that Microsoft's private property—its email servers—must be made available to Holomaxx to use however it wishes.  However, the law is clear, Microsoft has no obligation to allow Holomaxx to send emails to Microsoft's users.  At least one Federal court has so held, immunizing under the CDA nearly identical email filtering.  Holomaxx is unable to overcome this clear, dispositive authority.

The facts set forth in Holomaxx's complaint establish that Microsoft is entitled to immunity under the CDA for its filtering activities.  Moreover, each of Holomaxx's causes of action independently fails as Holomaxx fails to plead essential elements, fails to plead legally sufficient facts and admits facts in its complaint that dispose of the claims that it asserts.

## II.      ARGUMENT

### A.      The Facts Alleged In Holomaxx's Complaint Establish That Section 230 Of The CDA Protects Microsoft's Email Filtering Activities.

The Communications Decency Act immunizes Microsoft's filtering activities.  Holomaxx seeks to delay the inevitable by claiming that the issue cannot be addressed on a motion to dismiss.  To the contrary, where the complaint alleges facts sufficient to rule on affirmative defenses, including immunities such as the CDA or statutory exceptions to liability, such defenses may be reached by a motion to dismiss.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007), *citing with approval Leveto v. Lapina*, 258 F.3d 156, 161 (3rd Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face."); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (qualified immunity can be raised on a motion to dismiss where its applicability is apparent from the face of the complaint); *Cedars-Sinai Med. Ctr. v.*

1    *Shalala*, 177 F.3d 1126, 1128-1129 (9th Cir. 1999) ("[A]ffirmative defenses like the statute of

2    limitations may also be raised in motions to dismiss filed before the first responsive pleading.");

3    *Ideal Aerosmith, Inc. v. Acutronic USA, Inc*., 2007 U.S. Dist. LEXIS 91644, *14-15 (W.D. Pa.

4    2007) (Rule 12(b)(6) dismissal of Wiretap Act claim, applying the "operator" exception).

5        Accordingly, many courts—including this court—have applied CDA immunity to dismiss

6    complaints pursuant to Fed. R. Civ. P. 12(b)(6). *See Barnes v. Yahoo*, 570 F.3d 1096 (9ᵗʰ Cir.

7    2009); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1200 n.5 (N.D. Cal. 2009) (12(b)(6)

8    dismissal based on CDA immunity; "affirmative defenses routinely serve as a basis for granting

9    Rule 12(b)(6) motions where the defense is 'apparent from the face of the [c]omplaint'"); *Black v.*

10    *Google*, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal. 2010) (dismissal under CDA Section

11    230(c)(1)); *Langdon v. Google, Inc. et al.*, 474 F. Supp. 2d 622 (D. Del. 2007) (dismissal under

12    CDA Section 230(c)(2)); *see also e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605 (N.D.

13    Ill. 2008). In this case, the facts set forth in Holomaxx's complaint establish CDA immunity.[1]

14
15        **1.**     <u>Holomaxx's Objectionable, Harassing Emails Are Precisely The Type</u>
<u>Of Content That Is Subject To CDA Immunity Under CDA Sections</u>
<u>(c)(2)(A) And (c)(2)(B).</u>

16        Congress intended that CDA immunity apply to a broad array of content. Courts have

17    repeatedly held that filtering of email, advertisements and similar electronic content are within the

18    CDA safe harbors. *See Langdon*, 474 F. Supp. 2d at 630-631 (defendant immune under the CDA

19    where it restricted plaintiff's advertisements from its website because such content could be

20    deemed "objectionable" by defendant). Holomaxx recognizes that at least one court has

21    specifically found that marketing emails like those asserted by Holomaxx are the type of content

22    subject to CDA immunity. *See e360Insight*, 546 F. Supp. 2d 605.

23        Holomaxx attempts to put forth an unprecedented rule that "commercial" or "business-

24    related" email cannot be considered "objectionable" content subject to CDA immunity.

25    Holomaxx is incorrect. Many cases have immunized filtering of commercial, business-related

26    content. *See e.g. Langdon*, 474 F. Supp. 2d at 630-631 ("advertisements" considered

27
28

---

[1] Holomaxx's authority, *Perfect 10, Inc. v. Google, Inc.*, 2008 U.S. Dist. LEXIS 79200 (C.D. Cal. 2008) and *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) is inapposite. Neither case involved the situation here where the facts of the complaint itself establish CDA immunity.

1  "objectionable" under CDA, over plaintiff's argument that the ads were not obscene or

2  harassing); *e360Insight*, 546 F. Supp. 2d at 606, 609 ("e-mail solicitations and advertisements"

3  considered "objectionable" under CDA).  Of course, virtually all spam would be considered by its

4  authors as commercial email.  Holomaxx's proposed distinction would swallow the rule.

