1   I. NEEL CHATTERJEE (SBN 173985)
    nchatterjee@orrick.com
2   GABRIEL M. RAMSEY (SBN 209218)
    gramsey@orrick.com
3   MORVARID METANAT (SBN 268228)
    mmetanat@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA  94025
    Telephone:     650-614-7400
6   Facsimile:     650-614-7401

7   Attorneys for Defendant
    MICROSOFT CORPORATION

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

| | |
|---|---|
| HOLOMAXX TECHNOLOGIES, a Pennsylvania Corporation, <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, a Delaware Corporation, <br><br> Defendant. | Case No.  C 10-04924-JF <br><br> **DEFENDANT MICROSOFT CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> Date:     July 15, 2011 <br> Time:     9:00 a.m. <br> Judge:    Honorable Jeremy Fogel <br> Courtroom:   Courtroom 3, 5th Floor |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page(s)**

3   MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

4   I.        INTRODUCTION ...................................................................................................... 1

5   II.       FACTUAL BACKGROUND ................................................................................... 2

    III.      ARGUMENT ............................................................................................................ 4

6             A.        Motion to Dismiss Standard ........................................................................ 5

7             B.        The Communications Decency Act Bars Holomaxx's Third Through
                        Seventh Claims—Holomaxx's Complaint Establishes That Microsoft

8                       Satisfies All Requirements Necessary For CDA Immunity .................................... 6

9                       1.        The Complaint Establishes That Microsoft Is An Interactive
                                  Computer Service Provider ........................................................... 7

10                      2.        CDA Section (c)(2)(A):  The Complaint Establishes That Microsoft
                                  Restricted Access To Material It Considers

11                                Harassing/Objectionable .............................................................. 7

12                      3.        CDA Section (c)(2)(B): The Complaint Establishes That Microsoft
                                  Took Action To Enable And Make Available Technical Means To

13                                Restrict Access To Harassing/Objectionable Content ................................. 9

                        4.        Microsoft's Good Faith Decision To Filter Holomaxx's Emails ............. 10
14
                                  a.        Good Faith Is Not Required For Section (c)(2)(B) Immunity ...... 10
15
                                  b.        Holomaxx's Complaint Is Legally And Factually
16                                          Insufficient To Demonstrate An Absence Of Good Faith ........... 10

              C.        Each Of Holomaxx's Claims Fails To State A Claim ......................................... 15
17
                        1.        Holomaxx Fails To State A Claim For Violation Of The Wiretap
18                                Act ........................................................................................ 15

19                      2.        Independent Of The CDA, Holomaxx Fails To State A Claim For
                                  Violation Of California Penal Code §§ 630 et seq. ................................. 18
20
                        3.        Holomaxx Fails To State A Claim For Violation Of The Stored
21                                Communications Act ................................................................... 19

22                      4.        Independent Of The CDA, Holomaxx Fails To State A Claim for
                                  Violation Of The Computer Fraud And Abuse Act ................................ 21

23                      5.        Independent Of The CDA, Holomaxx Fails To State A Claim For
                                  Intentional Interference With Contract Or Prospective Advantage .......... 22

24                      6.        Independent Of The CDA, Holomaxx Fails To State A Claim For
                                  Unfair Competition ..................................................................... 24

    IV.       CONCLUSION ................................................................................................ 25

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Ashcroft v. Iqbal*
    129 S. Ct. 1937 (2009) ............................................................................................ passim

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................... passim

*Beverly v. Network Solutions, Inc.*
    1998 U.S. Dist. LEXIS 20453 (N.D. Cal. 1998) ................................................... 24

*Black v. Google, Inc.*
    2010 U.S. Dist. LEXIS 82905 (N.D. Cal. 2010) ..................................................... 5

*Bohach v. City of Reno*
    932 F. Supp. 1232 (D. Nev. 1996) ........................................................................ 20

*Bradley v. Chiron Corp.*
    1996 WL 441022 (N.D. Cal. 1996), *aff'd*, 136 F. 3d 1317 (Fed. Cir. 1998) .................... 3, 14

*Bradley v. Google*
    2006 U.S. Dist. LEXIS 94455 (N.D. Cal. 2006) ............................................. 17, 18

*Bunnell v. Motion Picture Ass'n of Am.*
    567 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................ 19

*Cabanas v. Gloodt Assocs.*
    942 F. Supp. 1295 (E.D. Cal. 1996) ..................................................................... 22

*Cardinal Health 414, Inc. v. Adams*
    582 F. Supp. 2d 967 (M.D. Tenn. 2008) ............................................................... 17

*Cont'l Grp., Inc. v. Kw Prop. Mgmt, LLC*
    622 F. Supp. 2d 1357 (S.D. Fla. 2009) ................................................................ 21

*Crowley v. Cybersource Corp.*
    166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...................................................... 16, 17, 20

*Ebay, Inc. v. Bidder's Edge*
    100 F. Supp. 2d 1058 (N.D. Cal. 2002) ................................................................ 21

*Fraser v. Nationwide Mut. Ins. Co.*
    352 F.3d 107 (3d Cir. 2003) .................................................................................. 19

*Goddard v. Google*
    2008 U.S. Dist. LEXIS 101890 (N.D. Cal. 2008) ................................................... 7

*Goddard v. Google, Inc.*
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................................ 5, 6

**TABLE OF AUTHORITIES**

**(continued)**

**Page(s)**

*Howard v. America Online, Inc.*
  208 F.3d 741 (9th Cir. 2000) ................................................................ 16

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*
  2007 U.S. Dist. LEXIS 91644 (W.D. Pa. Dec. 13, 2007) ................................. 15, 17

*In Hall v. Martin Engineering Co.*
  597 F. Supp. 2d 651 (S.D. W.Va. 2009) ......................................................... 14

*Jewel Cos., Inc. v. Pay Less Drug Stores*
  510 F. Supp. 1006 (N.D. Cal. 1981) ..................................................................... 22

*Konop v. Hawaiian Airlines, Inc.*
  302 F.3d 868 (9th Cir. 2002) ............................................................................... 17

*Lewis-Burke Assocs. LLC v. Widder*
  No. 09-302-JMF, 2010 U.S. Dist. LEXIS 76180 (D.D.C. July 28, 2010) ............................. 21

*LVRC Holdings LLC v. Brekka*
  581 F.3d 1127 (9th Cir. 2009) ............................................................................... 22

*Lyons v. Coxcom, Inc.*
  2009 U.S. Dist. LEXIS 122849 (S.D. Cal. Feb. 6, 2009) ...................................... 25

*Mendiondo v. Centinela Hosp. Med. Ctr.*
  521 F.3d 1097 (9th Cir. 2008) ................................................................................. 5

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*
  165 F.3d 891 (Fed. Cir. 1998) ............................................................................... 14

*Morgan v. Harmonix Music Sys., Inc.*
  2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009) ...................................... 25

*Morrison v. America Online, Inc.*
  153 F. Supp. 2d 930 (N.D. Ind. 2001) ................................................................ 11

*Motorola, Inc. v. Lemko Corp.*
  2010 U.S. Dist. LEXIS 25778 (N.D. Ill. 2010) .................................................... 20

*Munch v. Sears, Roebuck & Co.*
  2008 U.S. Dist. LEXIS 76822 (N.D. Ill. 2008) ...................................................... 9

*MySpace, Inc. v. Wallace*
  498 F. Supp. 2d 1293 (C.D. Cal. 2007) ................................................................ 23

*Role Models Am, Inc. v. Jones*
  305 F. Supp. 2d 564 (D. Md. 2004) ...................................................................... 22

*Schindler v. Marshfield Clinic*
  2006 U.S. Dist. LEXIS 37937 (W.D. Wis. 2006) ................................................... 22

## TABLE OF AUTHORITIES

**(continued)** **Page(s)**

*Secureinfo Corp. v. Telos Corp.*
387 F. Supp. 2d 593 (E.D. Va. 2005)............................................................ 21

*Snow v. DirecTV, Inc.*
450 F.3d 1314 (11th Cir. 2006)..................................................................... 20

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001)........................................................................... 5

*Stearns v. Select Comfort Retail Corp.*
2010 U.S. Dist. LEXIS 84777 (N.D. Cal. 2010)...................................... 3, 14

*Steve Jackson Games, Inc. v. U.S. Secret Service*
36 F.3d 457 (5 th Cir. 1994) ......................................................................... 17

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*
7 F.3d 1434 (9th Cir. 1993)...................................................................... 23, 24

*U.S. v. Turner*
528 F.2d 143 (9th Cir. 1975)......................................................................... 18

*U.S. v. Villanueva*
32 F. Supp. 2d 635 (S.D.N.Y. 1988)............................................................. 15

*Weisbuch v. Co. of Los Angeles*
119 F.3d 778 (9th Cir. 1997)........................................................................... 6

*White Buffalo Ventures LLC v. Univ. of Texas*
2004 U.S. Dist. LEXIS 19152 (W.D. Tex. 2004) ......................................... 23

*Young v. Facebook*
Case No. 5:10-cv-03579 JF, Dkt. 61 at 6, 9-10 (N.D. Cal., May 17, 2011) ......................... 12

*Zango, Inc. v. Kaspersky*
2007 U.S. Dist. LEXIS 97332 (W.D. Wash. Aug. 28, 2007), *affirmed by* 568 F.3d
1169 (9th Cir. 2009).............................................................................. 6, 7, 9

