1   I. NEEL CHATTERJEE (SBN 173985)
    nchatterjee@orrick.com
2   GABRIEL M. RAMSEY (SBN 209218)
    gramsey@orrick.com
3   MORVARID METANAT (SBN 268228)
    mmetanat@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA  94025
    Telephone:     650-614-7400
6   Facsimile:     650-614-7401

7   Attorneys for Defendant
    MICROSOFT CORPORATION

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12

13  HOLOMAXX TECHNOLOGIES, a           Case No.  C 10-04924-JF
    Pennsylvania Corporation,
14                                     **DEFENDANT MICROSOFT
                   Plaintiff,          CORPORATION'S REPLY IN
15                                     SUPPORT OF MOTION TO DISMISS
          v.                           PURSUANT TO FED. R. CIV. P.
16                                     12(b)(6)**
    MICROSOFT CORPORATION, a Delaware
17  Corporation, and RETURN PATH, INC., a   Date:      July 15, 2011
    Delaware Corporation,              Time:      9:00 a.m.
18                                     Judge:     Honorable Jeremy Fogel
                   Defendant.          Courtroom:   Courtroom 3, 5th Floor
19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3      I.      INTRODUCTION ......................................................................................................... 1

4      II.     ARGUMENT ............................................................................................................... 1

               A.      Microsoft Is Protected Under The CDA Safe Harbor ............................................ 2

5                      1.      Holomaxx's Voluminous Email To Microsoft's Users Was
6                              Subjectively Objectionable And Harassing ................................................. 2

                       2.      Holomaxx Does Not Dispute Microsoft's Immunity Under CDA
7                              Section (c)(2)(B) ........................................................................................ 5

8                      3.      Holomaxx Cannot Show An Absence Of Good Faith In Microsoft's
                               Filtering Activity ........................................................................................ 5

9                              a.      Holomaxx's Assertion That SmartScreen Was Programmed
10                                     To Specifically Target Holomaxx Is Baseless And Irrelevant ....... 5

                               b.      Holomaxx Cannot Demonstrate Any Duty For Microsoft To
11                                     Explain The Reason For Blocking Its Email, And The
                                       MAAWG Document Is Not A "Standard" Of Any Kind .............. 7

12                             c.      Holomaxx's "Anti-Competitive" Allegation Is Sheer
                                       Speculation, And Fails Factually And Legally .............................. 8

13             B.      Holomaxx Fails To Sufficiently Allege The Wiretap Act .................................... 10

14             C.      Holomaxx Fails To Sufficiently Allege The Stored Communications Act ........... 12

15             D.      Holomaxx Fails To Sufficiently Allege The Computer Fraud & Abuse Act ....... 12

               E.      Holomaxx Fails To Sufficiently Allege Cal. Penal Code 630 et seq ................... 13

16             F.      Holomaxx Fails To Sufficiently Allege Intentional Interference ........................ 14

17             G.      Holomaxx Fails To Sufficiently Allege Cal Bus. & Prof. Code 17200 ............... 15

18     III.    CONCLUSION .......................................................................................................... 15

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ................................................................................................ passim

*AT&T v. Maydak,*
1995 U.S. Dist. LEXIS 22184 (W.D. Penn. 1995) ............................................................. 10

*Beverly v. Network Solutions, Inc.,*
1998 U.S. Dist. LEXIS 20453 (N.D. Cal. 1998) ................................................................. 14

*Bohach v. City of Reno,*
932 F. Supp. 1232 (D. Nev. 1996) ..................................................................................... 12

*Bradley v. Google,*
2006 U.S. Dist. LEXIS 94455 (N.D. Cal. 2006) ................................................................. 11

*Browning v. AT&T Corp.,*
682 F. Supp. 2d 832 (N.D. Ill. 2009) ................................................................................. 10

*Bunnell v. Motion Picture Ass'n of Am.,*
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................................. 14

*Cabanas v. Gloodt Assocs.,*
942 F. Supp. 1295 (E.D. Cal. 1996) ................................................................................... 15

*Crowley v. Cybersource,*
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ......................................................................... 11, 12

*Cvent, Inc. v. Eventbrite, Inc.,*
2010 U.S. Dist. LEXIS 96354 (E.D. Va. 2010) ................................................................. 13

*e360Insight LLC v. Comcast Corp.,*
546 F. Supp. 2d 605 (N.D. Ill. 2008) ............................................................................... passim

*eBay, Inc. v. Bidder's Edge,*
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................................. 13

*Fraser v. Nationwide Mut. Ins.,*
352 F.3d 107 (3rd Cir. 2003) ............................................................................................. 12

*Green v. America Online,*
318 F.3d 465 (3rd Cir. 2003) ............................................................................................... 4

**TABLE OF AUTHORITIES**
(continued)

Page

*HDC Med., Inc. v. Minntech Corp.*,
   474 F.3d 543 (8th Cir. 2007) ................................................................. 9

*Holomaxx v. Yahoo!*,
   No. CV-10-4926-JF, Dkt. No. 18 at 7 (N.D. Cal., March 11, 2011) ........................................ 3

*In re Pharmatrak*,
   329 F.3d 9 (1st Cir. 2003) ................................................................. 12

*Jewel Cos., Inc. v. Pay Less Drug Stores Nw, Inc.*,
   510 F. Supp. 1006 (N.D. Cal. 1981) ................................................................. 15

*Jones v. AIG*,
   726 F. Supp. 2d 1049 (N.D. Cal. 2010) ................................................................. 2

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ................................................................. 11

*Langdon v. Google*
   474 F. Supp. 2d 622 (D. Del. 2007) ................................................................. 2, 4

*Liles v. Stuart Weitzman, LLC*
   2010 U.S. Dist. LEXIS 53584 (S.D. Fla. 2010) ................................................................. 2

*Live Universe, Inc. v. MySpace, Inc.*
   2007 U.S. Dist. LEXIS 43739 (C.D. Cal. 2007) ................................................................. 9, 10