5      At most, the cases Holomaxx relies upon, *Goddard v. Google, Inc.*, 2008 U.S. Dist.

6  LEXIS 101890 (N.D. Cal. 2008) and *Nat'l Numismatic Certification LLC v. eBay, Inc.*, 2008 U.S.

7  Dist. LEXIS 109793 (M.D. Fla. 2008), stand for the proposition that "objectionable" content must

8  involve or be similar to "pornography, graphic violence, obscenity or harassment."  *Goddard*, at

9  *25.  Holomaxx's complaint establishes that its emails are precisely such content.  Holomaxx

10  admits that over 100,000 emails each week are sent to invalid accounts or resulted in users

11  affirmatively opting out from receiving them.  *See* Compl., ¶ 17 (Holomaxx alleges that it sends 3

12  million emails to Microsoft each day), ¶ 19 (Holomaxx alleges that .5% of such emails are sent to

13  invalid addresses or result in user opt-out).  Thus, the emails in question are not only the type of

14  content that Microsoft could subjectively determine to be "harassing" or "similar to …

15  harassment," but by opting out a substantial number of Microsoft's users determined that this was

16  decidedly the case.  *See e.g. e360Insight*, 546 F. Supp. 2d at 606, 609 (finding that filtered emails

17  were "objectionable" and subject to the CDA safe harbor, noting "[m]any e-mail users do not

18  want to see (or delete unread) the messages sent by [plaintiff]").  Holomaxx's emails are the type

19  of objectionable content subject to immunity under CDA Section (c)(2).

20      Holomaxx's brief makes clear that its real objection is to the *standards* that Microsoft

21  applies to filter email and that it believes that the .5% rejection rate is not a sufficient basis to

22  block it.  Holomaxx frames the issue in a number of ways, including purported CAN-SPAM

23  compliance and that the accused spam filters are allegedly "cheap and overzealous." *See e.g.* Opp.

24  at 1, 7.  Holomaxx is clearly attempting to litigate the details of Microsoft's filtering

25  methodology, despite its protestations to the contrary.  *Id.* at 7.  If Holomaxx's position were

26  adopted, a federal lawsuit would be enabled every time an individual's or company's email was

27  filtered in a manner they dislike, resulting in a flood of litigation.  This is precisely the opposite of

28  what Congress intended to accomplish through the CDA Section 230(c)(2) safe harbors.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

1    Rather, Congress intended that parties like Microsoft be empowered to make subjective

2    determinations and define their own standards for filtering such content.  In *Goddard v. Google,*

3    relied upon by Holomaxx, this Court explicitly recognized that CDA Section 230(c)(2) "allows

4    [an interactive service provider] to establish *standards* of decency without risking liability for

5    doing so."  2008 U.S. Dist. LEXIS 101890, at *22 (emphasis in original); *see also Zango v.*

6    *Kaspersky Lab, Inc.*, 568 F.3d 1169, 1172-1173 (9th Cir. 2009) (CDA immunity granted despite

7    the fact that "the degree of threat posted to users by Zango's software is in dispute"); *Green v.*

8    *America Online*, 318 F.3d 465, 472 (3rd Cir. 2003) (CDA allows providers to establish standards

9    without risking liability); *Langdon*, 474 F. Supp. 2d at 630  (CDA Section 230(c)(2) safe harbor

10   permitted defendants to exercise "editorial discretion over internet content and editorial decisions

11   regarding screening and deletion of content from their services.").  Similarly, Microsoft is entitled

12   to establish standards for filtering email.

13   Indeed, CDA immunity is not predicated upon Microsoft proving that any piece of

14   blocked email is, in fact, "objectionable," but whether Microsoft made good faith efforts to filter

15   what it deems objectionable.  *See e360Insight*, 546 F. Supp. 2d at 607 ("Congress, and, I think,

16   everyone else who studied the issue understood that blocking software would probably block too

17   much. To insure that you or your child will not receive unwanted or inappropriate e-mails, your

18   Internet service may wind up preventing you from receiving some e-mails that are neither

19   unwanted nor inappropriate.").  This distinction is critical, and is ignored by Holomaxx.

20   Holomaxx also asserts that the CDA only permits *users* to determine what is objectionable

21   material, but that *providers* such as Microsoft are purportedly powerless to do so.  Opp. at 6-7.

22   Section 230 itself rebuts this argument, making clear that immunity covers "material that the

23   *provider* or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing,

24   or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A) (emphasis added).[2]

25

26   [2]  Holomaxx resorts to a non-binding, hypothetical discussion in Judge Fisher's concurrence in *Zango*, considering a different issue, i.e. whether an implicit "good faith" requirement should be imported into Section 230(c)(2)(B) which does not have such a requirement.  *See United States v. Reynard*, 473 F.3d 1008, 1021 (9th Cir. 2007) (rejecting

27   reliance on Supreme Court concurrence, noting "Justice Thomas's concurring comments are not binding on us…") Holomaxx attempts to convert this dicta into the law through hyperbole and speculation, to reach the unbelievable

28   conclusion that service providers should not be permitted to deem content harassing or otherwise objectionable to its users despite clear statutory language and case law to the contrary.  Holomaxx's assertion must be rejected.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

### 2.  **Microsoft's Provision Of Filtering Technology Is Precisely The Type Of Activity Protected Under CDA Section (c)(2)(B).**