### CALIFORNIA CASES

*CashCall, Inc. v. Superior Court*
159 Cal. App. 4th 273 (2008)........................................................................ 18

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal. 4th 163 (1999) .................................................................................. 25

*Chavez v. Whirlpool Corp.*
93 Cal. App. 4th 363 (2001)........................................................................... 25

*Della Penna v. Toyota Motor Sales*
11 Cal. 4th 376 (1995) .................................................................................. 23

**TABLE OF AUTHORITIES**

(continued)                                                            Page(s)

*Korea Supp. Co. v. Lockheed Martin*
    29 Cal. 4th 1134 (2003) ................................................................................ 23

*Lazar v. Hertz Corp.*
    69 Cal. App. 4th 1494 (1999)........................................................................ 25

*People v. Chavez*
    44 Cal. App. 4th 1144 (1996)........................................................................ 18

*People v. Ratekin*
    212 Cal. App. 3d 1165 (1989)........................................................................ 18

*PG & E v. Bear Stearns & Co.*
    50 Cal. 3d 1118 (1990) ................................................................................ 23

*Quelimane Co. v. Stewart Title Guar. Co.*
    19 Cal. 4th 26 (1998) ................................................................................ 23

**FEDERAL STATUTES**

15 U.S.C. §§ 7701, *et seq*.................................................................................. 3, 8

18 U.S.C. §§ 1030, *et seq*................................................................................ 1, 21

18 U.S.C. §§ 2510, *et seq.* .................................................................................. 1

18 U.S.C. § 2511(2)(a)(i) .................................................................................. 15

18 U.S.C. § 2511(2)(d)........................................................................................ 17

18 U.S.C. § 2518(10)(c) ...................................................................................... 19

18 U.S.C. §§ 2701, *et seq.* .................................................................................. 1

18 U.S.C. § 2701(c)(1) ........................................................................................ 19

18 U.S.C. § 2701(c)(2) ........................................................................................ 17

47 U.S.C. §§ 230 (b)(3), (f)(2) .............................................................................. 7

47 U.S.C. § 230(c) ................................................................................................ 8

47 U.S.C. § 230(c)(2)........................................................................................ 6, 7

**CALIFORNIA STATUTES**

California Business & Professions Code §§ 17200, *et seq* ...................................... 1, 24

California Penal Code §§ 630, *et seq.* ...................................................................... 1, 18

**TABLE OF AUTHORITIES**

(continued)                                                      Page(s)

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ................................................................... 1, 5

1   **NOTICE OF MOTION AND MOTION**

2       **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3       PLEASE TAKE NOTICE that on July 15, 2011 at 9:00 a.m., or as soon thereafter as the

4   matter may be heard, in the courtroom of the Honorable Jeremy Fogel, United States District

5   Court, 280 S. First Street, San Jose, California 95113, Microsoft Corporation ("Microsoft") will

6   move the Court for an order dismissing the Complaint of Holomaxx Technologies Corporation

7   pursuant to Federal Rule of Civil Procedure 12(b)(6).

8

9   Dated: May 20, 2011               Orrick, Herrington & Sutcliffe LLP

10

11                                   /s/ Gabriel M. Ramsey

                                GABRIEL M. RAMSEY

12                                   Attorneys for Defendant

                                MICROSOFT CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICROSOFT'S MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    The Court properly dismissed Holomaxx Technologies Corp's ("Holomaxx") original

4    Complaint ("Complaint") on the grounds that most claims were barred by Section 230 of the

5    Communications Decency Act ("CDA") and based on Holomaxx's failure to provide legally

6    sufficient support for the remaining Wiretap Act and Stored Communications Act claims.  *See*

7    Dkt. 30.  Despite the opportunity to amend, the allegations in Holomaxx's First Amended

8    Complaint ("FAC") remain deficient and should be dismissed, this time with prejudice.

9    While properly dropping its previously alleged defamation and "false light" claims,

10   Holomaxx re-alleges seven causes of action, specifically: (1) 18 U.S.C. §§ 2510, *et seq.* (The

11   Wiretap Act); (2) 18 U.S.C. §§ 2701, *et seq.* (The Stored Communications Act); (3) 18 U.S.C. §§

12   1030, *et seq*. (Computer Fraud and Abuse Act); (4) Intentional Interference with Contract; (5)

13   Intentional Interference with Prospective Business Advantage; (6) California Penal Code §§ 630,

14   *et seq.* (Wiretapping/Eavesdropping); and (7) California Business & Professions Code §§ 17200,

15   *et seq* (Unfair Competition).

16   Holomaxx's claims remain deficient for the same reasons that the Court previously

17   dismissed them.  First, Claims 3-7 are barred by the CDA and the few conclusory, irrelevant and

18   inconsistent allegations that Holomaxx has added are insufficient to overcome this conclusion.[1]

19   Holomaxx now argues on two bases that Microsoft's decision to filter was purportedly in "bad

20   faith."  First, Holomaxx asserts that Microsoft's alleged deviation from a purported set of optional

21   "common practices" regarding abuse scenarios, found in a third-party group's meeting notes,

22   somehow demonstrates "bad faith" in its decision to filter.  Second, Holomaxx disingenuously

23   asserts that Microsoft's decision was purportedly motivated to restrain Holomaxx from competing

24   in the advertising marketplace.  From the mere allegation that Microsoft and Holomaxx share one

25   advertiser and advertise "the same or similar goods and services," Plaintiff draws the startling and

26   untenable conclusion that Microsoft acted in "bad faith."

27

---

28   [1] Demonstrating the lack of new allegations and for the Court's convenience, a black-lined
version of the FAC is attached as Exhibit A hereto, highlighting new and deleted allegations.

MICROSOFT'S MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

These factual allegations regarding Microsoft's decision to filter are the *only* additional bases set forth beyond Holomaxx's original complaint and none is legally sufficient to support Holomaxx's claims. First, as Holomaxx admits, CDA Section (c)(2)(B) does not even require "good faith," and Microsoft's email filtering is immune under that provision. Second, the new assertions are legally insufficient to establish an absence of good faith under CDA Section (c)(2)(A).[2] For these reasons Claims 3-7 should be dismissed with prejudice.

Further, Holomaxx fails to sufficiently plead essential elements of its claims under the Wiretap Act, Stored Communications Act or any of its other federal or state claims. Holomaxx's complaint establishes that Microsoft did nothing more than access its *own* computers, to protect its own rights, property interests and customers. This is not actionable under the Wiretap Act, Stored Communications Act or any other asserted law. Holomaxx has no contractual or other right to unilaterally access and abuse Microsoft's email systems, as it has done repeatedly. Microsoft has no obligation under the law to allow Holomaxx to deliver any email to Microsoft's system, much less the millions of emails at issue, and has no duty to provide support to Holomaxx in its attempt to abuse the email system. For these reasons, Holomaxx fails to state a claim on any cause of action and the complaint should be dismissed with prejudice.

## II.       FACTUAL BACKGROUND

Microsoft is one of the world's largest interactive computer service providers and provides email accounts to millions of Internet users. FAC ¶ 27. Emails sent to Microsoft account holders reside on Microsoft's servers; users can then access Microsoft's servers to view or download messages. The operation of Microsoft's online email servers is similar to those offered by many other major email service providers. A significant percentage of emails are objectionable and burdensome commercial solicitations, *i.e.* "spam" email. In 2003, Congress found the sheer volume of spam email to be objectionable, observing that spam "is currently estimated to account for over half of all electronic mail traffic … and the volume continues to

---

[2]  Rather than repeat argument already briefed and to streamline the issues, Microsoft focuses the CDA discussion on the new "bad faith" allegations and the independent bases for the motion to dismiss. Microsoft incorporates herein by reference all arguments and authority set forth in its original Motion to Dismiss (Dkt. 19) and Reply in Support of Motion to Dismiss (Dkt. 26).

rise." 15 U.S.C. § 7701(a)(2). Congress recognized that "[t]he growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services … that carry and receive such email." § 7701(a)(6). In response to these problems, and like all industry participants, Microsoft uses proprietary software to identify, filter, and block objectionable email messages. To maintain the stability and reliability of its network, and to limit the amount of objectionable spam email that reaches its users' mailboxes, Microsoft uses its software, feedback from abandoned user accounts, industry evaluation and reputation scores, marking of email by users as "spam," and other factors to filter out messages having characteristics of inappropriate commercial email. FAC ¶¶ 27-29, 41, 47, 53.