*LVRC Holdings, LLC v. Brekka*
   581 F.3d 1127 (9th Cir. 2009) ................................................................. 13

*Moss v. U.S. Secret Serv.*
   572 F.3d 962 (9th Cir. 2009) ................................................................. 9

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*
   2011 U.S. App. LEXIS 12457 (6th Cir. 2011) ................................................................. 1

*Oliveira v. Am. Home Mortgage Servicing, Inc.*
   689 F. Supp. 2d. 218 (N.D. Cal. 2010) ................................................................. 5

*Podany v. Robertson Stephens, Inc.*
   350 F. Supp. 2d. 375 (S.D.N.Y. 2004) ................................................................. 2

*Santiago v. Wells*,
   599 F.3d 749 (7th Cir. 2010) ................................................................. 2

# TABLE OF AUTHORITIES
(continued)

**Page**

*Silicon Image, Inc .v. Analogix*
  2007 U.S. Dist. Lexis 39599 (N.D. Cal 2007) ........................................................ 14

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ................................................................................. 5

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*
  7 F.3d 1434 (9th Cir. 1993) ................................................................................. 14

*Theofel v. Farey-Jones*
  359 F.3d 1066 (9th Cir. 2004) ............................................................................. 13

*Trace X Chemical, Inc. v. Canadian Industries, Ltd.*
  738 F.2d 261 (8th Cir. 1984) ................................................................................. 9

*United States v. Goldstein*
  532 F.2d 1305 (9th Cir. 1976) ............................................................................. 10

*United States v. Suibin Zhang*
  2010 U.S. Dist. LEXIS 123003 (N.D. Cal. Nov. 19, 2010) ................................... 13

*United States v. Szymuszkiewicz*
  622 F.3d 701 (7th Cir. 2010) ............................................................................... 12

*United States v. Warshak*
  2010 U.S. App. LEXIS 25415 (6th Cir. 2010) ...................................................... 10

*Verizon Comm'n, Inc. v. Law Off. of Curtis V. Trinko*
  540 U.S. 398 (2004) .............................................................................................. 9

*Young v. Facebook*
  2010 U.S. Dist. LEXIS 116530 (N.D. Cal. Oct. 25, 2010) ..................................... 7

*Zango v. Kaspersky Lab, Inc.*
  568 F.3d 1169 (9th Cir. 2009) ............................................................................... 4

### CALIFORNIA CASES

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal. 4th 1134 (2003) ...................................................................................... 15

### FEDERAL STATUTES

18 U.S.C. §§ 1030 *et seq.* .......................................................................................... 12

18 U.S.C. § 1030(a)(1)-(4) .......................................................................................... 12

# TABLE OF AUTHORITIES
(continued)

**Page**

18 U.S.C. § 2518(10)(c) .................................................................................................. 14

18 U.S.C. § 2701(c)(1) .................................................................................................... 12

47 U.S.C. § 230(c)(2)(a) ............................................................................................... 3, 7

## CALIFORNIA STATUTES

Cal. Bus. Prof. Code § 17200, *et seq.* ........................................................................... 15

Cal. Penal Code § 630 *et seq.* ......................................................................................... 13

Cal. Penal Code § 631 ..................................................................................................... 13

Cal. Penal Code § 632 ..................................................................................................... 13

## I.     **INTRODUCTION**

Defendant Microsoft Corporation (Microsoft) respectfully submits this reply memorandum in support of its Motion to Dismiss Plaintiff Holomaxx, Inc.'s ("Holomaxx") First Amended Complaint ("FAC").  Despite the opportunity to amend, Holomaxx's FAC fails to state facts or legal theories sufficient to constitute cognizable claims resulting from Microsoft's good faith efforts to filter Holomaxx's emails.  Microsoft's subjective determination that the vast *quantity* of Holomaxx's emails sent to its users was both objectionable and harassing is undoubtedly within Microsoft's rights as an interactive internet service provider.  Holomaxx has failed to sufficiently allege an absence of good faith in Microsoft's filtering activity, and Microsoft's filtering conduct is protected under the Communications Decency Act (CDA).  Congress has repeatedly made clear—through the safe harbor of the CDA, the Wiretap Act, and the Stored Communications Act—that providers of Internet services have the right to protect their borders.  Holomaxx's FAC reinforces that Microsoft's filtering and its alleged access to its own e-mail systems constituted protected activity as a matter of law.

Microsoft is immune under the CDA for its filtering activities.  Moreover, each of Holomaxx's causes of action remains insufficiently pled and fatally flawed.  Accordingly, Holomaxx's First Amended Complaint should be dismissed without leave to amend.

## II.    **ARGUMENT**

Each theory that Holomaxx puts forth is factually unsupported and is legally insufficient.  As recognized by Holomaxx, a claim may only proceed where it has "facial plausibility" based on "factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Holomaxx's assertions in the FAC are devoid of sufficient factual support and do not permit the inferences argued by Holomaxx.  They are thus implausible and fail under the principles of *Twombly* and *Iqbal*.

Where allegations do not meet this threshold standard, it is inappropriate to grant the type of factual "fishing expedition" that Holomaxx seeks here.  *See New Albany Tractor, Inc. v. Louisville Tractor, Inc*., 2011 U.S. App. LEXIS 12457, *8-10 (6th Cir. 2011) (denying request for discovery under *Iqbal* standard; plaintiff may not use discovery to obtain factual detail necessary

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

to survive a 12(b)(6) motion to dismiss because the language of *Iqbal* specifically directs that in the absence of a plausible claim, no discovery may be conducted, even when information needed to establish plaintiff's claim is purportedly solely within the purview of defendant or a third party); *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (discovery only authorized where plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim); *Liles v. Stuart Weitzman*, *LLC*, 2010 U.S. Dist. LEXIS 53584 (S.D. Fla. 2010) (refusing to permit discovery for the purpose of seeking to find some evidence of wrongful conduct).[1]  Because Holomaxx's allegations are not facially plausible, and the inferences it urges are unreasonable, it is not entitled to discovery and the matter should be disposed of on this motion to dismiss.