Congress intended that CDA Section (c)(2)(B) immunity apply to companies such as Microsoft that "enable" or "make available … to others" technical means to restrict access to objectionable, harassing content.  As admitted by Holomaxx, Section (c)(2)(B) has no requirement of good faith.  Opp. at 5.  There is no legally cognizable distinction between the provision of software filtering tools immunized in *Zango v. Kaspersky Lab, Inc.* and the provision of email filtering tools by Microsoft.  In *Zango*, the defendant defined plaintiff's software as objectionable and harassing and enabled tools for users that blocked the software.  Likewise, as Holomaxx admits in its complaint, Microsoft defined Holomaxx's email as harassing and objectionable and enabled tools for users to block that email.  *See* Compl. ¶¶ 18(d), 20-24 (admitting, among other things, that Microsoft's SmartScreen filter "has been programmed to identify spam based on certain mailing characteristics").  Because Microsoft enables and provides "technical means to restrict access" to emails subjectively determined to be objectionable and harassing, its filtering activities are subject to immunity under CDA Section (c)(2)(B).

### 3.  **Microsoft's Good Faith Is Established By Holomaxx's Complaint And Microsoft's Determination That Holomaxx's Email Is Objectionable Is Legally Insufficient To Establish Anything But Good Faith Filtering.**

None of the allegations in Holomaxx's complaint can establish anything but good faith filtering activity and, as discussed above, Microsoft's immunity under CDA Section (c)(2)(B) does not even require a showing of good faith.  The fact that Holomaxx has filed nearly identical allegations against both Microsoft and Yahoo! disposes of its "bad faith" claim.  Holomaxx is taking issue with spam filtering itself, not the alleged bad faith activity of any party.  In its brief, Holomaxx makes the bare assertion that Microsoft was purportedly "motivated by profit to block the good along with the bad" and "has a bad faith motive to block legitimate commercial email." Opp. at 7, 1.  In its complaint Holomaxx admits that it is simply speculating, alleging that Microsoft was "*[p]ossibly* seeking to cut costs in its service to free email users." Compl. ¶ 20 (emphasis added).  Holomaxx points to no facts whatsoever to support these bare contentions.  At most, Holomaxx speculates that Microsoft shares profits from a "whitelist" that it recommends to

1   senders.  Compl. ¶ 49.  Not only is this legally insufficient, the assertion is the type of conjecture,

2   completely devoid of any factual underpinning, which was explicitly rejected by *Twombly* and

3   *Iqbal*.  *See Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2006) ("Threadbare recitals of the elements

4   of a cause of action, supported by mere conclusory statements, do not suffice.").  Even where a

5   plaintiff specifically asserted that defendant singled out plaintiff's email marketing for filtering

6   and treated it differently than other companies, the bad faith allegation was found insufficiently

7   pled under *Twombly*.  *See e360Insights*, 546 F. Supp. 2d at 609-10.[3]  The same type of allegation

8   must be rejected here, particularly given that Holomaxx does nothing more than speculate.

9        Holomaxx's "bad faith" argument otherwise boils down to an assertion that Microsoft's

10   filtering methodology is too restrictive or in various ways ineffective.  Compl. ¶¶ 9-11, 20-24, 28,

11   30-31, 48-51, 117.  But, a restrictive or even imperfect filtering methodology cannot be the basis

12   for "bad faith" because, as discussed, the whole point of the CDA safe harbor is to encourage

13   service providers like Microsoft to define "standards" for filtering content without fear of

14   liability.  Indeed, even where an email provider "began a program of indiscriminate blocking of

15   [plaintiff's] e-mails" the Court found that CDA immunity applied.  *e360Insight, LLC*, 546 F.

16   Supp. 2d at 608.  In any event, Holomaxx admits that an enormous number of its emails are

17   rejected by Microsoft's users who "opt out" and are "bounced" from non-existent addresses.

18   Compl. ¶ 19.  This alone defeats Holomaxx's assertion that Microsoft is engaged in anything but

19   subjective, good faith filtering.  Holomaxx's only response is that by its own estimation, the rate

20   is "low" enough that Microsoft shouldn't be concerned.  Opp. at n.1.  But those decisions are

21   precisely what the CDA puts in the hands of email providers such as Microsoft, not Holomaxx.

22        **B.   Holomaxx Fails To Sufficiently Allege The Wiretap Act.**

23        Holomaxx's Wiretap Act claim necessarily fails.  The Complaint establishes that

24   Microsoft qualifies for immunity under the "operator" exception of Section 2511(2)(a)(i).

25   Holomaxx misleadingly cites only a portion of this provision, to suggest that it applies only to an

26   _____

27   [3]  Holomaxx cites *Smith v. TRUSTe*, 2010 U.S. Dist. LEXIS 43360, *2 (D.N.J. 2010), an opinion designated "Not For Publication" and which, unlike the instant case, involved an individual *pro se* plaintiff.  *See Smith*, 2010 U.S. Dist. LEXIS 43360, *20 (discussing the good faith element, the Court noted that it was "giving the pro se Plaintiff the benefit of the doubt").  In any event, the plaintiff there alleged a specific statement (albeit a legally insufficient one). Here Holomaxx engages only in rank speculation, with no factual underpinnings at all.