Holomaxx, which describes itself as an "email marketing service," sends bulk commercial emails to millions of Internet users, including Microsoft email accountholders. FAC ¶¶ 17-19, 21-22. Holomaxx admits that it sends 10 million emails *per day*, including an estimated 3 million emails to Microsoft users every day. *Id.* ¶ 22. Holomaxx further admits that it sends thousands of *unwanted* emails everyday: by its own calculations, over *40,000-60,000* emails to Microsoft *every week* are either returned as invalid or result in a user opting-out—hallmarks of bulk "spam" email.[3] *Id.* ¶ 22 (3 million emails to Microsoft); ¶ 26 (.2% - .3% of emails are to an invalid address or result in a user opt-out). Holomaxx alleges that beginning in about November 2009, Microsoft's filtering software began blocking emails directed at Microsoft's email accountholders because the emails contained "spam-like characteristics" or had "IP/domain reputation problems," and alleges that as part of its filtering Microsoft accessed information from the emails. *Id.* ¶¶ 14, 38-41. As alleged, Microsoft informed Holomaxx of the blocking of emails through error messages and emails. *Id.* ¶¶ 38-41. Holomaxx admits that it attempted to circumvent Microsoft's spam filters by moving to new IP addresses, but Microsoft's "SmartScreen filter" system recognized the email emanating from the new IP addresses as violating Microsoft's spam policies

---

[3] While the FAC now inexplicably asserts a .2%-.3% rate of Holomaxx emails to Microsoft that are invalid or result in user opt-out, the original complaint alleges a .5% rate which results in over *100,000* emails every week sent to Microsoft users which are invalid or result in users opting-out. The Court should strike these new, inconsistent allegations as false and a sham. *Stearns v. Select Comfort Retail Corp.*, 2010 U.S. Dist. LEXIS 84777, *38-40 (N.D. Cal. 2010); *Bradley v. Chiron Corp.*, 1996 WL 441022, *5 (N.D. Cal. 1996), *aff'd*, 136 F. 3d 1317, 1324 (Fed. Cir. 1998).

1    as well, and thus blocked it.  *Id.*

2         In its FAC, Holomaxx alleges four sets of facts, none sufficient to support its claims:

3         First, Holomaxx asserts that Microsoft has systems to filter spam email (based on, among

4    other things, proprietary software, industry evaluation and reputation scores, marking of email by

5    users as "spam" and other factors), that those systems were applied to Holomaxx's email, but that

6    Holomaxx believes some different criteria should be used because it claims its emails comply

7    with the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the

8    "CAN-SPAM Act"), 15 U.S.C. section 7701, *et seq.*  *Id.* ¶¶ 8-9, 25, 27-29, 38-43.

9         Second, Holomaxx asserts that Microsoft deviates from practices set forth in a collection

10   of meeting notes describing admittedly "optional," non-binding "common practices" in abuse

11   desk environments, generated during a meeting of the Messaging Anti-Abuse Working Group

12   ("MAAWG").  Holomaxx affirmatively puts at issue and relies on this document in its Complaint

13   (*see id.* ¶¶ 9-13, 31, 41, 53) and thus Microsoft concurrently requests that the Court take judicial

14   notice of this document.  Despite the fact that Holomaxx admits in its complaint that the

15   substance of these notes are merely "options," it incorrectly characterizes them as an "objective

16   industry standard protocol" for internet service providers' responses to blocked senders.  *Id.*

17        Third, Holomaxx now makes the naked claim that Microsoft's motivation behind filtering

18   Holomaxx's emails stems from the purported desire to prevent Holomaxx from competing in the

19   internet advertising marketplace, despite the fact that Holomaxx previously asserted that the

20   reason for filtering was to restrict access to material Microsoft deemed objectionable.  *See* FAC ¶

21   16; s*ee also* Compl. ¶¶ 20-24, 31-36, 49-51.  Holomaxx makes this allegation solely on the basis

22   that it allegedly shares one advertiser with Microsoft (*i.e.* the "Olive Garden") and more vaguely

23   that it shares advertisers for "the same or similar goods."  *See* FAC ¶¶ 16, 44, Exs. A, B.

24        Fourth, Holomaxx asserts that to carry out filtering Microsoft allegedly accessed

25   Microsoft's *own* computers, email servers and systems, examined emails stored therein that had

26   been aimed by Holomaxx at Microsoft's accountholders and, based on the IP addresses and other

27   criteria, Microsoft filtered and blocked those emails.  *Id.* ¶¶ 14, 47.

28   **III.    <u>ARGUMENT</u>**

1    Holomaxx's Claims 3-7 are barred by the CDA, which protects providers, such as

2    Microsoft, who take actions to filter objectionable content.  Further, each of Holomaxx's Claims

3    1-7 should be dismissed for failure to state a claim, as Holomaxx fails to plead facts sufficient to

4    support those claims and it sets forth theories that are not recognized in the law.  On these bases,

5    the entire complaint should be dismissed with prejudice.

6        **A.**     **Motion To Dismiss Standard.**

7        A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) if, from the

8    face of the complaint, the plaintiff fails to state a claim.  Fed. R. Civ. P. 12(b)(6).  A plaintiff must

9    "provide the grounds of his 'entitle[ment] to relief' … [which] requires more than labels and

10   conclusions, and a formulaic recitation of a cause of action will not do … [f]actual allegations

11   must be enough to raise a right to relief above the speculative level …."  *Bell Atl. Corp. v.*

12   *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Dismissal is appropriate "where the

13   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

14   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For instance, this

15   Court recently granted a motion to dismiss where plaintiff's allegations, taken as true, would give

16   rise to conduct immunized by the CDA.  *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193,

17   1202 (N.D. Cal. 2009); *Black v. Google, Inc.*, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal. 2010).

18       Further, the Court need not credit conclusory allegations, unwarranted deductions of fact,

19   or unreasonable inferences.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Sprewell v.*

20   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Rule 12(b)(6) must be read in

21   conjunction with the pleading requirements of Rule 8(a)(2).  *Id.* at 988.  Rule 8(a)(2) requires a

22   "'showing,' rather than a blanket assertion, of entitlement to relief … [w]ithout some factual

23   allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of

24   providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim

25   rests."  *Twombly*, 550 U.S. at 556 n.3.  Though a pleading must contain "only enough facts to

26   state a claim to relief that is plausible on its face," *id*. at 570, if the "plaintiffs … have not nudged

27   their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*.

28       Finally, Rule 12(b)(6) dismissal is appropriate where the complaint shows a defense or bar

- 5 -

1   to recovery. *Weisbuch v. Co. of Los Angeles*, 119 F.3d 778, 783 n. 1 (9th Cir. 1997) ("If the

2   pleadings establish facts compelling a decision one way, that is as good as if depositions and

3   other expensively obtained evidence on summary judgment establishes the identical facts.").

**B.   The Communications Decency Act Bars Holomaxx's Third Through Seventh Claims—Holomaxx's Complaint Establishes That Microsoft Satisfies All Requirements Necessary For CDA Immunity.**

6          The CDA bars Holomaxx's Third through Seventh claims.  As detailed in Microsoft's

7   briefs in support of its initial Motion to Dismiss, the CDA immunizes providers of interactive

8   computer services from liability for filtering activities.  Claims 3-7 of Holomaxx's FAC are

9   predicated on Microsoft's filtering of email aimed by Holomaxx at Microsoft's customers.  Such

10  filtering cannot be the basis of liability pursuant to the CDA's "Good Samaritan" provisions:

> (c) **Protection for "Good Samaritan" blocking and screening of offensive material**
> …
> (2) … No provider or user of an interactive computer service shall be held liable on account of—
>
> (A) any action taken voluntarily in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in [subparagraph (A)]

47 U.S.C. § 230(c)(2) (emphasis added).  Congress enacted Section 230 to encourage voluntary

filtering of objectionable material and "to remove disincentives for the development and

utilization of blocking and filtering technologies."  *Id.* at § 230(b)(4).  Congress intended these

provisions to be broad, directing: "[n]o cause of action may be brought and no liability may be

imposed under any State or local law that is inconsistent with this Section." *Id.* 230(e)(3).

          Holomaxx's FAC establishes that Microsoft satisfies all of the CDA's requirements and,

thus, the complaint should be dismissed with prejudice. *See* 47 U.S.C. §§ 230(c)(2) (blanket

immunity); (e)(3) (barring state claims inconsistent with CDA immunity); *Zango v. Kaspersky*,

568 F.3d 1169, 1177-78 (9th Cir. 2009) (claims dismissed under CDA); *Goddard*, 640 F. Supp.

2d at 1202 (same); *e360Insight v. Comcast Corp.*, 546 F. Supp. 2d 605, 609-10 (2008) (same).

MICROSOFT'S MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1. **The Complaint Establishes That Microsoft Is An Interactive Computer Service Provider.**

The Court previously found that whether Microsoft is an interactive computer service provider "is not in dispute." Dkt. 30 at 8. As it previously alleged, Holomaxx asserts in the FAC that Microsoft is an ISP and email provider. *See* FAC ¶¶ 27. Microsoft is an "interactive computer service" provider under the CDA, and nothing in the FAC seeks to dispute this. *See* 47 U.S.C. §§ 230 (b)(3), (f)(2).