### A.     Microsoft Is Protected Under The CDA Safe Harbor.

#### 1.     Holomaxx's Voluminous Email To Microsoft's Users Was Subjectively Objectionable And Harassing.

Congress intended that CDA immunity apply to a broad array of content.  Courts have repeatedly held that filtering of email, advertisements and similar electronic content are within the CDA safe harbors.  *See Langdon v. Google*, 474 F. Supp. 2d 622, 630-631 (D. Del. 2007) (defendant immune under the CDA where it restricted plaintiff's advertisements from its website because such content could be deemed objectionable by defendant).  Holomaxx recognizes that at least one court has specifically found that marketing emails like those asserted by Holomaxx are the type of content subject to CDA immunity.  *See e360Insight LLC v. Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill. 2008).

The CDA immunizes Microsoft's filtering activities.  First, it is well established that the CDA authorizes interactive service providers to make subjective determinations regarding what is objectionable and harassing.  As such, it is Microsoft's role, as the operator of its email service, to

---

[1] Holomaxx's cited cases in support of their request for discovery are readily distinguishable.  In *Jones v. AIG Management*, plaintiff was permitted to take limited discovery where the allegations in the complaint went beyond mere conjecture or speculation and were premised on defendant's duty to plaintiff pursuant to an insurance agreement—the existence of which was confirmed.  726 F. Supp. 2d 1049, 1056 (N.D. Cal. 2010).  The court allowed leave to amend with discovery to determine the parties and specific obligations under the agreement.  Here, Holomaxx has not provided a plausible theory on which to premise its claims.  *Santiago v. Walls* does not even involve the Court's grant of discovery at the pleading stage of litigation. 599 F.3d 749 (7th Cir. 2010).

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1   make determinations when the volume or other attributes of incoming email from a given source

2   becomes abusive and should be filtered out in the best interest of Microsoft and its users. This is

3   precisely what the CDA contemplates.

4          While Holomaxx attempts to rehash its argument that "otherwise objectionable" as it

5   appears in Section 230 must be construed to be only directly related to any of the specific terms

6   preceding it, i.e. obscene, lewd, lascivious, filthy, excessively violent, or harassing, it ignores that

7   the Court has already determined that, from the overwhelming volume of emails Holomaxx

8   imposed, "it is clear … that Microsoft reasonably could conclude that Holomaxx's e-mails were

9   'harassing' and thus 'otherwise objectionable.'" Dkt. No. 30 at 7; FAC ¶ 22; *see also e360Insight*,

10  546 F. Supp. 2d at 609 (filtered emails "objectionable" and subject to CDA immunity).

11  Holomaxx's emails—conservatively 1.1 billion per year—are the type of objectionable content

12  subject to CDA immunity. Holomaxx even *admits* that Microsoft enforces a volume limit for

13  incoming emails. FAC ¶ 9. Holomaxx does not contest the propriety of such limits in general,

14  but merely asserts its dissatisfaction with such policies as they apply to Holomaxx.

15         Moreover, Holomaxx's attempt to minimize the magnitude of invalid or unwanted emails

16  sent to Microsoft's users is unpersuasive. Even if the Court were to accept Holomaxx's lowest

17  complaint rate of .2%,[2] the result would still be *two million* invalid or unwanted emails sent to

18  Microsoft's users each year. In an almost identical litigation concurrently brought by Holomaxx

19  against Yahoo, the Court found that the *.1%* complaint rate associated with Holomaxx emails sent

20  to Yahoo users could be subjectively objectionable and harassing for purposes of CDA immunity.

21  *See Holomaxx v. Yahoo!*, No. CV-10-4926-JF, Dkt. No. 18 at 7 (N.D. Cal., March 11, 2011).

22         Holomaxx's argument that the volume of emails sent to Microsoft users falls below some

23  purported commercial email industry "standard" of what is considered harassing lacks factual

24  support and does nothing to bolster its claims. As discussed in Microsoft's Motion to Dismiss the

25  First Amended Complaint ("Motion"), Holomaxx cannot and does not point to *any* evidence of an

26  industry standard in this regard. The bare references to an industry standard are baseless and

27

28  ---
[2] As asserted in Microsoft's Motion, Holomaxx improperly lowered its previously asserted .5% complaint rate to .2%. Meanwhile, the FAC itself asserts that the complaint could be as high as .3%. FAC ¶ 26.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1    nothing more than attorney argument.[3]  In any event, Holomaxx admits that a considerable

2    number of its emails are rejected by Microsoft's users who opt out and are bounced from non-

3    existent addresses.  FAC ¶ 26.  This alone defeats Holomaxx's assertion that Microsoft is engaged

4    in anything but good faith filtering.  Holomaxx's only response is that by its own estimation, the

5    rate is low enough that Microsoft shouldn't be concerned.  Opp. at 5.  But those decisions are

6    precisely what the CDA puts in the hands of email providers such as Microsoft, not Holomaxx.

7         Congress intended that parties like Microsoft be empowered to make subjective

8    determinations and define their own standards for filtering such content.  In *Goddard v. Google,*

9    relied upon by Holomaxx, this Court explicitly recognized that CDA Section 230(c)(2) "allows

10   [an interactive service provider] to establish *standards* of decency without risking liability for

11   doing so."  2008 U.S. Dist. LEXIS 101890, at *22 (emphasis in original); *see also Zango v.*

12   *Kaspersky Lab, Inc.*, 568 F.3d 1169, 1172-1173 (9th Cir. 2009) (CDA immunity granted despite

13   the fact that the degree of threat posed to users by Zango's software was in dispute); *Green v.*

14   *America Online*, 318 F.3d 465, 472 (3rd Cir. 2003) (CDA allows providers to establish standards

15   without risking liability); *Langdon*, 474 F. Supp. 2d at 630 (CDA safe harbor permitted

16   defendants to exercise editorial decisions regarding screening and deletion of content from their

17   services).  Similarly, Microsoft is entitled to establish standards for filtering email.