28

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

1    "operator of a switchboard."  Opp. at 16.  However, the complete language makes clear that

2    immunity is also afforded to communication providers such as Microsoft, *i.e.* immunity is

3    afforded to "a provider of wire or electronic communication service" which intercepts, discloses,

4    or uses communications in the rendition of service or protection of the provider's rights or

5    property.  18 U.S.C. § 2511 (2)(a)(i).  Holomaxx alleges that Microsoft "provides free email

6    accounts to millions of users and businesses." Compl. ¶ 20.  Microsoft is thus a "provider of wire

7    or electronic communication service," as a matter of law.  *See* 18 U.S.C. § 2510(15) ("'electronic

8    communication service' means any service which provides to users thereof the ability to send or

9    receive wire or electronic communications").  Holomaxx alleges that Microsoft's spam filter "has

10   been programmed to identify spam based on certain mailing characteristics" and that these

11   systems are allegedly used "to cut costs in its service to its free email users."  Compl. ¶¶ 20, 23.

12   Thus, under Holomaxx's own theory, the alleged interception is part of Microsoft's activity

13   incident to the rendition of service and to protect Microsoft's rights and property.  Accordingly,

14   Microsoft qualifies for immunity under Section 2511(2)(a)(i).

15        Holomaxx incorrectly asserts that Section 2511(2)(a)(i) only exempts "employers"

16   exercising control over their own computers, but purportedly does not exempt "ISPs."  This is

17   facially incorrect, as the provision explicitly applies to a "provider of wire or electronic

18   communication service"—i.e. ISPs.  Holomaxx fails entirely to put forth any authority limiting

19   this provision to "employers," and the law is overwhelmingly to the contrary.  *See, e.g., United*

20   *States v. Goldstein*, 532 F.2d 1305, 1310 (9th Cir. 1976), *citing United States v. Clegg*, 509 F.2d

21   605, 612-13 (5th Cir. 1975) ("telephone company" immunized under § 2511(2)(a) where it

22   monitored suspected calls believed to be bypassing the company's billing procedures).[4]

23        Holomaxx also cannot establish that its emails were "intercepted."  First, Holomaxx's

24   entire argument is predicated on the facially unreasonable demand that this Court change the law

25   and ignore the clear Ninth Circuit precedent in *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868

26

27   _____

[4] These cases also demonstrate that immunity extends not merely to the "employee or agent" of a communications provider, as Holomaxx suggests (Opp. at 16), but to the provider itself.  Holomaxx's cited authority does not even address Section 2511 and is, thus, entirely inapposite.  *See Andersen Consulting v. UOP*, 991 F. Supp. 1041 (N.D. Ill. 1998) (dealing with 18 U.S.C. § 2702, *nor* § 2511(a)(2)); *United States v. Warshak*, 2010 U.S. App. LEXIS 25415, *43 (6th Cir. 2010) (dealing with Fourth Amendment search by the government, not Section 2511(a)(2)).

28

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

1   (9th Cir. 2002) and its progeny.  Opp. at 15, n.16.  That request should be rejected.  While

2   Holomaxx endeavors to parse fine distinctions between communications intercepted in transit and

3   those in storage, at the end of the day Holomaxx cannot overcome its own factual allegation that

4   Microsoft "accessed computers on which HOLOMAXX's confidential e-mail communications

5   were **stored**."  Compl. ¶ 41; *see also* ¶ 66 (Microsoft "obtained and prevented authorized access

6   to wire or electronic communications sent by HOLOMAXX while they are in **electronic storage**

7   in such system.") (emphasis added).  One cannot allege these facts, then attempt to run away from

8   them on a motion to dismiss.[5]  In any event, to the extent Holomaxx is attempting to assert that

9   email was purportedly intercepted in transit, even its own authority establishes that its conclusory

10  allegations are insufficient.  *See Garcia v. Haskett*, 2006 U.S. Dist. LEXIS 46303 (N.D. Cal.

11  2006) (plaintiff alleged email was intercepted while "'still in transit to Plaintiff's email box, i.e.

12  accessed while in temporary, transient' storage"; dismissing claim on the basis that "other than

13  this conclusory statement … Plaintiff states no factual allegations to support her assertion that

14  Defendant intercepted the unread email while it was in temporary, transient storage.").

15      Further, Holomaxx asserts that the machines allegedly used to access emails were

16  Microsoft's own mail servers. *See* Compl. ¶¶ 41, 66.[6]  It is established that "[t]he drive or server

17  on which an e-mail is received does not constitute a device for purposes of the Wiretap Act."

18  *Ideal Aerosmith*, 2007 U.S. Dist. LEXIS 91644, *12 ; *Crowley v. Cybersource*, 166 F. Supp. 2d

19  1263 (N.D. Cal. 2001) (same).  Thus, there can be no interception as a matter of law.  *See also*

20  *Bradley v. Google*, 2006 U.S. Dist. LEXIS 94455 (N.D. Cal. 2006).