2. **CDA Section (c)(2)(A):  The Complaint Establishes That Microsoft Restricted Access To Material It Considers Harassing/Objectionable.**

In its FAC, Holomaxx establishes that Microsoft has taken action "to restrict access to or availability of material" that it "considers to be … harassing, or otherwise objectionable," as provided in CDA Section (c)(2)(A). Case law confirms that such CDA immunity adheres to the blocking of objectionable, bulk email. *See, e.g., e360Insight*, 546 F. Supp. 2d at 607 (bulk emails are types of communications a service provider could deem objectionable); *Optinrealbig.com*, 323 F. Supp. 2d at 1040 (defendant that collected and sent user complaints about spam email to ISPs, was protected by Section 230 in action by bulk email company). Indeed, consistent with prior decisions,[4] this Court has found that the inquiry into what is "harassing" or "objectionable" is a subjective determination to be made by the provider, not Holomaxx or the "intended recipient" of the material, as Holomaxx again argues. *See* Dkt. 30 at 7; *see also* FAC ¶¶ 20, 23.[5]

Moreover, this Court has also determined that Microsoft could reasonably conclude that the millions of Holomaxx emails sent to invalid addresses or resulting in user opt-out were "'harassing' and thus 'otherwise objectionable.'" Dkt. 30 at 7. Holomaxx attempts to circumvent

---

[4] *Goddard v. Google*, 2008 U.S. Dist. LEXIS 101890 at *22 (N.D. Cal. 2008) (CDA Section 230(c)(2) "allows [an interactive service provider] to establish *standards* of decency without risking liability for doing so."); *e360Insight*, 546 F. Supp. 2d at 608 (determination whether email is "objectionable" is "subjective" element); *Zango, Inc. v. Kaspersky*, 2007 U.S. Dist. LEXIS 97332, *6-7 (W.D. Wash. Aug. 28, 2007), *affirmed by* 568 F.3d 1169 (9th Cir. 2009) (Section 230(c)(2) "does not require that the material actually be objectionable; rather it affords protection for blocking material 'that the provider or user considers to be' objectionable")

[5] Holomaxx's position that the perspective of recipients purportedly determines whether email is "harassing" or "objectionable" is unreasonable. It would require major email providers to account for the potential views of each user every time email is filtered. This is impossible and contrary to Congress' intent to promote the development and use of filtering technologies.

1   the Court's finding by unilaterally lowering its previously alleged .5% figure to .2% in the FAC,

2   with no explanation.  *Compare* Compl. ¶¶ 19, 35 and FAC ¶¶ 26, 42.  Holomaxx admits that the

3   complaint rate could be as high as .3%.  FAC ¶ 26.  In any event, Holomaxx's manipulation of

4   the number is irrelevant.  Even if the Court were to apply Holomaxx's newly alleged .2%-.3%

5   figure, the result would still be two to three *million* invalid or unwanted emails sent by Holomaxx

6   to Microsoft's users each year.[6]  As the Court correctly noted, this number "is calculated with the

7   existing filtering technology and techniques in place."  Dkt. 30 at 8.  Under any set of Holomaxx's

8   alleged facts, there can be no doubt that given this outrageous volume, Microsoft could and did

9   consider Holomaxx's emails harassing and objectionable.

10          Holomaxx persists in making precisely the same allegations previously found insufficient

11  by the Court.  Holomaxx again asserts that its emails purportedly could not be considered

12  harassing or objectionable because: (1) the metrics and functionality of the spam filters are

13  allegedly "faulty," *see* FAC ¶¶ 9, 27-37, 41-42, 46-53, (2) the email content related to consumer

14  products and services, *see* FAC ¶¶ 19, and (3) that the spam emails were allegedly compliant with

15  the "CAN-SPAM" Act.  *See* FAC ¶¶ 20-25, 40.  As discussed in detail in Microsoft's originally

16  filed motion, these contentions are insufficient and legally irrelevant, and they have already been

17  found insufficient by this Court.  Dkt. 30 at 8.  Indeed, CAN-SPAM compliance and even

18  imperfection in the breadth of blocking are insufficient to disturb a service provider's

19  determination that email is objectionable and harassing.[7]  This is consistent with the CDA's core

20  legal and policy justifications: to protect businesses and individuals from unwanted content by

21  encouraging service providers such as Microsoft to develop and use filtering technologies without

22  fear of legal retribution by email marketers or other content providers.[8]  47 U.S.C. § 230(c).

---

23  [6] Under the previously alleged .5% figure this "amounts to more than five million invalid or
24  unwanted emails."  *See* Dkt. 30 at 7.

25  [7] *See e.g. e360Insight*, 568 F.3d at 607-09 ("compliance with CAN-SPAM, Congress decreed, does not evict the right of the provider to make its own good faith judgment to block mailings";
26  "[u]nder the law, a mistaken choice to block, if made in good faith, cannot be the basis for liability under federal or state law.")

27  [8] Congress recognized when it enacted the CDA that "[t]he problems associated with the rapid growth and abuse of unsolicited commercial electronic mail cannot be solved by Federal
28  legislation alone.  The development and adoption of technological approaches … will be necessary as well."  15 U.S.C. § 7701(a)(12).

In its Order dismissing the original Complaint, the Court noted that Holomaxx had not identified any "objective industry standard" that would disturb the conclusion that Microsoft could subjectively consider Holomaxx's emails to be harassing or objectionable.  Dkt. 30 at 8.  In its FAC, Holomaxx fails to set forth any such industry standard on that topic.  At most, as discussed further below, Holomaxx refers to admittedly optional practices relating to abuse desk protocols from a group called "MAAWG."  These allegations do not address the nature of "harassing" or "objectionable" email, much less establish any "industry standard" on that topic.[9] *See Munch v. Sears, Roebuck & Co.*, 2008 U.S. Dist. LEXIS 76822, *17-19 (N.D. Ill. 2008) (dismissing complaint, based in part on failure to sufficiently allege an industry standard)

Nothing in Holomaxx's FAC disturbs the conclusion that Microsoft reasonably and subjectively determined that Holomaxx's millions of spam emails were harassing and objectionable.  Accordingly, Microsoft meets this element for CDA immunity.

> ### 3.   CDA Section (c)(2)(B): The Complaint Establishes That Microsoft Took Action To Enable And Make Available Technical Means To Restrict Access To Harassing/Objectionable Content.

In its FAC, Holomaxx establishes that Microsoft took action to "enable" and "make available ... to others [*i.e.* Hotmail users] the technical means [*i.e.* a spam filter] to restrict access to" harassing or objectionable material, as set forth in CDA Section (c)(2)(B).  Congress intended that CDA Section (c)(2)(B) immunity apply to companies such as Microsoft that "enable" or "make available … to others" technical means to restrict access to objectionable, harassing content.  *See Zango*, 568 F.3d at 1175 (Congress intended to "immunize the providers of blocking software").  There is no legally cognizable distinction between the provision of software filtering tools immunized by the Ninth Circuit in *Zango* and the provision of email filtering tools by Microsoft here.  In *Zango*, the defendant defined plaintiff's software as objectionable and harassing and enabled tools for users that blocked the software.  *Id.*  Likewise, as Holomaxx

---

[9] Beyond this, Holomaxx makes the bare assertion that sending only one email per day and up to three a week to a given email address cannot be "objectionable" or "harassing," then casts that unilateral belief as a purported standard "[w]ithin the commercial email industry," with absolutely *no factual support* whatsoever.  *See* FAC, ¶ 23.  The assertion fails and, in any event, the appropriate standard is for Microsoft to decide, not Holomaxx.

admits in its FAC, Microsoft defined Holomaxx's email as harassing and objectionable and enabled tools for users to block that email.  *See* FAC ¶¶ 27, 41, 53 (admitting that Microsoft's SmartScreen filter "has been programmed to identify spam based on certain mailing characteristics").  Because Microsoft enables and provides to Hotmail users ("others" under the statute) the "technical means to restrict access" to emails determined to be objectionable and harassing, its filtering activities are subject to immunity under CDA Section (c)(2)(B).

### 4.   Microsoft's Good Faith Decision To Filter Holomaxx's Emails

#### a.   Good Faith Is Not Required For Section (c)(2)(B) Immunity

Given that Holomaxx directs its claims at Microsoft's enablement and provision of the means of filtering Holomaxx's emails aimed at Microsoft's customers—*i.e.* precisely the type of activity contemplated by CDA Section (c)(2)(B)—considering the issue of "good faith" is not necessary to the resolution of CDA immunity.  The absence of a "good faith" requirement is evident from the plain language of Section (c)(2)(B).  Indeed, in earlier briefing, Holomaxx expressly conceded that Section (c)(2)(B) has no good faith requirement.  Dkt. 24 at 5. Accordingly, regardless whether or not Holomaxx could plead an absence of good faith (and it cannot), Microsoft's filtering activities are immunized under this CDA safe harbor.  Holomaxx's Claims 3-7 should be dismissed with prejudice on the basis of Section (c)(2)(B) immunity.

#### b.   Holomaxx's Complaint Is Legally And Factually Insufficient To Demonstrate An Absence Of Good Faith.

None of the allegations in Holomaxx's FAC can establish an absence of good faith. Holomaxx's allegations establish that its email was filtered based on determinations of Microsoft's filtering system carried out in the ordinary course of the system's operation. Holomaxx admits that its emails were blocked "based on the recommendations of [Microsoft's] SmartScreen filter." FAC ¶ 41.  Further, Holomaxx admits that the system first blocked email sent from IP addresses referred to as the ".78 addresses" and then, after Holomaxx attempted to evade the system by obtaining different IP addresses (the ".88 addresses"), the system recognized that spam email was being sent from the new IP addresses and blocked those too.  FAC ¶¶ 38-41. In other words, contrary to any alleged "bad faith" act directed at Holomaxx, these allegations

1  reveal that Microsoft's filters *consistently* reached the same determination—*i.e.* that Holomaxx's

2  emails were objectionable—no matter from where they were emanating.[10]  Moreover, Holomaxx

3  does not and cannot contend that Microsoft treated it any differently than any other sender.  All

4  that is alleged is a very routine operation of Microsoft's email filters, applied to Holomaxx.