18        Indeed, CDA immunity is not predicated upon Microsoft proving that any piece of

19   blocked email is, in fact, objectionable, but whether Microsoft made good faith efforts to filter

20   what it deems objectionable.  *See e360Insight*, 546 F. Supp. 2d at 607 ("Congress, and, I think,

21   everyone else who studied the issue understood that blocking software would probably block too

22   much.  To insure that you or your child will not receive unwanted or inappropriate e-mails, your

23   Internet service may wind up preventing you from receiving some e-mails that are neither

24   unwanted nor inappropriate.").  This distinction is critical, and is ignored by Holomaxx.

25        **2.    Holomaxx Does Not Dispute Microsoft's Immunity Under CDA**
              **Section (c)(2)(B).**

26

27   [3] Tellingly, Holomaxx fails to contest the fact that the MAAWG document it cites in the FAC does not set forth any
     "standard" for determining whether emails are objectionable or harassing or when they should be blocked, rendering
28   the document wholly irrelevant to the operative issue here recognized by the Court—i.e. whether there is an absence
     of good faith in Microsoft's decision to filter Holomaxx's emails in the first instance.  *See* Dkt. No. 30 at 8.

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

Congress intended that CDA Section (c)(2)(B) immunity apply to companies such as Microsoft that "enable or make available to … others technical means to restrict access to" objectionable, harassing content.  As previously admitted by Holomaxx, Section (c)(2)(B) has no requirement of good faith.  Dkt. No. 24 at 5.  Because Microsoft enables and provides technical means to restrict access to emails subjectively determined to be objectionable and harassing, its filtering activities are subject to immunity under CDA Section (c)(2)(B).  In its opposition brief, Holomaxx does not contest—much less address at all—Microsoft's immunity under Section (c)(2)(B).  On this basis, CDA immunity should be applied and Holomaxx's claims dismissed.

### 3.  Holomaxx Cannot Show An Absence Of Good Faith In Microsoft's Filtering Activity.

Each theory that Holomaxx puts forth in its Opposition that Microsoft purportedly acted in bad faith is factually unsupported and is legally insufficient.  Holomaxx's assertions in the FAC are devoid of sufficient factual support and do not permit any reasonable inference of bad faith.  They are thus implausible and fail under the principles of *Twombly* and *Iqbal*.

### a.  Holomaxx's Assertion That SmartScreen Was Programmed To Specifically Target Holomaxx Is Baseless And Irrelevant.

Holomaxx asserts for the first time in its *brief* that Microsoft purportedly programmed its SmartScreen spam filtering system to specifically "target" Holomaxx's emails, purportedly in some manner independent of its normal operation.[4]  As a threshold matter, this argument is belied by the FAC itself, which alleges that Microsoft's filtering software began blocking Holomaxx's emails because they contained spam-like characteristics or had IP/domain reputation problems.  FAC ¶¶ 14, 38-41.  Moreover, the entire purpose of the CDA is to permit targeted filtering of content deemed to be harassing or objectionable—thus even assuming Holomaxx's emails were "targeted," this is precisely what the CDA contemplates.  Further, while Holomaxx attempts to frame this argument in a number of ways, each is absolutely devoid of factual or legal support.

First, Holomaxx argues that because its emails were purportedly CAN-SPAM compliant

---

[4]  Holomaxx's attempts to stave off dismissal by asserting this and other factual allegations not present in the FAC are improper and should be dismissed. *See Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) (Review is limited to the contents of the complaint.); *see also Olivera v. Am. Home Mortgage Servicing, Inc.*, 689 F. Supp. 2d 1218 (N.D. Cal. 2010) (The Court's inquiry is generally limited to the allegations in the complaint.).

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

and because SmartScreen initially only "intermittently" blocked its email, that this allegedly

shows the system was purportedly "programmed" in bad faith.  Opp. at 8.  However, it is settled

that CAN-SPAM compliance and imperfect blocking, such as the alleged "intermittent" nature of

the initial filtering, does not preclude CDA immunity.  *See e360Insight*, 546 F. Supp. 2d at 607-

609 ("compliance with CAN-SPAM, Congress decrees, does not evict the right of the provider to

make its own good faith judgment to block mailings"; "[u]nder the law, the mistaken choice to

block, if made in good faith, cannot be the basis for liability under the federal or state law").

What Holomaxx is really contending is that the system is "faulty."  Opp. at 8.  Holomaxx does

not state any *facts* other than that the system worked as it was designed to.  Perceived failings in

the system's operation—which are what Holomaxx's contentions boil down to—simply cannot

support an inference of bad faith or even that the system was "programmed" to target Holomaxx.

To find otherwise would eviscerate the intent of the CDA, which was to encourage parties like

Microsoft to build systems designed to tackle the complex problem of spam.

Second, Holomaxx argues that for about a month in the spring of 2010, the email block

was lifted and that this purportedly shows Microsoft "agreed" the email was not spam or

otherwise purportedly shows bad faith.  There is no such allegation in Plaintiff's FAC, much less

any factual support at all.  To the contrary, the FAC explicitly alleges that Microsoft began

delivering Holomaxx's emails regularly for about a month after "Holomaxx threatened legal

action" in April 2010, ***not*** because it found that Holomaxx's emails were not spam or any other

reason.  *See* FAC ¶ 38.  Microsoft's alleged temporary response to Holomaxx's threat of a lawsuit

cannot establish bad faith, nor can the fact that Microsoft then allowed its system to revert to

blocking the email as the system had initially determined it should.