21      Microsoft is also immune from liability because its users have consented to Microsoft's

22  access of e-mail communications such as those sent by Holomaxx.  *See* 18 U.S.C. § 2511(2)(d)

---

[5]  While Rule 8 permits alternative legal theories, Holomaxx is bound by the facts alleged in its complaint and cannot plead inconsistent facts.  *See In re Turnstone Sys. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26709, *73-74 (N.D. Cal. 2003) ("while Plaintiff may allege claims that are inconsistent with one another, Plaintiff may not allege inconsistent facts"); *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003) ("A complaint may not allege inconsistent facts – e.g., whether there was an agreement – because facts are binding judicial admissions."); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-529 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.")

[6]  Holomaxx's authority is not on point to the alleged facts. For example, *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010) and *In re Pharmatrak*, 329 F.3d 9 (1st Cir. 2003) involved "interception" of e-mails by the defendant through automatic routing software that duplicated them at the time of transmission.  That is not the theory here.  *United States v. Councilman*, 418 F.3d 67, 80 (1st Cir. 2005 ), did not even reach the temporal issue of "interception."

1    (no liability for "interception" where one party to the communication has given consent).  The

2    operative consent language has been consistent in Microsoft's terms of service since before the

3    November 2009 events alleged in the complaint.  Compl. ¶ 31.  Paragraph 10 of the agreement in

4    May 2008 explicitly reserved Microsoft's right to access or disclose communications:

> In particular, we may access or disclose information about you, including the content of your communications, in order to:  (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Microsoft or our customers, including the enforcement of our agreements or policies governing your use of the service; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Microsoft employees, customers or the public.

9    Declaration of Alison Howard, Ex. A at ¶ 10 (filed herewith).  The same term has been in effect

10    through the present.  *Id.* ¶¶ 2-5, Ex. B at ¶ 6.  The agreement shows that it governs use of any

11    Windows Live service, including Hotmail, and MSN.  *Id.*, Exs. A, B at p. 1.  Given users' broad

12    consent, Microsoft cannot be held liable for "interception" when it has the authority to do so.

13        Holomaxx put this customer consent into dispute when it alleged that Microsoft

14    purportedly accessed emails "without the consent of either HOLOMAXX or the intended

15    recipients."  Compl. ¶ 41.  The "intended recipients" are Microsoft consumers who agreed to be

16    bound by Microsoft's terms, which are publicly available on Microsoft's websites.  Thus, the

17    Court may consider the terms, which are a matter of public record.  *See Uv. Ritchie*, 342 F.3d

18    903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be

19    incorporated by reference into a complaint if . . . the document forms the basis of the plaintiff's

20    claim."); *Giordano v. Wachovia Mortg., FSB*, 2010 U.S. Dist. LEXIS 136284, *2 n.2 (N.D. Cal.

21    2010) (Fogel, J.) (on motion to dismiss, Court may take notice of "matters in the public record");

22    *In re Facebook PPC Adver. Litig.*, 2010 U.S. Dist. LEXIS 39776, at *3 (N.D. Cal. 2010) (Fogel,

23    J.) (website's terms of service blocked plaintiff's claims); *Towantic Energy, L.L.C. v. General

24    Elec. Co.*, 2004 U.S. Dist. LEXIS 15385 (N.D. Cal. 2004) (judicial notice of facts on party's

25    website); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1131 (N.D. Cal. 2010) (Fogel, J.)

26    (defendant's one-year warranty terms considered on motion to dismiss, even though not included

27    in complaint).  Accordingly, Microsoft's service agreements are proper for judicial notice.

28        **C.**      **<u>Holomaxx Fails To Sufficiently Allege The Stored Communications Act.</u>**

Holomaxx's Stored Communications Act ("SCA") claim is deficient. Holomaxx is unable to refute that Microsoft, as an authorized provider of an electronic communication service, is immune from liability under the SCA. *See* 18 U.S.C. § 2701(c)(1). Like the defendants in *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996), and *Fraser v. Nationwide Mut. Ins.*, 352 F.3d 107 (3rd Cir. 2003), Microsoft is permitted to "do as [it] wish[es] when it comes to accessing communications in electronic storage" as the provider of the electronic service. Microsoft's access to its own systems is not limited under the SCA. *See Crowley*, 166 F. Supp. 2d 1263. Holomaxx's attempt to distinguish *Crowley* is unpersuasive. *Crowley* is directly on point. There, plaintiff directed electronic communications to the defendant's computer systems and servers, to which defendant had authorized access. Here, Holomaxx directed its electronic communications to Microsoft's systems and servers, to which Microsoft had authorized access.[7]

Moreover, Microsoft qualifies for the SCA exception, Section 2701(c)(2). As with the Wiretap Act, the SCA does not apply "as long as one party to the communication provides consent." *In re Toys R Us Priv. Litig.*, 2001 U.S. Dist. LEXIS 16947 at *18. Microsoft's terms of use specifically authorize Microsoft to access e-mails sent by third parties, such as Holomaxx.