5          This is insufficient to show an absence of good faith and, as alleged, Microsoft's filtering

6  software is of the same type used by many other companies, including those that federal courts

7  have held immunized by the CDA.  *e360Insight*, 546 F. Supp. 2d at 606-610 (plaintiff failed to

8  sufficiently plead bad faith under *Twombly*; finding CDA immunity where defendant, like the

9  federal judiciary and other enterprises, used software filters to control email volume and to block

10  email deemed objectionable).  Indeed, the entire purpose of the CDA is to encourage Microsoft

11  and others to develop and implement precisely such filtering technologies.  *See Morrison v.*

12  *America Online, Inc.*, 153 F. Supp. 2d 930, 933-34 (N.D. Ind. 2001) ("Congress in enacting such

13  a provision wanted the industry to take proactive measures in self-regulating [] content").

14          Moreover, in its FAC, Holomaxx has not revised the "bad faith" contentions in its original

15  complaint in any way, except: (1) Holomaxx now attempts to refer to a set of notes discussing

16  voluntary, non-binding "common practices" in abuse desk environments, generated from a

17  meeting of the Messaging Anti-Abuse Working Group ("MAAWG"), and (2) Holomaxx attempts

18  to assert that because Microsoft and Holomaxx share a single advertiser and advertise similar

19  goods and services, that this allegedly supports the amazing leap that Microsoft's filtering is

20  purportedly the result of "anti-competitive" motivations.  Neither set of contentions is legally or

21  factually sufficient to show an absence of good faith.

22                    **(1)    Holomaxx's Allegations Concerning The "MAAWG"**
                             **Document Are Insufficient To Demonstrate An Absence**
23                           **Of Good Faith.**

24          In finding that Holomaxx failed to plead an absence of good faith, the Court stated that

25  one relevant consideration might be an "objective industry standard" bearing on the decision to

26  _____

27  [10]   Moreover, as alleged by Holomaxx in its complaints in this action and the co-pending action
    by Holomaxx against Yahoo!, three other companies—Yahoo!, Cisco Ironport Systems and
    Return Path—independently filtered and/or designated Holomaxx's email as objectionable.
28  Microsoft's good faith can be seen in its consistency with the determinations of others.

filter in the first instance.  Dkt. 30 at 8.  Holomaxx now puts forth a document of the Messaging Anti-Abuse Working Group ("MAAWG"), by which its members purportedly "should respond to blocked senders....," and Holomaxx alleges that this is purportedly an "objective industry standard protocol." FAC ¶¶ 9-10.

Holomaxx misses the mark.  While the Court suggests that an "objective industry standard" regarding decisions to filter might be one factor to consider in assessing good faith, the MAAWG document provides no guidance whatsoever on that issue.  Even assuming that the MAAWG document were some type of standard, Holomaxx's own allegations regarding the document demonstrate that it does not address what constitutes harassing or objectionable content or when such content should be blocked.  *See* FAC ¶¶ 9-13.  Rather, as recognized in the FAC, the MAAWG document merely discusses "options" for "abuse desk responses" open to service providers ***after*** filtering/blocking has already occurred.  *See* FAC ¶¶ 9-13.  Thus, the MAAWG document is legally irrelevant to the operative issue here which relates to the filtering—*i.e.* whether there is an "absence of good faith" in Microsoft's decision to filter in the first instance. *See* Dkt. 30 at 8.  It is not surprising that Holomaxx cannot point to any standard on that issue given that Congress left it to service providers to create their *own* standards in this regard.[11]

Further, as the Court already observed, once Holomaxx's email was blocked, Microsoft was under no duty to provide details about its proprietary filtering technology or to discuss its reasons for blocking:

> Nor does Holomaxx cite any legal authority for its claim that Microsoft has a duty to discuss in detail its reasons for blocking Holomaxx's communications or to provide a remedy for such blocking.  Indeed, imposing such a duty would be inconsistent with the intent of Congress to 'remove disincentives for the development and utilization of blocking and filtering technologies.' 47 U.S.C. § 230(b)(4).

Dkt. 30 at 8; *see also Young v. Facebook*, Case No. 5:10-cv-03579 JF, Dkt. 61 at 6, 9-10 (N.D. Cal., May 17, 2011) (no duty to respond to terminated website user as they desired; allegations of "cold, automated" customer service response failed to state a claim).  The MAAWG document

---

[11]  It is Microsoft's position that even if there were an industry standard on this topic, such would not be determinative of Microsoft's good faith, subjective decision to filter and that Congress enacted the CDA precisely because creating such standards would be virtually impossible.

MICROSOFT'S MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

does not change this conclusion.  Indeed, as alleged, the document merely states the unremarkable notion that there may be several "options" for responding to a request to unblock and sets forth a subset of such options.  FAC ¶¶ 10-12.  To convert such "options" into a requirement of law would be flatly inconsistent with Congress' intent in the CDA, would place blocked senders in control of Microsoft's and others' email systems (Microsoft's own *property*) and would do away with the ability to meaningfully filter voluminous, harassing and objectionable email.  That cannot be the law and Holomaxx's claim in this regard should be rejected.

Moreover, the MAAWG document itself vividly reveals that it is very misleading for Holomaxx to refer to it as an "objective industry standard" of any kind.[12]  Rather, it is simply an assembly of "feedback" received at a series of meetings of this organization in 2006 and is prefaced with an express disclaimer that its contents are optional and that it is *not* a standard of any kind.  The document states on page 1:

> The intent of this document is to present options for abuse desk administrators for addressing common problems faced by abuse desks.  This is **not** intended to represent an absolute set of best practices.  It is our belief that what is "best" is frequently determined by the particular circumstances of the network.

Metanat Decl., Ex. A at 1 (emphasis in original).  The document, then, does not provide any additional factual support to overcome the deficiencies present in Holomaxx's original, and now the First Amended, complaint.[13]  Holomaxx fails to demonstrate that Microsoft's determination to filter its email was carried out in any manner other than good faith and Microsoft's filtering of Holomaxx's email is immunized by the CDA.

**(2)** **Holomaxx's Allegations Concerning Purported "Anti Competitive" Motivation Is Insufficient To Demonstrate An Absence Of Good Faith.**

---

[12]  Because Holomaxx explicitly relies on, incorporates, quotes from and puts at issue the MAAWG document in its FAC, the Court may appropriately take judicial notice of it, as set forth more fully in Microsoft's Request for Judicial Notice, submitted with this motion.  A copy of the MAAWG document is submitted as Exhibit A to the Declaration of Morvarid Metanat.

[13] Holomaxx again attempts to ground its "bad faith" assertion on an alleged relationship between Return Path, Inc. and Microsoft.  Holomaxx has not provided and cannot provide *any* factual basis for its allegations that Microsoft has a contract with Return Path, pursuant to which Microsoft profits from Return Path's services.  FAC ¶ 29. This contention alleged upon "information and belief" is wholly fictitious.  To the extent that Holomaxx's alleged grievances arise from Return Path's conduct, Holomaxx cannot assert its claims against Microsoft.  Notably, Holomaxx has already voluntarily dismissed Return Path from this action.

MICROSOFT'S MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1    Holomaxx's last ditch effort to salvage its claims is to simply add a naked assertion of

2    "anti-competitive motive" at the end of its previously rejected factual allegations.  *See* FAC ¶¶

3    27, 30, 44, 51, 61, 104.  The assertion that Microsoft purportedly filters emails to prevent

4    Holomaxx from competing in the advertising market is sheer conjecture.[14]  Holomaxx's sole basis

5    for this new theory is that "MICROSOFT advertises the same products and services advertised by

6    HOLOMAXX."  FAC ¶¶ 44.  Holomaxx provides screenshots of "MICROSOFT email

7    advertisements for the same or similar goods and services as advertised by HOLOMAXX."  *Id*.

8    *See* FAC at Exs. A & B.  However, the only advertiser that Holomaxx alleges it actually shares

9    with Microsoft is the "Olive Garden."  *See* FAC ¶¶ 16, 44; *compare* FAC at Ex. A, *with* FAC at

10   Ex. B.  Beyond that, Holomaxx fails to allege any particular facts that advertisers offer "the same

11   or similar goods"; that Holomaxx is or was in competition for the advertisers' business or that

12   Microsoft benefitted in any way from the alleged exclusion of Holomaxx from the competition.

13   The FAC is wholly devoid of any factual bases underlying these contentions.

14   More fundamentally, the FAC is completely lacking in any facts to establish that the

15   *reason* Microsoft filtered Holomaxx's email was to prevent Holomaxx from competing for

16   advertising business.  Nothing in the FAC could remotely support that inference.  Indeed,

17   Holomaxx does not even allege that any of the asserted advertisements were in emails that were

18   actually blocked.  Even assuming that Holomaxx and Microsoft competed for advertisements, the

19   mere fact of competition is legally insufficient to support a finding of "bad faith," much less the

20   staggering leap that Microsoft employs an email filtering system in a purported bad faith effort to

21   target Holomaxx.  *See e.g. In Hall v. Martin Engineering Co.*, 597 F. Supp. 2d 651, 662 (S.D.

22   W.Va. 2009) (Defendant's intent and desire to remove plaintiff from competition "are not

23   evidence of bad faith"); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir.

24   1998) ("a competitive commercial purpose is not of itself improper").

25   _____

26   [14]  It should also be rejected as implausible.  The Court need not accept Holomaxx's unfounded
     contention as true because new, inconsistent allegations in an amended complaint may be stricken
27   when they are false and a sham.  *Stearns*, 2010 U.S. Dist. LEXIS 84777 at *38-40; *Bradley*, 1996
     WL 441022 at *5 (granting motion to strike and dismiss later-filed complaint finding that plaintiff
28   could not, in good faith, have so diametrically reversed his recollection and position between the
     time of the filing of his original complaint and that of his second amended complaint).