Third, the FAC also admits that after Microsoft initially filtered Holomaxx's emails,

Holomaxx attempted to circumvent Microsoft's spam filters by moving to new IP addresses in

May 2010, but was unsuccessful because Microsoft's SmartScreen system recognized the email

from the new IP addresses as also in violation of Microsoft's spam policies and blocked them

accordingly.  *Id*. ¶¶ 38-41.  There is absolutely nothing alleged in the FAC to support that this

was anything other than the system operating as it normally operates.  Indeed, even accepting as

1    true Holomaxx's completely unsupported and implausible contention that Microsoft manually

2    instituted a "wholesale" block specific to Holomaxx once the system determined that Holomaxx

3    was spamming, such would be fully within the scope of the plain language of the CDA. 47 U.S.C.

4    § 230(c)(2)(a) ("any action voluntarily taken" to restrict access to material provider "considers"

5    objectionable; encompasses technical and manual filtering); *e360Insight*, 546 F. Supp. 2d at 609-

6    10 (even where a plaintiff specifically asserted that defendant singled out plaintiff's email

7    marketing for filtering and treated it differently than other companies, the bad faith allegation was

8    found insufficiently pled under *Twombly*).  Once the system determined that Holomaxx was

9    spamming, Microsoft had no obligation to accept any more of Holomaxx's spam from any source

10   and it is legally irrelevant whether blocking was manual or automated.

11                    **b.      Holomaxx Cannot Demonstrate Any Duty For Microsoft To
                                Explain The Reason For Blocking Its Email, And The MAAWG**
12                              **Document Is Not A "Standard" Of Any Kind.**

13            Holomaxx has not provided any legal authority that Microsoft is required to provide it

14   with an explanation for its filtering techniques or otherwise communicate with Holomaxx in any

15   particular way.  Indeed, this Court has already determined that Microsoft does not have a duty to

16   discuss in detail reasons for blocking Holomaxx's communication or to provide a reason for such

17   blocking.  Dkt. No. 30 at 8; *see also Young v. Facebook*, 2010 U.S. Dist. LEXIS 116530 (N.D.

18   Cal. 2010) (no duty to respond to terminated website user as they desired; allegations of cold,

19   automated customer service response failed to state a claim). The Court correctly found that

20   imposing such a duty would be inconsistent with the intent of Congress to 'remove disincentives

21   for the development and utilization of blocking and filtering technologies.' Dkt. No. 30 at 8.

22            Further, Microsoft's purported non-compliance with ideas in the MAAWG document is

23   legally insufficient to demonstrate bad faith.  Holomaxx strives to convert a set of informal

24   working notes into an industry standard (Opp. at 10).  It is clear that the document explicitly

25   disavows being even a recommendation of best practices, let alone any type of industry standard:

26            This document was assembled with the feedback received in the Abuse Desk Best Practices sessions in
             three MAAWG members' meetings beginning in October, 2006.

27            The intent of this document is to present options for abuse desk administrators for addressing common
             problems faced by abuse desks.  This is **not** intended to represent an absolute set of best practices.  It is
28            our belief that what is "best" is frequently determined by the particular circumstances of the
             network/mailboxes served by the abuse desk.

Metanat Decl., Ex. A at 1.  In other words, the document establishes that "abuse desk" responses

are left to the discretion of the service provider.  Even the portion cited by Holomaxx fails on its

face to set forth any standard, instead emphasizing that the decisions involve "judgment calls"

and referring to various alternatives as "options." *Id.* at 4.  This is the opposite of a standard.

More generally, the whole premise upon which Holomaxx asserts this document—i.e. that

email service providers are universally required to unblock blatant spammers when they

complain—is facially disingenuous.  It most certainly is not the law.  To find otherwise would

automatically transform informal discussions published on the Internet (e.g. http://www.maawg.

org/sites/maawg/files/news/MAAWG_Abuse_Desk_Common_Practices.pdf) into a legal

standard—resulting in a flood of litigation.

<strong>c.    Holomaxx's "Anti-Competitive" Allegation Is Sheer<br>Speculation, And Fails Factually And Legally.</strong>

Holomaxx cannot impute bad faith based on speculative allegations of anti-competitive

intent.  Such cursory legal conclusions and bare assertions devoid of requisite facts fail to state a

claim.  *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 557.  Holomaxx predicates its entire

argument on the untenable assertion that one can purportedly infer bad faith solely from the

combination of Microsoft's position as an alleged competitor in the internet advertising

marketplace and its blocking of Holomaxx emails.  Opp. at 13.  This is not so.

First, as discussed, the FAC itself asserts that Microsoft blocked Holomaxx's emails based

on its spam filtering system, which Holomaxx argues is faulty, but is nonetheless the admitted

basis for blocking Holomaxx's emails. FAC ¶ 27 ("Microsoft improperly relies on a faulty

automated spam filter ("SmartScreen") to determine whether incoming email is spam…").  There

is simply no plausible support for the contention that the reason for blocking had anything to do

with any online "advertising" market.  Indeed, Holomaxx does not even allege that prior to the

filtering activities in this case, Holomaxx had any relevant interaction with Microsoft or that any

relevant person at Microsoft was even aware of its existence.  Second, Holomaxx has failed to

allege any facts showing that Microsoft and Holomaxx had competing marketing emails, that

1    Microsoft actually benefitted from the alleged exclusion of Holomaxx, or that the asserted

2    advertisements were in emails that were actually blocked by Microsoft.

3         The mere conjecture that Microsoft and Holomaxx are competitors and that Microsoft

4    "could" have benefitted from blocking in some undefined "market," is insufficient.  *See e.g. Moss*

5    *v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (mere possibility of harm or allegations

6    that are "merely consistent" with potential liability are insufficient); *HDC Med., Inc. v. Minntech*

7    *Corp.*, 474 F.3d 543, 549-550 (8th Cir. 2007) ("When a valid business reason exists for the

8    conduct alleged to be predatory or anti-competitive, that conduct cannot support the inference of

9    an [antitrust] violation."); *see also Trace X Chemical, Inc. v. Canadian Industries, Ltd.* , 738 F.2d

10   261, 266 (8th Cir. 1984) ([t]o be considered anti-competitive conduct, the practice in question

11   must be "without legitimate business purpose.").  In fact, the entire reason for heightening the

12   pleading standard in *Twombly* was to weed out claims of "anticompetitive" conduct based on

13   sheer surmise—precisely as Holomaxx attempts here.  *See Twombly*, 550 U.S. at 564 (rejecting

14   inference of anticompetitive conduct based on indirect evidence).