### D.       Holomaxx Fails To Sufficiently Allege The Computer Fraud & Abuse Act.

Plaintiff cannot seek relief pursuant to the Computer Fraud and Abuse Act ("CFAA"). Despite Plaintiff's attempts to mischaracterize the CFAA, the statute explicitly applies only to unauthorized access to protected *computers*. *See* 18 U.S.C. § 1030(a)(1)-(4). Holomaxx has failed to plead facts sufficient to find that Microsoft accessed Holomaxx's computers at all in blocking e-mail communications. Rather, Holomaxx's Complaint includes conclusory allegations to the effect that Microsoft "blocked all emails sent by HOLOMAXX to MICROSOFT users" and Microsoft "exceeded [its] authorization to access … computers … and obtained information from such computers, in violation of 18 U.S.C. §§ 1030 et seq." *See* Compl. ¶¶ 72, 77.

Holomaxx has not provided any authority for its argument that a service provider may exceed authorization to access its *own* servers.[8] The mere fact that a third party sends e-mail to a

---

[7]  Again, without any authority, Holomaxx attempts to argue  that the SCA exception applies only to "employers."

[8]  *Theofel v. Farey-Jones*, 359 F.3d 1066, cited by Holomaxx, is wholly inapplicable, as it involved individuals who served an unlawful subpoena, not a service provider accessing its *own* servers and which has its users' consent.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

1  service provider's servers does not convert those servers into the third party's property.  *See eBay,*

2  *Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1070 (an internet company's servers are its own

3  "private property.")  Holomaxx attempts to argue that even though Microsoft's access to its own

4  computers is authorized, that somehow Microsoft could be liable for "exceeding" that authority

5  by accessing emails on its own servers.  *See* Opp. at 19 (citing 18 U.S.C. § 1030(e)(6)).  This

6  argument strains credulity, as Holomaxx itself intentionally directed its emails to Microsoft's

7  servers, thus handing them over to Microsoft.  Recently one court rejected such a theory where, as

8  here, the information on the Internet was "not protected in any meaningful fashion." *Cvent, Inc. v.*

9  *Eventbrite, Inc.*, 2010 U.S. Dist. LEXIS 96354 (E.D. Va. 2010); *LVRC Holdings, LLC v. Brekka*,

10  581 F.3d 1127, 1129 (9th Cir. 2009) (where access to computer authorized, no liability for alleged

11  unauthorized "use" of information on the computer); *United States v. Suibin Zhang*, 2010 U.S.

12  Dist. LEXIS 123003, *10-12 (N.D. Cal. 2010) (same).[9]  Additionally, since Microsoft's email

13  users consented to Microsoft's ability to review and filter the mail, the alleged access is

14  authorized and Microsoft cannot be held liable under the CFAA.

15       **E.**     **Holomaxx Fails To Sufficiently Allege Cal. Penal Code 630.**

16       Holomaxx's claim under Penal Code Section 631 is preempted by the Wiretap Act and

17  must be dismissed, as the claims arise from the same facts and legal theories.  *See* 18 U.S.C. §

18  2518(10)(c); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148 (C.D. Cal. 2007).

19  Instead of addressing *Bunnell*, Holomaxx cites to cases in which the issue of preemption was not

20  even explicitly addressed.  It is clear that the Section 631 claim is preempted and Holomaxx

21  provides no authority to the contrary.  In any event, because the Section 631 claim is predicated

22  on the same legal and factual theory as the Wiretap Act claim, it fails for the same reasons.

23       **F.**     **Holomaxx Fails To Sufficiently Allege Intentional Interference.**

24       Holomaxx concedes that it does not allege that Microsoft had any specific intent to

25  interfere.  Opp. at 10.  Further, Holomaxx fails to sufficiently allege, as it must, that Microsoft

26  had any knowledge of or intent to interfere with any contract or relationship at the time that it

27

28  _____

[9] As with its Wiretap Act and SCA claims, Holomaxx argues that the CFAA limitations apply only to employers, but not service providers.  Again, Holomaxx cites no authority establishing any such distinction.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

1   allegedly filtered Holomaxx's email.[10]  *See Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*, 7

2   F.3d 1434, 1442-43 (9th Cir. 1993) (intentional interference claims failed where no evidence that

3   defendant knew of contract or relationship at the time of alleged interference).  Indeed, without

4   knowledge of contracts or relationships with which it *could* have interfered at the time of the

5   accused actions, it is impossible for Microsoft to have known that any alleged interference was

6   certain or substantially certain to occur.  Holomaxx does not even attempt to refute this fact.

7   Holomaxx admits that Microsoft's email filtering software is not specific to Holomaxx and was

8   "programmed to identify spam based on certain mailing characteristics…" Compl. ¶ 23.  It is

9   legally impossible that such filtering could lead to knowledge of or "intentional" interference with

10  any particular alleged contracts or relationships, including Holomaxx's unidentified customers or

11  hosting company.  *See e.g. Beverly v. Network Solutions, Inc.*, 1998 U.S. Dist. LEXIS 20453,

12  *26-29 (N.D. Cal. 1998) (automated registration of domains insufficient to impute knowledge or

13  intent to interfere to a domain registrar).  Holomaxx does not and cannot argue otherwise.