MICROSOFT'S MOTION TO DISMISS FAC
                                                              CASE NO.: C 10-04924-JF

1    Moreover, Holomaxx admits facts demonstrating that Microsoft's system recognized its

2    email as spam, even after Holomaxx attempted to operate covertly from a new IP address range.

3    FAC ¶¶ 38-40.  Indeed, at most, the allegations of the FAC indicate that Microsoft filters emails it

4    determines to be harassing and objectionable to protect its systems and its users.  FAC ¶¶ 17-31,

5    38-51.  Given that Holomaxx affirmatively alleges that filtering of its email resulted from the

6    ordinary operation of Microsoft's spam filters and the complete absence of *facts* that filtering was

7    for any other reason, Holomaxx cannot meet the pleading standard set forth in *Twombly* and

8    *Iqbal.*  Holomaxx's speculative allegations of anti-competitive motivation have no merit.

9           **C.**     **Each Of Holomaxx's Claims Fails To State A Claim.**

10                 **1.**     **Holomaxx Fails To State A Claim For Violation Of The Wiretap Act.**

11    In its First Claim for Relief, Holomaxx alleges that Microsoft violated the Federal Wiretap

12    Act.  FAC ¶ 59.  In dismissing Holomaxx's original Wiretap Act claim, this Court ruled that

13    "Holomaxx's allegations are both conclusory and devoid of factual support.  Holomaxx does not

14    explain how Microsoft 'intercepted' its communications or how Microsoft 'used or disclosed' the

15    contents of those communications."  Dkt. 30 at 10.  Holomaxx does nothing new to improve the

16    sufficiency of its pleading and does not state a claim.  *Iqbal*, 129 S. Ct. at 1949-50 (citing

17    *Twombly*, 550 U.S. at 555, 557) ("A pleading that offers 'labels and conclusions' or 'a formulaic

18    recitation of the elements of a cause of action will not do.'").  This claim fails for several reasons.

19           First, the Wiretap Act provides that the operator of an electronic communication service

20    cannot be liable for interceptions carried out to protect the operator's rights or property:

21           It shall not be unlawful under this chapter for … an officer, employee, or agent of
      a provider of [an] … electronic communication service, whose facilities are used
22           in the transmission of [an] … electronic communication, to intercept, disclose, or
      use that communication in the normal course of his employment while engaged in
23           any activity which is a necessary incident to the rendition of his service or to the
      protection of the rights or property of the provider of that service…
24

25    18 U.S.C. § 2511(2)(a)(i); *see Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 U.S. Dist.

26    LEXIS 91644, *14-16 (W.D. Pa. Dec. 13, 2007) (dismissing Wiretap Act claims; defendant email

27    provider had right to monitor emails sent to one of its email addresses in order to protect its rights

28    and interests); *U.S. v. Villanueva*, 32 F. Supp. 2d 635, 639 (S.D.N.Y. 1988) (service provider

MICROSOFT'S MOTION TO DISMISS FAC
                                          CASE NO.: C 10-04924-JF

1   authorized to intercept customer communications to protect its rights or property); *cf. Howard v.*

2   *America Online, Inc.*, 208 F.3d 741, 751-53 (9th Cir. 2000) (holding that AOL could properly

3   exert control over the traffic it would accept).  As alleged in the FAC, Holomaxx has already

4   conceded that Microsoft accessed and filtered emails as part of an effort to protect itself and its

5   customers from spam. *See e.g.* FAC ¶¶ 27-29, 38-41.  Holomaxx admits that the spam filtering

6   software was run in the normal course of business operations.  *Id.*  The alleged acts are a

7   necessary incident to Microsoft's protection of its rights and property.  On this basis alone,

8   Holomaxx plainly fails to state a claim for violation of the Wiretap Act.

9           Second, Holomaxx's claim that Microsoft "intercepted" any electronic communications

10  remains deficient.  Holomaxx alleges, without any factual support, that Microsoft "intercepted"

11  electronic communications to Microsoft email accountholders.  FAC ¶¶ 14, 59.  Pursuant to

12  "information and belief," Holomaxx alleges:

13          MICROSOFT uses Bayesian filtering techniques which scans the content of
            HOLOMAXX'S email message body and headers for words and phrases
14          associated with alleged spam messages.
             . . .
15          In conjunction with the Bayesian technique, MICROSOFT also intercepts
            HOLOMAXX emails before they reach MICROSOFT's servers and uses a
16          distributed catalogue of signatures to detect spam.  These signatures are generated
            as a result of MICROSOFT user submissions in the past.  The HOLOMAXX
17          emails are intercepted and the contents scanned and compared to the catalogue of
            past signatures.  This is known as a collaborative filtration system.
18
    FAC ¶¶ 48-49.  Close examination of this language is warranted.  While Holomaxx conclusorily
19
    refers to alleged "techniques" for interception, it studiously avoids referring to any particular
20
    *device* used for purported interception.  Holomaxx's conjecture regarding vague "techniques" on
21
    some unidentified device are the type of "'naked assertion[s]' devoid of 'further factual
22
    enhancement'" that are insufficient to sustain a cause of action.  *Iqbal*, 129 S. Ct. at 1949 (internal
23
    citations omitted).  In fact—not surprisingly—the *only* device actually identified by Holomaxx in
24
    the FAC is Microsoft's own computers.  *Id.* ¶ 47.  It is settled that such computers cannot be an
25
    interception "device" under the Wiretap Act.  *See Crowley v. Cybersource Corp.*, 166 F. Supp. 2d
26
    1263, 1269 (N.D. Cal. 2001) (no interception under Wiretap Act where communication was not
27
    acquired by "us[e] [of] a device other than the drive or server on which the e-mail was received");
28

1    *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 U.S. Dist. LEXIS 91644, *12 (W.D. Pa. 2007)

2    ("The drive or server on which an email is received does not constitute a device for purposes of

3    the Wiretap Act.").  To hold an email service provider at whom a sender like Holomaxx directs

4    email liable for receiving those emails "would be akin to holding that one who picks up a

5    telephone to receive a call has intercepted a communication." *Crowley*, 166 F. Supp. 2d at 1269.

6            Similarly, Holomaxx's inability to point to any device other than Microsoft's own

7    computers as the location where the alleged "scanning" took place, makes plain that any such acts

8    could only have occurred when email was in storage on those computers.  Holomaxx already

9    admitted this, conceding in the original Complaint that Microsoft's access to the content of

10   Holomaxx's emails occurs at Microsoft's own computers.  Compl. ¶ 41 (emphasis added)

11   (Holomaxx alleges that Microsoft "accessed computers on which HOLOMAXX's confidential

12   email communications were **stored**.").[15]  It is settled that accessing stored emails is not an

13   "interception" under the statute.  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th

14   Cir. 2002) (for electronic communication to be "'intercepted' in violation of the Wiretap Act, it

15   must be acquired during transmission, not while it is in electronic storage"); *Steve Jackson*

16   *Games, Inc. v. U.S. Secret Service*, 36 F.3d 457, 460 (5th Cir. 1994) (interception means

17   acquisition at time of transmission); *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967,

18   979 (M.D. Tenn. 2008) ("unless an email is actually acquired in its split second transmission over

19   a computer network, it cannot be 'intercepted' as that term is reasonably understood."); *Bradley v.*

20   *Google*, 2006 U.S. Dist. LEXIS 94455, *13-14 (N.D. Cal. 2006) (dismissing Wiretap Act claim

21   against email service provider accused of removing/deleting e-email messages finding that

22   Wiretap Act only applies to communications intercepted or acquired during transition).  Absent

23   an "interception," there can be no liability.  *See Ideal Aerosmith*, 2007 U.S. Dist. LEXIS 91644 at

24   *10.  Accordingly, the Court should dismiss the First Claim for Relief.[16]

---

25   [15]  Holomaxx has not alleged how such "scanning" techniques can occur when a communication
     is *not* in storage on one of Microsoft's computer.  Given that Holomaxx alleges that a software
26   logic (e.g. "Bayesian filtering") scans email "content," the only rational inference from
     Holomaxx's alleged facts is that the software examined the stored content.

27   [16]  Microsoft reasserts under 18 U.S.C. § 2511(2)(d) and §2701(c)(2) that there can be no Wiretap
28   Act or Stored Communications Act violation because its users consented to the alleged access and
     filtering, pursuant to Microsoft's Terms of Service.

**2.      Independent Of The CDA, Holomaxx Fails To State A Claim For Violation Of California Penal Code §§ 630 *et seq*.**

In its Sixth Cause of Action, Holomaxx reasserts California Penal Code § 630 *et seq.*  This claim is analogous to the Federal Wiretap Act and fails for the same reasons.  First, the policy underlying Sections 631 and 632 "is to protect individuals' privacy rights against the secret eavesdropping (e.g., monitoring) of their telephone calls."  *CashCall, Inc. v. Superior Court*, 159 Cal. App. 4th 273, 294 (2008).  The plain language of these statutes and all authority indicates that they are intended to address devices to tap telephones and telegraphs that rely on physical cables/transmission lines or amplification devices to listen in on live or telephone communications.  *See U.S. v. Turner*, 528 F.2d 143, 155 (9th Cir. 1975); *People v. Chavez*, 44 Cal. App. 4th 1144, 1150 (1996), *People v. Ratekin*, 212 Cal. App. 3d 1165, 1168 (1989).  Microsoft has located no authority holding that these statutes could extend to email servers.