15        Even assuming that Microsoft and Holomaxx were competitors, Holomaxx has failed to

16   provide any legal support for its contention that such competition is sufficient to support a finding

17   of bad faith.  In its FAC, Holomaxx admits the outrageous volume of email that it sent, admits

18   that Microsoft had volume limits, admits that Microsoft's SmartScreen system determined that its

19   email should be filtered and admits that Microsoft followed SmartScreen's recommendations and

20   blocked Holomaxx's email.  Holomaxx fails entirely to make any showing that it was treated any

21   differently than any other spammer, whether an alleged "competitor" or otherwise.  Not only is

22   Holomaxx's claim legally insufficient, its assertion is the type of conjecture, completely devoid of

23   any factual underpinning, which was explicitly rejected by *Twombly* and *Iqbal*.  More generally,

24   even assuming Holomaxx's baseless allegations were true, Microsoft has no obligation to deal

25   with an advertising competitor or to allow them to free ride on Microsoft's investment in its

26   service. *See Verizon Comm'n, Inc. v. Law Off. of Curtis V. Trinko*, 540 U.S. 398, 408 (2004)

27   (recognizing "right of [a] trader or manufacturer engaged in an entirely private business, freely to

28   exercise his own independent discretion as to parties with whom he will deal"); *Live Universe,*

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1  *Inc. v. MySpace, Inc.*, 2007 U.S. Dist. LEXIS 43739, *41-43 (C.D. Cal. 2007) (claim dismissed;

2  defendant web service was entitled to block competitive advertiser from its platform "to prevent

3  [plaintiff] from 'free-riding' on [defendant's] investment in its own website").

4  **B.    Holomaxx Fails To Sufficiently Allege The Wiretap Act.**

5        Holomaxx's Wiretap Act claim necessarily fails.  The FAC establishes that Microsoft

6  qualifies for immunity under the operator exception of Section 2511(2)(a)(i). Holomaxx's

7  interpretation of this Section of the Wiretap Act is wholly disingenuous. As in the past, Holomaxx

8  misleadingly interprets this provision to suggest that the immunity does not apply to

9  communication providers. Opp. at 17. First by incorrectly asserting that Section 2511(2)(a)(i)

10  only exempts the operator of a switchboard, or an officer, employee, or agent of a provider of

11  wire or electronic communication services[s], but not the provider itself; and second, by arguing

12  that the immunity only applies to employers exercising control over their own computers, but

13  purportedly not ISPs. Both contentions are legally unsupported.

14        Contrary to Holomaxx's argument, courts have afforded a service provider itself

15  immunity pursuant to Section 2511(2)(a)(i). *See e.g. Browning v. AT&T Corp.,* 682 F. Supp. 2d

16  832 (N.D. Ill. 2009) (immunizing *service provider*, AT&T, from liability pursuant to Section

17  2511(2)(a)(i) where it was attempting to protect its rights or property); *AT&T v. Maydak*, 1995

18  U.S. Dist. LEXIS 22184 (W.D. Penn. 1995) (same). The immunity provision explicitly applies to

19  a provider of wire or electronic communication service—i.e. ISPs. Additionally, Holomaxx fails

20  entirely to put forth any authority limiting this provision to employers, and the law is

21  overwhelmingly to the contrary. *See e.g., United States v. Goldstein*, 532 F.2d 1305, 1310 (9th

22  Cir. 1976), citing *United States v. Clegg*, 509 F.2d 605, 612-13 (5th Cir. 1975) (telephone

23  company immunized under § 2511(2)(a) where it monitored suspected calls believed to be

24  bypassing the company's billing procedures).[5]

25        Similarly, Holomaxx's allegations of Microsoft's anti-competitive motivations are mere

26  speculation and insufficient to preclude liability under Section 2511(2)(a)(i). In *U.S. v.*

27

28  ───────────────
[5] Holomaxx's authority is inapposite as it does not even address Section 2511.  *See United States v. Warshak*, 2010
U.S. App. LEXIS 25415, *43 (6th Cir. 2010) (Fourth Amendment search by government, not Section 2511(a)(2)).

- 10 -

*Councilman*, cited by Holomaxx, the court found that defendant was not immunized under Section 2511(2)(a)(i) because his alleged conduct was clearly not  "necessarily incident to the rendition of [his] service or to the protection of the rights or property of the provider of that service.  418 F.3d 67, 82 (2005).  Unlike the facts in *Councilman*, Microsoft's spam filter has been programmed to identify spam based on certain mailing characteristics and the alleged interception is part of Microsoft's activity incident to the rendition of service and to protect Microsoft's rights and property.  *See* FAC  ¶¶ 27, 30.

Holomaxx also cannot establish that its emails were intercepted.  As set forth in detail in Microsoft's Motion, Holomaxx fails to provide facts to support how the alleged "techniques" were applied, and importantly, what devices were used for this purported interception.  The only devices Holomaxx identified in the interception of its emails, are Microsoft's own computers.  FAC ¶ 47.  It is well established, however, that "[t]he drive or server on which an e-mail is received does not constitute a device for purposes of the Wiretap Act." *Ideal Aerosmith*, 2007 U.S. Dist. LEXIS 91644, *12 ; *Crowley v. Cybersource*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) (same).  Thus, there can be no interception as a matter of law.  *See also Bradley v. Google*, 2006 U.S. Dist. LEXIS 94455 (N.D. Cal. 2006).