14          Moreover, as Holomaxx admits, the purpose of filtering was to "identify spam."  Thus,

15  Microsoft's actions were justified, as a matter of law, as Microsoft was simply attempting to

16  protect its customers and legitimate economic interests.  *See Cabanas v. Gloodt Assocs.*, 942 F.

17  Supp. 1295, 1306 (E.D. Cal. 1996) ("[n]ot every interference with contract or economic

18  advantage is a tort."); *Jewel Cos., Inc. v. Pay Less Drug Stores Nw, Inc.*, 510 F. Supp. 1006, 1011

19  (N.D. Cal. 1981) (interference is justified "when the person is seeking to protect an interest of

20  greater social value than that attached to the stability of the contract involved.").  Because the

21  accused acts were legally justified, immunized under the CDA and otherwise lawful under each

22  of Holomaxx's theories, they also cannot meet the "wrongfulness" element of intentional

23  interference with prospective business advantage.  *See Korea Supply Co. v. Lockheed Martin*

24  *Corp.*, 29 Cal. 4th 1134, 1158-59, n.11 (2003).[11]  Holomaxx's claims fail as a matter of law.

---

25  [10]  Holomaxx's assertion that it is not required to allege any specific contract or Microsoft's knowledge of such
    specific contract, Opp. at 9-10, should be rejected.  The sole precedent Holomaxx relies upon for this assertion is
26  inapposite in light of the now heightened pleading standard of plausibility.  *See Silicon Image, Inc .v. Analogix*, 2007
    U.S. Dist. Lexis 39599, *11 (N.D. Cal 2007) (applying pre-*Twombly* and *Iqbal* notice pleading standard).

27  [11]  Holomaxx incorrectly asserts that wrongfulness does not require "unlawful" conduct. Opp. at 11.  This is not the
    law.  *See Korea Supply*, 29 Cal. 4th at 1158-59 , n.11 ("an act must be wrongful by some legal measure, rather than
28  merely a product of an improper, but lawful, purpose or motive" and disapproving all lower court holdings improper
    motive or improper means found sufficient for liability).  Holomaxx erroneously relies on a case citing dicta from a

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO.: C 10-04924-JF

### G.    Holomaxx Fails To Sufficiently Allege Defamation Or False Light.

Holomaxx's False Light and Defamation claims must be dismissed.  These claims arise from an alleged communication between Microsoft and Holomaxx's data center.  However, Holomaxx itself cannot even clearly state the allegedly defamatory statement, as required by law.  *See Rondberg v. McCoy*, 2009 U.S. Dist. LEXIS 86157, *19-20 (S.D. Cal. 2009) ("Under California law, the defamatory statement must be specifically identified …"); *Silicon Knights v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) ("the words constituting a libel or slander must be specifically identified …"); *Kilopass Tech, Inc. v. Sidense Corp.*, 2010 U.S. Dist. LEXIS 136345, *14-17 (N.D. Cal. 2010) (defamation claim dismissed where time, place, speaker and statement not identified).  Holomaxx intersperses "quoted" language from some alleged statement by Microsoft with statements by Holomaxx's counsel.[12]  This case cries out for application of the principles of *Twombly* and *Iqbal*.  *See Jones v. Thyssenkrupp Elevator Corp.*, 2006 U.S. Dist. LEXIS 13978, *15-16 (N.D. Cal. 2006) ("The standard for pleading defamation is more stringent than that applicable to most other substantive claims because of the historically unfavored nature of this type of action.").  It appears that Holomaxx may be cobbling together several communications in a misleading manner.  Holomaxx refers to an alleged "letter" from Microsoft, but does not quote from it or attach it.  Holomaxx does not indicate when the alleged communication occurred, who it was from or to whom it was sent.  Thus, all other issues aside, the Complaint does not clearly allege any statement underlying Holomaxx's theory and should be dismissed.  *Twombly*, 550 U.S. at 558 ("A district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.")

As demonstrated by Holomaxx's use of quotation marks, the only language attributed to Microsoft in the complaint are "for policy reasons" and "or for spamming." Compl. ¶ 45.  The use of the disjunctive "*or*" demonstrates that either Holomaxx's addresses were rejected for policy reasons or for spamming.  Holomaxx itself alleges that Microsoft blocked Holomaxx's IP

---

1995 opinion and overlooking the superseding holding from *Korea Supply* in 2003.  Opp. at 11:15-18 *citing 625 3rd St. Assocs., LP v. Alliant Cred. Union*, 633 F. Supp. 2d 1040, 1049 (2009).

[12] Contrary to Holomaxx's contention, Microsoft did not include the "and blocked manually" language when quoting the defamatory statement in its Motion to Dismiss, because Holomaxx has never attributed such language to Microsoft—not because it believes it is fatal to its arguments.  *See* Opp. 21 n. 24.