Second, Holomaxx fails to state a claim under Section 631.  Section 631 prohibits three sets of activity:  (1) intentional wiretapping; (2) willfully attempting to learn the contents of a communication in transit over a wire; and (3) attempting to use or communicate information obtained as a result of engaging in the foregoing activities.  Holomaxx fails to allege any facts showing intentional wiretapping or attempt to access communications "over a wire."  Like the Wiretap Act, Section 631 applies only to communications improperly obtained while they are "in transit."  Cal. Penal Code § 631.  Here, as with the Wiretap Act allegations, Holomaxx's bare allegation that communications were intercepted in transit is insufficient and is expressly contradicted by facts asserted in the Complaint and the FAC.  Holomaxx's Section 631 claim fails for the same reasons that its Wiretap Act claim fails.  *See Bradley*, 2006 U.S. Dist. LEXIS 94455, at *14-15 (granting defendant's motion to dismiss: "Like its federal counterpart, [Section 630 *et seq.*] … requires the *interception* of an electronic communication").

Third, Holomaxx fails to state a claim under Section 632.  Section 632 prohibit intentional "eavesdropping" or "recording" of a "confidential communication," without consent of the parties, "by means of any electronic or amplifying or recording device" regardless whether the communication is carried on by the parties "in the presence of one another" or by "telegraph,

telephone, or other device." Holomaxx simply recites the elements of the claim, but with no factual allegation of intentional "eavesdropping" or "recording," or any "electronic or amplifying" device to listen to or record secret conversations. Holomaxx's millions of mass marketing emails do not qualify as "confidential communications" and an email server is simply not the kind of recording device contemplated by the statute.

Fourth, because Holomaxx asserts precisely the same facts and legal theory under this statute and the Wiretap Act, the state claim is preempted. The Wiretap Act contains an express preemption: "The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications." 18 U.S.C. § 2518(10)(c). Recently, where plaintiff asserted Section 631 and the Wiretap Act under the same theory, the state law claim was dismissed as preempted. *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148 (C.D. Cal. 2007). Holomaxx's California Penal Code claim must be dismissed on this basis.

### 3. Holomaxx Fails To State A Claim For Violation Of The Stored Communications Act.

In its Second Claim for Relief, Holomaxx alleges that Microsoft violates the Stored Communications Act ("SCA"). FAC ¶ 66. In dismissing Holomaxx's Stored Communications Act claim, this Court ruled that Holomaxx's allegations were conclusory and lacked factual support, in that "[i]t fails to explain what facility or communication were accessed, or by whom, or how the alleged access exceeded particular authorization." Dkt. 30 at 11. In its FAC, Holomaxx does nothing to improve the sufficiency of its pleading and does not state a plausible claim. This claim fails for several reasons.

First, the SCA provides an exception for "conduct authorized (1) by the person or entity providing a wire or electronic service ...." 18 U.S.C. §2701(c)(1). Microsoft's alleged conduct is precisely the type of activity safeguarded by this portion of the SCA. Indeed, it is established that an authorized provider of electronic communication services like Microsoft cannot be held liable for conducting searches of its own stored communications under the SCA. *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 115 (3d Cir. 2003) ("[W]e hold that, because [plaintiff's]

email was stored on [defendant's] system (which [defendant] administered), its search of that email falls within §2701(c)'s exception to [the SCA]"); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) (defendant could not violate SCA when it retrieved pager text messages stored on its computer system because defendant "is the provider of the 'service'" and "service providers [may] do as they wish when it comes to accessing communications in electronic storage.").  As another Northern District of California judge summarized in dismissing a virtually identical ECPA/SCA claim:

> Crowley's second argument in support of his unauthorized access claim, which is that Amazon had limited access to its own systems, strains credulity. First, Crowley cites no authority in support of this argument. Second, a very similar argument was rejected by the court in State-Wide Photocopy Corp. v. Tokai Financial Services, Inc., 909 F. Supp. 137 (S.D.N.Y. 1995). In that case, the court said that, even assuming that a company's computers, through which it sent and received electronic communications, were "facilities through which an electronic communication service is provided," the computer could not have limited access to its own facilities." See  id. at 145. Amazon's access to its own systems is not limited under the ECPA.

*Crowley*, 166 F. Supp. 2d at 1272 (citations omitted).  As the provider of the alleged recipients' email accounts, the SCA does not apply to Microsoft's alleged access of emails.

Second, and relatedly, Holomaxx does not and cannot point to any "facility or communication[s]" accessed, beyond emails that reached and were stored on Microsoft's own computers.  As discussed above regarding the Wiretap Act claim, Holomaxx's FAC does not allege any access of computers beyond its own, and thus Holomaxx has failed to sufficiently plead this theory beyond what was rejected in its original complaint.  Similarly, Holomaxx's FAC fails to explain "how the alleged access exceeded a particular authorization" (Dkt. 30 at 11) in violation of the SCA.  Holomaxx cannot point to its own computers or any third party computer that Microsoft allegedly accessed.  The fact is plain, at most what is alleged is that Microsoft accessed its own computers, which it is, of course, authorized to do.  The Court should dismiss Holomaxx's SCA claim. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 557; *Motorola, Inc. v. Lemko Corp.*, 2010 U.S. Dist. LEXIS 25778, *12-13 (N.D. Ill. 2010) (SCA claim dismissed for failure to plead access without authorization); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319-20 (11th Cir. 2006) (affirming dismissal where plaintiff "did not allege the material

1   elements necessary to state a claim under the SCA").

2       **4.**    **<u>Independent Of The CDA, Holomaxx Fails To State A Claim for</u>**
3                  **<u>Violation Of The Computer Fraud And Abuse Act</u>.**

4         Holomaxx's Third Claim for Relief for violation of the Computer Fraud and Abuse Act

5   ("CFAA"), 18 U.S.C. Section 1030, *et seq.*, is deficient for a variety of reasons.  First and

6   foremost, like the SCA claim, Holomaxx's assertions are predicated on the facially impossible

7   theory that Microsoft is liable for accessing without authorization *its own servers and/or*

8   *computers* in the process of filtering objectionable email.  FAC ¶ 47 (alleging that Microsoft

9   improperly "accessed computers on which HOLOMAXX's confidential email communications

10  were stored").  Nowhere in the Complaint does Holomaxx allege that Microsoft accessed any

11  computer or system belonging to Holomaxx or any other party.  Accessing a company's own

12  computers is not an unauthorized access to a "protected computer" in violation of the CFAA.

13  *e360Insight*, 546 F. Supp. 2d at 608 (dismissing identical CFAA claim directed at email filtering,

14  observing that it was "impossible" to see how filtering party "accesses a computer without

15  authorization"); *Cont'l Grp., Inc. v. Kw Prop. Mgmt, LLC*, 622 F. Supp. 2d 1357, 1372 (S.D. Fla.

16  2009) (an entity "clearly has a right to control and define authorization to access its own

17  computer systems"); *Ebay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2002)

18  (holding that an internet company's servers are its own "private property, conditional access to

19  which [the company] grants the public."); *Lewis-Burke Assocs. LLC v. Widder*, No. 09-302-JMF,

20  2010 U.S. Dist. LEXIS 76180 (D.D.C. July 28, 2010) (granting motion to dismiss CFAA claim

21  where defendant was authorized to access the computer); *Secureinfo Corp. v. Telos Corp.*, 387 F.

22  Supp. 2d 593 (E.D. Va. 2005) (CFAA claim dismissed where plaintiff did not properly allege that

23  defendants had "unauthorized access" to server or accessed the server in "excess of authority").

24        More generally, to the extent that Holomaxx is attempting to allege that some other

25  "protected computer" has allegedly been accessed in violation of the CFAA, it has failed to plead

26  this theory at all, let alone with sufficient particularity.  Holomaxx states no facts identifying such

27  computer or how alleged access was without or in excess of authorization, all of which is

28  necessary to state a claim under the CFAA.  Moreover, an email provider simply receiving and

1   processing email is not "accessing" a computer for purposes of the CFAA.  *See Role Models Am,*

2   *Inc. v. Jones*, 305 F. Supp. 2d 564, 567 n. 4 (D. Md. 2004) (passive act of receiving electronic

3   information does not qualify as "accessing").  Holomaxx also fails to allege a "knowing" "intent

4   to defraud" as required under Section 1030(a)(4).  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127,

5   1130-32 (9th Cir. 2009).  In fact, Holomaxx fails to even assert which provision of the CFAA it

6   relies on.  Such cursory legal conclusions and bare assertions devoid of requisite facts fail to state

7   a claim.  *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 557.  For these reasons, Holomaxx's

8   Third Claim for Relief should be dismissed.

9          **5.      Independent Of The CDA, Holomaxx Fails To State A Claim For
            Intentional Interference With Contract Or Prospective Advantage.**

10

11          In its Fourth and Fifth Claims for Relief, Holomaxx alleges that Microsoft interfered with

12   Holomaxx's contractual and prospective business relationships by filtering and blocking its

13   email/IP addresses.  FAC ¶ 81.  These claims are meritless.