In any event, to the extent Holomaxx is attempting to assert that email was purportedly intercepted in transit, Holomaxx's own factual allegations suggest otherwise.  As Holomaxx admitted in its original Complaint, any access to the content of Holomaxx's emails occurs on Microsoft's computers where the emails "were ***stored***."  Compl. ¶ 41 (emphasis added); *see also* ¶ 66.  In addition, Holomaxx's failure to identify any other device other than Microsoft's computers as the location where the alleged scanning of Holomaxx's emails occurred, indicates that this alleged process could only have occurred when the email was in storage on those computers.  Like the case law cited in Microsoft's Motion, any purported access to the content of Holomaxx's emails did not occur while Holomaxx's emails were in transit.  Holomaxx unreasonably demands that this Court change the law and ignore the clear Ninth Circuit precedent in *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) and its progeny which clearly

1    establish that accessing stored emails is not an interception under the Federal Wiretap Act.[6]  Mot.

2    at 17.  Holomaxx's Wiretap Fraud claim should be dismissed with prejudice.

3              **C.      Holomaxx Fails To Sufficiently Allege The Stored Communications Act.**

4              Holomaxx's Stored Communications Act (SCA) claim remains deficient.  Holomaxx is

5    unable to refute that Microsoft, as an authorized provider of an electronic communication service,

6    is immune from liability under the SCA.  *See* 18 U.S.C. § 2701(c)(1).  Like the defendants in

7    *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996), and *Fraser v. Nationwide Mut.*

8    *Ins.*, 352 F.3d 107 (3rd Cir. 2003), Microsoft is permitted to "do as [it] wish[es] when it comes to

9    accessing communications in electronic storage" as the provider of the electronic service.

10   Microsoft's access to its own systems is not limited under the SCA.  *See Crowley*, 166 F. Supp.

11   2d 1263.  Holomaxx's attempt to distinguish these cases is unpersuasive.  As with the Federal

12   Wiretap Act, Holomaxx has failed to provide any authority in support of its proposition that the

13   SCA exception applies only to employers.  There is no merit to Holomaxx's position and it

14   should be dismissed accordingly.

15             **D.      Holomaxx Fails To Sufficiently Allege The Computer Fraud & Abuse Act.**

16             Plaintiff cannot seek relief pursuant to the Computer Fraud and Abuse Act (CFAA).

17   Despite Plaintiff's attempts to mischaracterize the CFAA, the statute explicitly applies only to

18   unauthorized access to protected *computers*.  *See* 18 U.S.C. § 1030(a)(1)-(4).  Holomaxx has

19   failed to plead facts sufficient to find that Microsoft accessed Holomaxx's computers at all in

20   blocking e-mail communications.  Rather, Holomaxx's Complaint includes conclusory allegations

21   to the effect that Microsoft blocked emails and Microsoft "exceeded its authorization to access …

22   computers … and obtained information from such computers," in violation of 18 U.S.C. §§ 1030

23   *et seq. See* FAC  ¶¶ 72-77.

24             Holomaxx has not provided any authority for its argument that a service provider may

25   exceed authorization to access its *own* servers.[7]  The mere fact that a third party sends e-mail to a

26   _____

27   [6] The authority Holomaxx cites is not on point to the alleged facts.  For example, *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010) and *In re Pharmatrak*, 329 F.3d 9 (1st Cir. 2003) involved interception of e-mails by the defendant through automatic routing software that duplicated them at the time of transmission.  That is not the theory here.  *Councilman*, 418 F.3d at 80, did not even reach the temporal issue of interception.

28   [7]  *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004), cited by Holomaxx, is wholly inapplicable, as it involved

1   service provider's servers does not convert those servers into the third party's property.  *See eBay,*

2   *Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000) (an internet company's

3   servers are its own private property). Holomaxx attempts to argue that even though Microsoft's

4   access to its own computers is authorized, that somehow Microsoft could be liable for exceeding

5   that authority by accessing emails on its own servers.  *See* Opp. at 22 (citing 18 U.S.C. §

6   1030(e)(6)). This argument strains credulity, as Holomaxx itself intentionally directed its emails

7   to Microsoft's servers, thus handing them over to Microsoft.  Recently one court rejected such a

8   theory where, as here, the information on the Internet was not protected in any meaningful

9   fashion. *Cvent, Inc. v. Eventbrite, Inc.*, 2010 U.S. Dist. LEXIS 96354 (E.D. Va. 2010); *LVRC*

10  *Holdings, LLC v. Brekka*, 581 F.3d 1127, 1129 (9th Cir. 2009) (where access to computer

11  authorized, no liability for alleged unauthorized use of information on the computer); *United*

12  *States v. Suibin Zhang*, 2010 U.S. Dist. LEXIS 123003, *10-12 (N.D. Cal. 2010) (same).[8]

13      **E.      Holomaxx Fails To Sufficiently Allege Cal. Penal Code 630 et seq.**

14          Holomaxx's claim under Penal Code Section 631 fails for the same reason that the

15  Wiretap Act claim fails—i.e. Holomaxx cannot demonstrate that any communication was

16  intercepted.  Holomaxx's claim under Penal Code Section 632 fails because, by directing mass-

17  broadcast emails at Microsoft's servers, which include spam filtering technology (including the

18  alleged SmartScreen system and Symantec Brightmail system), sender and receiver must

19  reasonably expect that the communications will be accessed by those servers.  Indeed, the Federal

20  Wiretap Act and Stored Communications Act establish that much, through the various "operator"

21  exceptions discussed above.  Additionally, Holomaxx fails to allege how Microsoft "amplified"

22  or "recorded" its purported confidential communications, as required under Section 632.

23  Furthermore, given that precisely the same factual and legal theories are alleged between these

24  federal theories and the state theories, the California claims are preempted by the Wiretap Act and

25  Stored Communication Act and must be dismissed.  *See* 18 U.S.C. § 2518(10)(c); *Bunnell v.*

26  *Motion Picture Ass'n of Am.*, 567 F. Supp. 2d. 1148 (C.D. Cal. 2007).  Instead of addressing

27  ───────────────────────────────

individuals who served an unlawful subpoena, not a service provider accessing its *own* servers.
[8] As with its Wiretap Act and SCA claims, Holomaxx argues that the CFAA limitations apply only to employers, but
not service providers.  Again, Holomaxx cites no authority establishing any such distinction.