- 13 -

1    addresses for its noncompliance with the SmartScreen filter and Microsoft's other policies.  *See*

2    *Compl.* ¶ 25.  The statements allegedly made by Microsoft, then, are true on the face of the

3    Complaint and should be dismissed accordingly.

4         Moreover, even an alleged statement that Holomaxx was "spamming" is insufficient to

5    avoid dismissal.  "Spam" is a word that "does not have a precise definition."  *Gordon v.*

6    *Virtumundo, Inc.*, 575 F. 3d 1040, 1045 n.1 (9th Cir. 2009) ("The term ['spam'] was first used in

7    the electronic messaging context to describe the practice of sending advertisement to many

8    recipients, particularly on newsgroup forums.").  The word "spam" is precisely the type of "loose,

9    figurative, or hyperbolic language" that has been found insufficient to support a defamation or

10   false light claim. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990) ("use of the word

11   'traitor' in literary definition of a union 'scab' not basis for a defamation action . . . since used 'in

12   a loose, figurative sense' and was 'merely rhetorical hyperbole, a lusty and imaginative

13   expression of the contempt felt by union members.'").

14        Holomaxx's cited cases are readily distinguishable from the present facts.  In *Unelko,*

15   *Albertino,* and *Macleod*, the defamatory statements "in [their] totality" were assertions or implied

16   assertions of objective fact with well-defined and crystallized meanings.  *See Unelko v. Rooney*,

17   912 F.2d 1049 (9th Cir. 1990) (statement "it didn't work" regarding a product was objective

18   statement of fact); *Albertini v. Schaefer*, 97 Cal. App. 3d 822, 829 (1979) ("Calling someone a

19   'thief' was early held to be defamatory per se."); *Macleod v. Tribune Publishing Co.,* Inc., 52 Cal.

20   2d 536, 546 (1959) (factual allegation of Communist party affiliation had well crystallized

21   meaning); *Weller v. American Broadcasting Co.*, 232 Cal. App. 3d 991 (1991) (assertion of facts

22   that were provably false); *Edwards v. Hall*, 234 Cal. App. 3d 886, 903 (1991) (same).

23        Here, unlike the well-defined terms and phrases in Holomaxx's cited cases, the word

24   "spamming" does not have a crystallized meaning.  Moreover, in the determination of

25   defamation, the court must look at the "whole scope and apparent object of the writer."  *Macleod*,

26   52 Cal. 2d at 546.  While it is unclear what statement Holomaxx is alleging as defamatory, it is

27   evident from the use of the disjunctive "or" that Microsoft did not make a statement that

28   Holomaxx was spamming.  The alleged statement cannot be proved true or false, cannot be read

1   to imply any provable assertions of fact and is "too general to support [the] conclusion" that

2   Holomaxx posits.  *See ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789 (N.D. Cal. 2010).

3          Moreover, Holomaxx's contention that the term necessarily charges criminal activity also

4   fails.  "Spamming" is nothing "more than rhetorical hyperbole, a vigorous epithet used by those

5   who" consider mass e-mail distribution to be spam.  *See Greenbelt Cooperative Publishing Assn.*

6   *v. Bresler*, 398 U.S. 6, 14 (1970).  The record is devoid of any evidence that Microsoft made any

7   statements imputing criminal liability.  *Id.* ("blackmail" to describe a party's bargaining position

8   not actionable since "[n]o reader could have thought [the party was being charged] with the

9   commission of a criminal offense.").  To the contrary, the alleged statement appears in the context

10  of violating Microsoft's "policy."  There is no allegation that Microsoft ever mentioned criminal

11  liability, the CAN-SPAM Act, or any law indicating that Holomaxx engaged in criminal activity.

12         Finally, Holomaxx is entirely precluded from pursuing its "false light" claim, as

13  corporations, LLCs and similar entities do not have standing to bring that cause of action.  *See*

14  *Kennedy Funding, Inc. v. Chapman*, 2010 U.S. Dist. LEXIS 116038, *13-14 (N.D. Cal. 2010).

15         **H.      Holomaxx Fails To Sufficiently Allege Cal Bus. Prof. Code 17200.**

16         Dismissal of Holomaxx's Unfair Competition under California Business and Professions

17  Code Section 17200, *et seq.* ("UCL") claim is warranted under the law.  Holomaxx relies on facts

18  identical to the other eight causes of action.  Compl. ¶¶ 120-122.  For the reasons set forth herein,

19  and because its conduct is expressly lawful pursuant to the CDA, the UCL does not apply to

20  Microsoft's conduct and Holomaxx's claim should be dismissed.

21  **III.    CONCLUSION**

22         For the foregoing reasons, Microsoft respectfully requests that Plaintiff Holomaxx's

23  Complaint be dismissed in its entirety without leave to amend.

24  Dated:  February 11, 2011                    GABRIEL M. RAMSEY
                                                 Orrick, Herrington & Sutcliffe LLP
25

                                                 /s/ Gabriel M. Ramsey
26                                               _____
                                                 GABRIEL M. RAMSEY
27                                               Attorneys for Defendant
                                                 MICROSOFT CORPORATION
28