14          First, these claims fail because Microsoft has no obligation to deliver Holomaxx's emails

15   or to allow Holomaxx to maximize profits under its contracts or relationships.  No such duty

16   exists under California law or otherwise and thus Holomaxx's "intentional interference" claims

17   fail.  *See e360Insight*, 546 F. Supp. 2d at 609 n. 3 (provider has no obligation to deliver messages

18   or run advertisements, finding no cases where "refusal to allow a plaintiff to run an advertisement

19   in a medium with wide circulation ... constitutes a tortious interference").  Holomaxx cannot

20   show that Microsoft had any duty to allow Holomaxx's emails, much less the millions of

21   burdensome spam that it sends.  *See e.g. Schindler v. Marshfield Clinic*, 2006 U.S. Dist. LEXIS

22   37937 (W.D. Wis. 2006) (without showing that defendant was "duty-bound to perform the acts he

23   alleged it had not performed" motion to dismiss must be granted).

24          Second, as Holomaxx admits, the purpose of filtering was to "identify spam." FAC ¶ 30.

25   Thus, Microsoft's actions were justified, as a matter of law, as Microsoft was simply attempting

26   to protect its customers and legitimate economic interests.  *See Cabanas v. Gloodt Assocs.*, 942 F.

27   Supp. 1295, 1306 (E.D. Cal. 1996) ("[n]ot every interference with contract or economic

28   advantage is a tort"); *Jewel Cos., Inc. v. Pay Less Drug Stores*, 510 F. Supp. 1006, 1011 (N.D.

1    Cal. 1981) (interference is justified "when the person is seeking to protect an interest of greater

2    social value than that attached to the stability of the contract involved.").  Further, as recognized

3    by Congress in enacting the CDA and numerous courts, a broader important social interest is

4    implicated in reducing exposure to bulk email.  *See MySpace, Inc. v. Wallace*, 498 F. Supp. 2d

5    1293, 1306 (C.D. Cal. 2007); *White Buffalo Ventures LLC v. Univ. of Texas*, 2004 U.S. Dist.

6    LEXIS 19152, *17-20 (W.D. Tex. 2004) (detailing the burden of spam).

7          Third, Holomaxx fails to meet its burden of pleading the elements of these claims.[17]

8    Holomaxx alleges vaguely that Microsoft interfered with its relationships and contracts with

9    several customers that allegedly contracted with Holomaxx to send bulk emails and with its

10   hosting company Dragon Networks.  FAC ¶¶ 45, 81, 93.  The only change beyond the original

11   complaint is that Holomaxx now lists the names of particular customers.  Holomaxx fails to plead

12   that Microsoft had knowledge of these specific contracts or relationships and that it engaged in

13   conduct intentionally aimed at disrupting them.  *Korea Supply Co.*, 29 Cal. 4th at 1156-57

14   (intentional interference with business advantage requires that defendant "kn[ew] that the

15   interference was certain or substantially certain to occur as a result of his action"); *Quelimane Co.*

16   *v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998) (intentional interference with contract

17   requires that interference was a necessary consequence of its actions).

18         There is nothing in the FAC alleging that Microsoft knew of these specific contracts or

19   relationships with customers or with Dragon Networks at the time it allegedly blocked

20   Holomaxx's IP Addresses.  *See Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*, 7 F.3d 1434,

21   1442-43 (9th Cir. 1993) (intentional interference claims failed where no evidence that defendant

---

[17]  Intentional interference with contract requires: (1) a valid contract between Holomaxx and a third party; (2) Microsoft's knowledge of the specific contract; (3) that Microsoft's intentional acts were designed to induce breach or disruption of the contract; (4) actual breach/disruption of the contract; and (5) resulting damage.  *See PG & E v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990).  The California Supreme Court has cautioned that intentional interference with prospective business advantage carries a "more rigorous pleading burden since it must show that the defendant's conduct was independently wrongful."  *Korea Supp. Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1158 (2003).  Accordingly, that claim requires: (1) an existing economic relationship between Holomaxx and a third party, containing a profitable future economic benefit or advantage to plaintiff; (2) that Microsoft knew of the existence of this specific relationship; (3) that Microsoft intentionally engaged in wrongful conduct designed to interfere with or disrupt this relationship; (4) that the economic relationship was actually interfered with or disrupted; and (5) resulting damage.  *See Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376 (1995).

MICROSOFT'S MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1    knew of contract or relationship at the time of alleged interference); FAC ¶ 44.  At most,

2    Holomaxx refers to an email from April 30, 2010, which vaguely asserts that if email "does not

3    get through, we lose money because they don't pay us for undelivered mail."  *Id*.  This alleged

4    communication fails to refer to any particular contract or relationship and came well after the

5    November 20, 2009 date on which Holomaxx alleges that filtering of its email began.  *Id*. ¶ 38.

6    Moreover, the complaint makes clear that an automated software process filtered Holomaxx's

7    email because it was determined to be spam (FAC ¶¶ 38-41); Holomaxx's prospective business

8    relationships and contracts never entered into the equation and Holomaxx has failed to provide

9    sufficient factual support indicating otherwise.  *See Beverly v. Network Solutions, Inc.*, 1998 U.S.

10   Dist. LEXIS 20453, *26-29 (N.D. Cal. 1998) (automated registration of domains insufficient to

11   impute to domain registrar knowledge or intent to interfere).[18]

12          Nor was Microsoft's alleged blocking of the IP addresses independently wrongful.  As

13   discussed above, the accused acts were legally justified, immunized under the CDA and otherwise

14   lawful under each of Holomaxx's theories.  For these reasons, and because Holomaxx's claims

15   are barred by the CDA, Holomaxx's Fourth and Fifth Claims should be dismissed.

16                   **6.     Independent Of The CDA, Holomaxx Fails To State A Claim For
                             Unfair Competition.**

17

18          Holomaxx's Seventh Claim asserts Unfair Competition under California Business and

19   Professions Code Section 17200, *et seq.* ("UCL").  Holomaxx fails to plead facts to support its

20   UCL claim.  First, Microsoft's alleged conduct falls within the safe harbor protections of the

21   CDA.  Second, even if the CDA did not bar Holomaxx's UCL claim, Holomaxx fails to plead an

22   underlying statutory violation to show that any conduct was unlawful, fails to plead that

23   Microsoft's conduct was fraudulent, and fails to sufficiently plead that Microsoft's conduct was

24   unfair.  Accordingly, Holomaxx's UCL claim must be dismissed.

25          Because Holomaxx cannot state a claim on any of its theories, it fails to state a claim

26   ───────────────────
     [18]  Moreover, Holomaxx provides no support at all that its relationship or contract with Dragon
27   Networks was actually disrupted—or that it is no longer Holomaxx's data center—but only
     claims it did not receive the benefits of its contract (FAC ¶¶ 82, 91).  It fails to convert these
28   allegations into "plausible" facts to support relief.  *Twombly*, 550 U.S. at 555 (Complaint must
     contain factual allegations sufficient to "raise a right to relief above the speculative level.").

MICROSOFT'S MOTION TO DISMISS FAC
                                              CASE NO.: C 10-04924-JF

1  under either the "unfair" or "unlawful" prongs of the UCL.  *See Chavez v. Whirlpool Corp.*, 93

2  Cal. App. 4th 363, 375 (2001) ("If the same conduct is alleged to be both [a violation of one law]

3  and an 'unfair' business act or practice for the same reason ... the determination that the conduct

4  is not [otherwise unlawful] necessarily implies that the conduct is not 'unfair' toward

5  consumers."); *Lyons v. Coxcom, Inc.*, 2009 U.S. Dist. LEXIS 122849 (S.D. Cal. Feb. 6, 2009)

6  ("Because Plaintiff fails to state a claim under [CLRA and other] statutory provisions, Plaintiff's

7  cause of action under the UCL for unlawful acts must also fail."); *Morgan v. Harmonix Music*

8  *Sys., Inc.*, 2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009) (same).

9       Indeed, the accused email filtering is immunized by the CDA.  *See Lazar v. Hertz Corp.*,

10  69 Cal. App. 4th 1494, 1505-06 (1999) ("The UCL does not apply if the Legislature has expressly

11  declared the challenged business practice to be lawful in other statutes.")  More generally, the

12  accused email filtering is entirely consistent with Congressional intent underlying the CDA and

13  thus cannot be "unfair" under the UCL.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

14  *Telephone Co.*, 20 Cal. 4th 163, 185 (1999) (to sustain UCL claim, "any finding of unfairness . . .

15  [must] be tethered to some legislatively declared policy.")[19]  Accordingly, the UCL does not

16  apply, Holomaxx's claim fails and it should be dismissed.[20]

17  **IV.**    **CONCLUSION**

18       For the foregoing reasons, Microsoft respectfully requests that Plaintiff Holomaxx's

19  Complaint be dismissed in its entirety.  Microsoft further requests that the Complaint be

20  dismissed with prejudice due to the futility of Holomaxx's claims.

21  Dated: May 20, 2011                 Orrick, Herrington & Sutcliffe LLP

22

23                               /s/ Gabriel M. Ramsey

                            GABRIEL M. RAMSEY

24                              Attorneys for Defendant

                         MICROSOFT CORPORATION

25

---

26  [19]  To the extent that Holomaxx argues that Microsoft breached the "industry standards" set forth by the MAAWG, the MAAWG is not a legislative body nor has Holomaxx established that the

27  MAAWG standards are tied to any legislatively declared policy.

28  [20] Holomaxx fails to plead that Microsoft engaged in a practice that is "likely to deceive members of the public," and thus cannot sustain a cause of action under the "fraud" prong of the UCL."