28

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1    *Bunnell*, Holomaxx cites to cases in which the issue of preemption was not even explicitly

2    addressed.  Holomaxx provides no authority to the contrary.

3           **F.      Holomaxx Fails To Sufficiently Allege Intentional Interference.**

4           Holomaxx's FAC fails to sufficiently allege, as it must, that Microsoft had any knowledge

5    of or intent to interfere with any contract or relationship at the time that it allegedly filtered

6    Holomaxx's email.[9]  *See Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*, 7 F.3d 1434, 1442-

7    43 (9th Cir. 1993) (intentional interference claims failed where no evidence that defendant knew

8    of contract or relationship at the time of alleged interference).  Holomaxx's own complaint makes

9    it clear that Holomaxx's emails were filtered by an automated software process that determined

10   that the emails were spam.  *See* FAC ¶¶ 38-41.  Holomaxx's prospective business relationships

11   and contracts did not play any role in the filtering process and there are no facts indicating any

12   intent to interfere with Holomaxx's contracts or relationships. *See Beverly v. Network Solutions,*

13   *Inc.*, 1998 U.S. Dist. LEXIS 20453, *26-29 (N.D. Cal. 1998) (automated registration of domains

14   insufficient to impute to domain registrar knowledge or intent to interfere).   To the extent that

15   Holomaxx points to its April 30, 2010 email as notifying Microsoft of its contracts or prospective

16   business relationships, this email vaguely stated that if email "does not get through, we lose

17   money because they don't pay us for undelivered mail." FAC ¶ 44.  This communication fails to

18   identify any particular contract or relationship between Holomaxx and any third-party.  Indeed,

19   without knowledge of contracts or relationships with which it *could* have interfered at the time of

20   the accused actions, it is impossible for Microsoft to have known that any alleged interference

21   was certain or substantially certain to occur.

22          While Holomaxx attempts to argue that Microsoft's blocking of Holomaxx's emails was

23   independently wrongful because it was somehow motivated by anti-competitive reasons,

24   Holomaxx has failed to provide any factual support for this contention.  As discussed,

25   Holomaxx's claim is nothing more than speculation and conjecture and cannot support its

26

---

27   [9]  Holomaxx's assertion that it is not required to allege any specific contract or Microsoft's knowledge of such
     specific contract, Opp. at 15-16, should be rejected.  The sole precedent Holomaxx relies upon for this assertion is
28   inapposite in light of the now heightened pleading standard of plausibility.  *See Silicon Image, Inc .v. Analogix*, 2007
     U.S. Dist. Lexis 39599, *11 (N.D. Cal 2007) (applying pre-*Twombly* and *Iqbal* notice pleading standard).

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FAC
CASE NO.: C 10-04924-JF

1    Intentional Interference claims.  Rather, the purpose of filtering was to identify spam.

2    Microsoft's actions were justified, as a matter of law, as Microsoft was simply attempting to

3    protect its customers and legitimate economic interests.  *See Cabanas v. Gloodt Assocs.*, 942 F.

4    Supp. 1295, 1306 (E.D. Cal. 1996) ("[n]ot every interference with contract or economic

5    advantage is a tort."); *Jewel Cos., Inc. v. Pay Less Drug Stores Nw, Inc.*, 510 F. Supp. 1006, 1011

6    (N.D. Cal. 1981) ("interference is justified when the person is seeking to protect an interest of

7    greater social value than that attached to the stability of the contract involved").  Because the

8    accused acts were legally justified, immunized under the CDA and otherwise lawful under each

9    of Holomaxx's theories, they also cannot meet the wrongfulness element of intentional

10   interference with prospective business advantage.  *See Korea Supply Co. v. Lockheed Martin*

11   *Corp.*, 29 Cal. 4th 1134, 1158-59, n.11 (2003).[10]  Holomaxx's claims fail as a matter of law.

12                **G.       Holomaxx Fails To Sufficiently Allege Cal. Bus. & Prof. Code 17200.**

13           Dismissal of Holomaxx's Unfair Competition under California Business and Professions

14   Code Section 17200, *et seq*. (UCL) claim is warranted.  Holomaxx relies on facts identical to the

15   other eight causes of action.  FAC ¶¶ 102-104.  For the reasons set forth herein, and because

16   Holomaxx has not stated a viable claim for any actionable wrongdoing, the UCL does not apply

17   and Holomaxx's claim should be dismissed without leave to amend.  *See* Dkt. No. 30, at 12.

18   **III.    CONCLUSION**

19           For the foregoing reasons, Microsoft respectfully requests that Plaintiff Holomaxx's First

20   Amended Complaint be dismissed in its entirety without leave to amend.

21   Dated:  July 1, 2011                          GABRIEL M. RAMSEY
                                                    Orrick, Herrington & Sutcliffe LLP
22

23                                                  /s/ Gabriel M. Ramsey
                                                    _____
24                                                  GABRIEL M. RAMSEY
                                                    Attorneys for Defendant
25                                                  MICROSOFT CORPORATION

---

26   [10]  Holomaxx incorrectly asserts that wrongfulness does not require unlawful conduct.  Opp. at 11.  This is not the
     law.  *See Korea Supply*, 29 Cal. 4th at 1158-59, n.11 (an act must be wrongful by some legal measure, rather than
27   merely a product of an improper, but lawful, purpose or motive and disapproving all lower court holdings improper
     motive or improper means found sufficient for liability).  Holomaxx erroneously relies on a case citing dicta from a
28   1995 opinion and overlooking the superseding holding from *Korea Supply* in 2003.  Opp. at 11:15-18 citing *625 3rd*
     *St. Assocs., LP v. Alliant Cred. Union*, 633 F. Supp. 2d 1040, 1049 (2009).